**Jeanne Sinnott**, OSB No. 075151
jeanne.sinnott@wildwoodlaw.com
Wildwood Law Group LLC
3519 NE 15th Avenue, Suite 362
Portland Oregon 97212
T: (503) 564-3049

*Of Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **LARRY BALCOM**, an individual, by and through his attorney-in-fact, **MARY BARNES**, an individual,<br><br>   Plaintiffs,<br><br>v.<br><br>**CLINTON PETERSON** and **APRIL PETERSON**, a married couple, and **FORECLOSURE HELP, L.L.C**, an Idaho Limited Liability Company,<br><br>   Defendants. | Case No. 3:23-cv-00528<br><br>**DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, and COUNTERCLAIMS** |

By and through the undersigned counsel below, defendants Clinton Peterson ("Clinton"), April Peterson ("April") and Foreclosure Help, L.L.C ("FH") (collectively, "Defendants"), in answer to the Complaint, hereby admit, deny and allege as follows:

1.  Admit.

2.  Admit.

3.  Admit.

4.  Answering paragraph 4, Defendants admits that Clinton holds an inactive real estate license in Idaho and that Clinton was a member of FH. Defendants deny the remaining allegations of paragraph 4.

5.      Answering paragraph 5, Defendants admit that April is a licensed real estate broker in Idaho owner of PREI.  Defendants admit that the address listed is the address for PREI.  Defendants admit that April was Plaintiff's primary point of contact for FH's purchase and sale of the Property, as defined in the Complaint.  Defendants deny the remaining allegations of paragraph 5.

6.      Admit.

7.      Answering paragraph 7, Defendants admit that the Property is in Oregon.  Defendants deny the remaining allegations of paragraph 7.

8.      Deny.

9.      Answering paragraph 9, Defendants admit that Larry Balcolm ("Larry") is 61 years old.  Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 9 and therefore deny them.

10.     Admit.

11.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 11 and therefore deny them.

12.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 12 and therefore deny them.

13.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 13 and therefore deny them.

14.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 14 and therefore deny them.

15.     Admit.

16.     Answering paragraph 16, Defendants admit that Larry called FH on November 10, 2021.  Defendants further admit that FH spoke with Larry about options he could consider because he was behind on mortgage payments.  Defendants deny the remaining allegations of paragraph 16.

17.     Admit.

18.    Deny.

19.    Deny.

20.    Admit.

21.    Answering paragraph 21, Defendants admit that they had a Zoom call with Larry on November 19, 2021, as part of the due diligence for the purchase and sale of the Property. Defendants deny the remaining allegations of paragraph 21.

22.    Answering paragraph 22, Defendants allege that the Purchase and Sale Agreement speaks for itself.  Defendants deny any allegations that conflict with the agreement.

23.    Answering paragraph 23, Defendants allege that the documents speak for themselves.  Defendants deny any allegations that conflict with the documents.

24.    Answering paragraph 24, Defendants allege that the document speaks for itself. Defendants deny any allegations that conflict with the document.  Defendants deny the allegations in paragraph 24 that state that Larry signed the deed under Defendants' "request."

25.    Answering paragraph 25, Defendants allege that the deed speaks for itself. Defendants deny any allegations that conflict with the deed.  Defendants deny the allegations in paragraph 25 that state that Larry signed the deed under Defendants' "request."

26.    Admit.

27.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 27 and therefore deny them.

28.    Admit.

29.    Answering paragraph 29, Defendants admit that a line of credit was taken out secured by the Property.  Defendants deny the remaining allegations of paragraph 29.

30.    Admit.

31.    Paragraph 31 is a legal conclusion that need not be admitted nor denied.  To the extent there are allegations in Paragraph 31, they are denied.

32.    Defendants lack knowledge or information sufficient to form a belief about the truth

WILDWOOD LAW GROUP LLC
T: 503.564.3049 | F: 971.347.1425
3519 NE 15TH AVE #362
PORTLAND, OREGON 97212

of the allegations of paragraph 32 and therefore deny them.

33.     Answering paragraph 33, Defendants admit that they attempted to assist Larry to find alternative living arrangements.  Defendants deny the remaining allegations of paragraph 33.

34.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 34 and therefore deny them.

35.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 35 and therefore deny them.

36.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 36 and therefore deny them.

37.     Admit.

38.     Answering paragraph 38, Defendants admit that April was the primary point of contact for Larry and generally handled the purchase and sale transaction for the Property. Defendants deny the remaining allegations of paragraph 38.

39.     Answering paragraph 39, Defendants incorporate by reference the answers above.

40.     Deny.

41.     Deny.

42.     Paragraph 42 recites a statute, which speaks for itself.  To the extent there are allegations in Paragraph 42, they are denied.

43.     Deny.

44.     Deny.

45.     Deny.

46.     Answering paragraph 46, Defendants incorporate by reference the answers above.

47.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 47 and therefore deny them.

48.     Deny.

49.     Paragraph 49 is a legal conclusion that need not be admitted nor denied.  To the

WILDWOOD LAW GROUP LLC
T: 503.564.3049 | F: 971.347.1425
3519 NE 15TH AVE #362
PORTLAND, OREGON  97212

extent there are allegations in Paragraph 49, they are denied.

50.     Deny.

51.     Answering paragraph 51, Defendants incorporate by reference the answers above.

52.     Answering paragraph 52, Defendants allege that the POA speaks for itself.
Defendants deny that the POA was ever used and deny the remaining allegations of paragraph 52.

53.     Answering paragraph 53, Defendants allege that the POA speaks for itself.
Defendants further allege that paragraph 53 contains multiples legal conclusions that need not be
admitted nor denied.  Defendants deny that the POA was ever used and deny the remaining
allegations of paragraph 53.

54.     Deny.

55.     Deny.

56.     Deny.

57.     Answering paragraph 57, Defendants incorporate by reference the answers above.

58.     Paragraph 58 is a legal conclusion that need not be admitted nor denied.  To the
extent there are allegations in Paragraph 58, they are denied.

59.     Paragraph 59 quotes an Oregon Supreme Court case and contains no allegations
against Defendants.  To the extent there are allegations in Paragraph 59, they are denied.

60.     Deny.

61.     Answering paragraph 61, Defendants admit that Larry is in possession of the
Property.  Defendants deny the remaining allegations of paragraph 61.

62.     Deny.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

1.     Plaintiff has failed to state a claim upon which relief can be granted.  Among
other things, no defendant served as a "Foreclosure Consultant" as defined in
ORS 646A.702, Plaintiff does not qualify as a "vulnerable person," defendants did nothing

Page 5 –DEFENDANTS' FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS
WILDWOOD LAW GROUP LLC
T: 503.564.3049 | F: 971.347.1425
3519 NE 15TH AVE #362
PORTLAND, OREGON  97212

"wrongful" under ORS Chapter 124, defendants were never fiduciaries to Balcom, and there is no evidence of any misrepresentations to support a fraud claim.

### SECOND AFFIRMATIVE DEFENSE

2.      This court lacks personal jurisdiction over defendant April Peterson.

### THIRD AFFIRMATIVE DEFENSE

3.      Plaintiff Balcom agreed to sell the property to defendant FH, he did not lack capacity to enter into the agreement, and he therefore assumed any risk that he has suffered.

### FOURTH AFFIRMATIVE DEFENSE

4.      Any agreement regarding real property must be in writing and signed by the party against whom enforcement of the agreement is sought.  To the extent Plaintiffs wish to enforce an agreement regarding the real property that is different from what the parties agreed to in writing, such agreement would be unenforceable under the statute of frauds unless it was in writing and signed by Defendants, or any of them.

### FIFTH AFFIRMATIVE DEFENSE

5.      Plaintiffs' claims are barred by the doctrines of waiver or estoppel.  Specifically, Balcom entered into an agreement to sell the real property on the terms and conditions set forth in the parties' sale agreement.  FH relied on the parties' agreement when buying the property, paying off the mortgage on the property, and allowing Balcom to live at the property for under-market rent.  Plaintiffs should be estopped from making claims against Defendants.  Plaintiffs also have waived any right to make claims against Defendants by voluntarily agreeing to sell the property on the terms and conditions set forth in the parties' sale agreement.

### SIXTH AFFIRMATIVE DEFENSE

6.      Plaintiff Mary Barnes is not the real party in interest and lacks standing to sue.

WILDWOOD LAW GROUP LLC
T: 503.564.3049 | F: 971.347.1425
3519 NE 15TH AVE #362
PORTLAND, OREGON  97212

## FIRST COUNTERCLAIM

### (Declaratory Judgment under 28 USC §2201(a))

1.       On or about November 20, 2021, Balcom sold to defendant FH real property commonly known as 14176 SW Barrows Road, #3, Tigard, Oregon 97223 (the "Property").  A true copy of the Standard Purchase and Sale Agreement (the "PSA") is attached as Exhibit 1 and is incorporated by reference.

2.       Pursuant to the PSA, FH paid good and valuable consideration to Balcom in exchange for a deed to the Property.  After receiving good and valuable consideration, Balcom executed and delivered to FH a statutory warranty deed, which was recorded in the real property records of Washington County, Oregon, on November 22, 2021 as Instrument 2021-121409 (the "Deed").  A true copy of the Deed is attached as Exhibit 2 and is incorporated by reference.

3.       Pursuant to the Deed, FH owned the Property as of November 20, 2021.

4.       There is an actual controversy over the validity of the Deed, which relates to real property within the District of Oregon.

5.       Plaintiffs have challenged the validity of the Deed.

6.       Defendant FH is entitled to a declaratory judgment that the Deed is valid.

## SECOND COUNTERCLAIM

### (Breach of Contract)

7.       Defendant FH incorporates by reference the allegations of paragraphs 1 through 6 above.

8.       On or about November 20, 2021, Balcom entered into a lease agreement (the "Lease Agreement") with FH.  Under the lease agreement, Balcom agreed to pay $300 per month through November 30, 2022, and then the Lease Agreement became month-to-month.  A true copy of the Lease Agreement is attached as Exhibit 3 and is incorporated by reference.

9.      Balcom has defaulted under the Lease Agreement by failing to make payments beginning in November 2022.  FH has performed all conditions to be performed under the Lease Agreement.

10.     In the event the Court rules in favor of FH on the first counterclaim, it should also enter a money judgment against Defendant Balcom for all amounts due and owing under the Lease Agreement.

11.     Through June 30, 2023, assuming a monthly rent amount of $300, the total amounts due and owing under the Lease Agreement are $2,800, which is comprised of unpaid rent in the amount of $2,400, plus late fees in the amount of $400.

12.     Under the Lease Agreement, Balcom is responsible for reasonable attorney fees and costs associated with collecting past-due rents.  FH has incurred attorney fees and costs and should be awarded those amounts.

WHEREFORE, having answered Plaintiff's Complaint and having asserted affirmative defenses, Defendants pray that the Court enter judgment in their favor as follows:

1.      Dismissing all of Plaintiff's Claims against Defendants with prejudice;

2.      On FH's first counterclaim, entering judgment in its favor and declaring that the Deed is valid;

3.      On FH's second counterclaim, for a money judgment in its favor and against Balcom for all unpaid rents and late fees through the entry of judgment, plus reasonable attorney fees and costs associated with the collection of the amounts due and owing under the Lease Agreement;

4.      For such other and further relief as this Court deems just and equitable; and

WILDWOOD LAW GROUP LLC
T: 503.564.3049 | F: 971.347.1425
3519 NE 15TH AVE #362
PORTLAND, OREGON  97212

5.      Awarding Defendants' costs incurred herein.

DATED this 2nd day of August, 2023.

WILDWOOD LAW GROUP LLC


By ___/s/ *Jeanne Sinnott*_____
Jeanne Sinnott, OSB No. 075151
Jeanne.sinnott@wildwoodlaw.com
3519 NE 15th Avenue, #362
Portland, Oregon 97212
Telephone: (503) 564-3049
Fax: (971) 347-1425

*Of Attorneys for Defendants*

WILDWOOD LAW GROUP LLC
T: 503.564.3049 | F: 971.347.1425
3519 NE 15TH AVE #362
PORTLAND, OREGON  97212

Authentisign ID: 55F1865C-549D-4E4E-8BEC-3169E1DFBA9B

# STANDARD PURCHASE AND SALE AGREEMENT

AGREEMENT dated this 19 day of November 2021 , by and between Larry Edward Balcom

hereinafter "Seller", whose address is 14176 SW Barrows Rd #3, Tigard, OR 97223 ,and

Foreclosure Help, LLC, a Idaho limited liability company hereinafter "Buyer" (or its assignee or nominee).

**1. THE PROPERTY.** The Seller agrees to sell and Buyer agrees to buy the following property, located in and situate in the County of Washington , State of Oregon , commonly known as 14176 SW Barrows Rd. #3, Tigard, OR 97223 .

Legal: Land in Washington County, Oregon, described more particularly in Exhibit A, attached hereto

The sale shall also include all windows shades, blinds, screens, shutters, electric and plumbing fixtures and

**2. PURCHASE PRICE.** Buyer to pay the purchase price as follows (check all that applies):

☐ EARNEST DEPOSIT, receipt of which is hereby acknowledged in the sum of .................... $ _____

☐ CASH DOWN PAYMENT at closing in the amount ................................................. $ _____

☒ TAKE TITLE SUBJECT TO AN EXISTING **FIRST** TRUST DEED NOTE

held by Homeside with an approximate unpaid amount of .................... $ 72,500.00
payable $ 311 monthly until paid, including interest not exceeding 6 %.

☐ TAKE TITLE SUBJECT TO AN EXISTING **SECOND** TRUST DEED NOTE

held by with an approximate unpaid amount of ................ $ _____
payable $ _____ monthly until paid, including interest not exceeding 6 %,

☒ Past due balance on Mortgage                                                $ 1,300.00

**TOTAL PURCHASE PRICE IS THE AMOUNT OF**                              $ 73,800.00

**3. FINANCING.** Buyer will be taking the property subject to deed(s) of trust existing on the property and the underlying existing loans and is not expressly assuming responsibility through a formal assumption of said loans. Commencing on November 20 , 2021 , the Buyer shall pay all monthly obligations on the underlying loans and property taxes, assessments, insurance, and any other expenses related to the property.

If the actual loan balance of said loan is less than as stated herein, the purchase price shall be reduced to reflect the difference; if the actual loan balance is more than as stated herein, then Buyer's required cash payment shall be reduced accordingly. Seller agrees to waive any remaining balance of tax, MIP and insurance escrows, if any, held by the lender(s).

**4. CLOSING.** Closing will be held on or about November 20 , 20 2021 at a time and place designated by buyer.
Seller shall pay the following costs in transferring title: _____
Buyer shall pay the following costs in transferring title: _____
The following Items will be prorated at closing: [ ] Homeowner's association dues, [ ] interest on existing loans. [ ] Other _____

**5. POSSESSION.** ☐ Seller shall surrender possession to the property on day of closing.
☐ In the event possession is not delivered at closing, buyer shall withhold proceeds from the sale in the amount of $ _____ as security deposit (see attached Holdover Occupancy Agreement).
☒ Seller to remain living in the property as a tenant.
Seller agrees to leave the property as follows: carpet professionally cleaned; bathrooms, kitchen, rooms, windows, closets and cabinets cleaned; yard should be maintained and trimmed; the whole property should be free of all personal items and debris.

**6. ADDITIONAL PROVISIONS.**
- Seller is aware that this loan will not be satisfied in full at closing and may continue to appear on Seller credit file. Seller will provide Buyer with loan payment booklets and written permission to contact the holders of any debt secured by the property. Seller to execute Limited Power of Attorney to the subject property.

- Both Seller and Buyer acknowledge that the deed(s) of trust securing the property stated above may contain a "due on sale" provision giving the lender an option to call the loan immediately payable if all or any part of the Property is sold or transferred without satisfying the said loans.

**7. INSPECTION.** This agreement is subject to final inspection and approval of the property by the Buyer in writing within 5 days.

**8. DEFAULT BY BUYER.** If Buyer fails to perform the agreements of this contract within the time set forth herein, Seller may retain, as liquidated damages and not as a penalty, all of the earnest money deposit specified in paragraph 2 above.

**9. DEFAULT BY SELLER.** If Seller fails to perform any of the agreements of this contract, Buyer shall be entitled to $5,000 for damages resulting from the breach of contract, or the Buyer may bring an action for specific performance.

**10. OFFER.** This is an offer to purchase the Property on the above terms and conditions. Unless this offer is signed by Seller and personally received by Buyer, by 11/20/2021 , at 7:00 AM/PM, the offer shall be deemed revoked and the deposit shall be returned.

**11. OTHER TERMS:** Seller to remain living in the property as a tenant. Seller will not receive any proceeds from the sale. Buyer shall pay HOA at $330 per month.

Authenti                                                                        11-24-2021

Buyer(s): _Clinton Peterson / Foreclosure Help LLC_ , Date of Offer: _____ , 20 ___.

Seller: _Larry E. Balcom_    11/24/2021 4:25:44 PM MST    , SSN: ████████ , DOB: ████████ Date: 11-24-2021 , 20 ___.
11-24-2021 12:54:21 PM MST

Seller: _____ , SSN: _____ , DOB: _____ Date: _____ , 20 ___.

STANDARD FORM

**Exhibit 1**
**Page 1 of 2**

Authentisign ID: 55F1865C-549D-4E4E-8BEC-3169E1DFBA9B

**EXHIBIT A**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF WASHINGTON, STATE OF OREGON, AND IS DESCRIBED AS FOLLOWS:

UNIT NO. 3, BUILDING 12, SCHOLLS VILLAGE CONDOMINIUMS STAGE 4, AS SET FORTH IN CONDOMINIUM DECLARATION, RECORDED DECEMBER 2, 1999, AS 99132549, IN THE CITY OF TIGARD, COUNTY OF WASHINGTON, AND STATE OF OREGON, TOGETHER WITH THOSE LIMITED COMMON ELEMENTS APPURTENANT TO SAID UNIT AS SET FORTH IN SAID DECLARATION, AND TOGETHER WITH AN UNDIVIDED FRACTIONAL OWNERSHIP OF THE GENERAL COMMON ELEMENTS OF SAID CONDOMINIUM AS SET FORTH IN THE SAID DECLARATION AND IN ANY SUBSEQUENT AMENDMENTS THERETO AS APPURTENANT TO SAID UNIT.

Parcel ID: R2091126

Commonly known as 14176 South West BARROWS Road. Unit 3, Portland, OR 97223

*LEB*  11.24.2021

**Exhibit 1**
**Page 2 of 2**

AFTER RECORDING, RETURN TO:
Foreclosure Help, LLC
1775 W State St. Ste 276
Boise, ID 83702

SEND TAX STATEMENTS TO:
Foreclosure Help, LLC
1775 W State St. Ste 276
Boise, ID 83702



Washington County, Oregon **2021-121409**
11/22/2021 08:36:10 AM
D-DW          Cnt=1  Stn=31  RECORDS1
$15.00 $5.00 $11.00 $60.00 - Total =$91.00

028262872021012140900030036



I, Joe Nelson, Interim Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
Instrument of writing was received and recorded in the
book of records of said county.

Joe Nelson, Interim Director of Assessment and
Taxation, Ex-Officio County Clerk

# STATUTORY WARRANTY DEED

(ORS 93.850)

**Larry Edward Balcom**, with an address of 14176 SW Barrows Rd #3, Portland, OR 97223 ("Grantor"), conveys and warrants to *Foreclosure Help, LLC* whose address is 1775 W State St. Ste 276, Boise, ID 83702 ("Grantee"), the following described real property free of encumbrances, except as specifically set forth herein:

Land in Washington County, Oregon, described more particularly in Exhibit A, attached hereto.

SUBJECT TO: Covenants, conditions, restrictions and/or easements, if any, affecting title, which may appear in the public record, including those shown on any recorded plat or survey.

The true consideration for this conveyance is $10.00.

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, the person transferring fee title should inquire about the person's rights, if any, under ORS 195.300, 195.301 and 195.305 to 195.336 and Sections 5 to 11, Chapter 424, Oregon laws 2007, Sections 2 to 9 and 17, Chapter 855, Oregon laws 2009, and Sections 2 to 7, Chapter 8, Oregon laws 2010. This instrument does not allow use of the property described in this instrument in violation of applicable land use laws and regulations. Before signing or accepting this instrument, the person acquiring fee title to the property should check with the appropriate city or county planning department to verify that the unit of land being transferred is a lawfully established lot or parcel, as defined in ORS 92.010 or 215.010, to verify the approved uses of the lot or parcel, to determine any limits on lawsuits against farming or forest practices, as defined in ORS 30.930, and to inquire about the rights of neighboring property owners, if any, under ORS 195.300, 195.301 and 195.305 to 195.336 and Sections 5 to 11, Chapter 424, Oregon Laws 2007, and Sections 2 to 9 and 17, Chapter 855, Oregon Laws 2009, and Sections 2 to 7, Chapter 8, Oregon Laws 2010.

Version 1.8 – January 25, 2021

**Exhibit 2**
**Page 1 of 3**

DATED this _20_ day of _NOV_ , ~~201~~ _2021_

Grantor

By: _Lng E Balcom_ _____

Its: _N A_ _____

STATE OF OREGON

COUNTY OF _Washington_ ss.

    The foregoing instrument was acknowledged before me on this _20_ day of _NOV_ , ~~201~~ _2021_ by Larry Edward Balcom, who acknowledged such instrument to be their free and voluntary act and deed, and on oath stated that they were duly authorized to execute such instrument.



OFFICIAL STAMP
SUE ELLEN WIEBE
NOTARY PUBLIC · OREGON
COMMISSION NO. 1009752
MY COMMISSION EXPIRES MARCH 01, 2025

Printed Name: _Sue Ellen Wiebe_
Notary Public in and for the State of Oregon

Version 1.8 – January 25, 2021

Page 2 of 3

**Exhibit 2**
**Page 2 of 3**

**EXHIBIT A**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF WASHINGTON, STATE OF OREGON, AND IS DESCRIBED AS FOLLOWS:

UNIT NO. 3, BUILDING 12, SCHOLLS VILLAGE CONDOMINIUMS STAGE 4, AS SET FORTH IN CONDOMINIUM DECLARATION, RECORDED DECEMBER 2, 1999, AS 99132549, IN THE CITY OF TIGARD, COUNTY OF WASHINGTON, AND STATE OF OREGON, TOGETHER WITH THOSE LIMITED COMMON ELEMENTS APPURTENANT TO SAID UNIT AS SET FORTH IN SAID DECLARATION, AND TOGETHER WITH AN UNDIVIDED FRACTIONAL OWNERSHIP OF THE GENERAL COMMON ELEMENTS OF SAID CONDOMINIUM AS SET FORTH IN THE SAID DECLARATION AND IN ANY SUBSEQUENT AMENDMENTS THERETO AS APPURTENANT TO SAID UNIT.

Parcel ID: R2091126

Commonly known as 14176 South West BARROWS Road. Unit 3, Portland, OR 97223

# Residential Rental Agreement

This "Agreement" is entered into on November 19, 2021, between Foreclosure Help LLC, Idaho limited liability company and/or assigns (hereinafter called "Owner/Landlord") and Larry Edward Balcom (hereinafter called "Tenant"). Owner/Landlord agrees to rent property located at: 14176 SW Barrows Rd #3, Tigard, OR 97223 /LEGAL: SCHOLLS VILLAGE CONDO STAGE 4, LOT 12-3, BLDG 12 (hereinafter called the "Property") to Tenant, and both parties agree to the following:

**LEASE/RENT:**

Fixed Term Agreement: The Tenant listed above agrees to enter into a lease beginning on the date that Owner/Landlord takes ownership, and ending on **November 30, 2022**. Upon expiration, this agreement will automatically become a month-to-month agreement, unless the Tenant or the Owner/Landlord notify the other party in writing at least thirty (30) days prior to the expiration that they do not wish this agreement to continue.

1. Monthly rent is to be $300.00 per month.

2. Full rental payment is due on the 1st of each month and considered late at 12:00 AM on the 6th. Late payments shall include a $50 late fee.

3. It is preferred for the Tenant to directly deposit rent into the Owner/Landlord's account. If Tenant pays fees by personal check, and the check is returned from the bank or "bounces," Tenant forfeits the right to pay by personal check and must thereafter pay by cashier's check or money order. If the Owner/Landlord incurs any bank fees or penalties to receive the Tenant's rent, those fees and penalties shall be paid by the Tenant within three (3) business days.

4. If the initial term of this Residential Rental Agreement commences other than on the first day of a calendar month, Tenant shall pay a prorated portion for that month, calculated on a 30-day month basis from the commencement date until the first day of the following calendar month, and shall be payable in advance.

5. If full rent plus late fees/penalties are not paid by the 6th, a $50 late payment is due, and an eviction notice may be served to the Tenant. Upon delivery of the eviction notice, the Tenant will have the number of days the state law allows to pay rent in full plus late fees and penalties and the lease will henceforth be month to month. Tenant hereby grants to the Owner/Landlord a lien upon all of the Tenant's personal property placed within or upon the Property, to secure any and all unpaid obligations from the Tenant to the Owner/Landlord. Owner/Landlord shall also have the option of disposing of such personal property as the Owner/Landlord deems appropriate, including donating the same to a charitable organization or placing the same for trash collection. The Tenant hereby releases the Owner/Landlord from any and all claims with regard to the Tenant's personal property in the circumstances set forth in this paragraph.

6. **Tenant shall pay for all utilities.** Tenant is responsible for all yard maintenance, if applicable. Tenant is responsible for paying any irrigation bills, if applicable. Tenant acknowledges and is aware they are responsible for providing renters insurance for their personal possessions and vehicles and the Owner/Landlord's insurance will not cover Tenant's possessions or vehicles due to flood, fire, or any other natural cause, nor due to theft or injury caused by another party. Any fines and/or penalties that Tenant occurs from the city, county, or other entities, shall be the responsibility for the tenant to pay by the due date. In the event Owner/Landlord pays fines, Tenant must pay Owner/Landlord back within three (3) business days.

7. Owner/Landlord shall be responsible for the following utilities: None.

8. A Security deposit of $0.00 shall be required in full on the day the Owner/Landlord takes possession.

9. The number of occupants in the unit is limited to who is listed on the lease and shall include: *N/A LAB* . This number of occupants shall not be changed without written permission from the Owner/Landlord. Guests are considered to be residents when they have occupied the Property in excess of fourteen (14) days. Any increase in the number of occupants without written permission from the Owner/Landlord shall constitute grounds for cancellation of the Residential Rental Agreement at the Owner/Landlord's discretion.

Page 1 of 9

**Exhibit 3**
**Page 1 of 9**

10. If Tenant chooses to vacate the Property, they must provide a written 30-day notice. If Tenant vacates the Property before the expiration of the 30-day notice period, Tenant shall be responsible for the rent through the end of the written agreed to term. Additionally, Tenant will be charged any costs associated with re-renting the apartment.

11. Notices and other communications required by law and by this Agreement shall be deemed properly served if in writing and delivered to the Tenant personally, or to a member of Tenant's family of suitable age residing in the home, or by posting the notice prominently outside the unit of the Tenant, or by certified mail to the Tenant at the address given by the Tenant at the time of occupancy.

12. It is the Tenant's responsibility to notify the Owner/Landlord of any address changes. If Tenant fails, upon vacating the home, to furnish a forwarding address to the Owner/Landlord, Tenant's last known address shall be the address, or the address at which such notices are most likely to come to the attention of the Tenant.

13. Tenant will use the rented Property as a private dwelling. Tenant will not use the Property for unlawful activity as defined by law.

14. Tenant will make no alterations, additions, or improvements to the rented Property without prior written consent of the Owner/Landlord.

15. Tenant will abide by all rules and regulations established by the Owner/Landlord for the purpose of the general welfare, peace and comfort of the occupants of the building. Such rules and regulations are attached and made part of this Agreement.

16. Tenant may not sublet (including Airbnb/VRBO) and must fix any damages caused by guests staying at the Property.

17. Tenant will refrain from blaring music, television, musical instruments or any other form of media in a manner that can be heard outside of the home. If a noise complaint is filed, Tenant shall be responsible for remedying the legal situation and paying all associated fines.

18. Tenant will allow the Owner/Landlord the right to enter the rented Property with a 24-hour written notice for the purpose of inspections, for showing property to prospective purchasers, mortgagees, appraisers and/or contractors or for any other reason.

19. Tenant and their guests agree to treat the Property as carefully and prudently and are responsible for and agree to pay for any damage done by wind or rain caused by leaving windows open, by overflow of water, stoppage of waste pipes, or other acts of accident, negligence or carelessness. Tenant and or their guests shall not deliberately or negligently destroy, deface, damage, impair, or remove a part of the Property.

20. Washer and dryer belong to Tenant, if they break or need servicing, the Tenant shall be responsible to schedule and pay for repair and/or replacement.

21. Upon vacating the Property, Tenant agrees to have carpets professionally cleaned (evidenced by receipt), clean all floors, replace non-working light bulbs, wash inside and outside of windows, clean all windowsills, clean and defrost refrigerator, clean stove, oven, burner plates, and vents, clean all sinks, toilet bowls, shower and tub enclosures, clean all baseboards, clean the inside and top of all cabinets, return all keys and wipe down walls.

22. Tenant will give prior notice to Owner/Landlord in writing of any absence from the Property of more than fourteen (14) days.

23. No pets at any time shall be allowed inside the Property, whether they belong to the Tenant or guests of the Tenant. If Tenant is in violation of this Agreement, Tenant will be liable for any damages that resulted to the Property because of the pet plus an automatic fifty dollar ($50.00) fine shall be imposed, to be paid within three (3) days. If there is a second violation of the no-pet policy, an eviction notice will be served to the Tenant and fines will still be enforced. Pet exceptions include: *VFB M/A No PETS*

24. Tenant accepts Property and all appliances and furnishings therein as in good condition according to the attached inventory and condition statements. This statement and inventory may be used by the Owner/Landlord to determine the damages for which the Tenant may be held responsible when the Tenant vacates the Property, and in an action to recover damages, the statement and inventory is presumptive evidence of the condition of the Property and its contents at the time the Tenant took possession. In the event there is no condition statement, the Tenant has inspected the Property and accepts it as in good condition, or will note any

Page 2 of 9

**Exhibit 3**
**Page 2 of 9**

damages of any nature whatsoever and report such damages to the Owner/Landlord's agent within 24 hours of execution of this agreement. Failure to execute said agreement shall be deemed an acceptance of the Property. No alteration or remodeling changes will be made to the internal or external structure of the building or furnishings without written consent from the Owner/Landlord. All appliances belong to the Owner/Landlord except for the washer and dryer.

25. Tenant is not permitted to change the locks on Property or add additional lock(s) or keys without written permission from the Owner/Landlord. If new keys must be made because Tenant has lost or broken his, Tenant will pay a fifty dollar ($50.00) service fee. In the event Tenant loses their key or lock themselves out of the rental unit, where it is necessary for Owner/Landlord or his agent to go to said rental unit to unlock the door, there will be a fifty dollar ($50.00) service charge.

26. It is understood that in the event that it is necessary for the Owner/Landlord to employ an attorney for the collection of any delinquent funds or to enforce any obligation of the Tenant created hereunder, Owner/Landlord shall seek a court order allowing Owner/Landlord's reasonable attorney's fees and associated fees against Tenant.

27. If the Property is part of an HOA or condo association and the Tenant incurs a fine, Tenant is responsible for the payment of the fine in full. In the event that the Owner/Landlord pays the fine, the full amount of the fine and any associated fees may be added on as additional rent owed.

28. All covenants, conditions, rules, and provisions of the Residential Rental Agreement and rental application to be observed or performed by the Tenant is considered material, and a breach of either of these agreements, including providing fraudulent or false information, will result in the termination of the Tenant's right of possession of the Property.

29. The Owner/Landlord shall not be liable for any damages arising from any act of any Tenant or invitee of any Tenant, or for any condition of the Property except as the same may be a direct result of Owner/Landlord's negligence. Tenant is responsible to obtain any necessary insurance to protect their personal belongings.

30. The waiver of one breach by the Owner/Landlord does not constitute a waiver for any subsequent breach.

31. If any one provision of this lease is found to be unlawful, the remaining provisions shall remain in effect.

32. Tenant shall not assign this Agreement to another party without written permission from the Owner/Landlord, however, the Owner/Landlord is able to assign lease to a new owner at any time and will provide written notification to Tenant.

33. Owner/Landlord will pay property taxes and insurance on the Property for the next 12 months.

34. All parties that have signed this Agreement release and forever discharge Clinton Peterson, April Peterson, and Foreclosure Help, LLC from all actions, proceedings, claims, damages, costs, demands, court orders and legal fees that may arise from utilizing the provided contracts.

**RULES:**

Tenant must obey the following rules. New rules and regulations or amendments to these rules may be adopted by the Owner/Landlord upon giving 30 days notice in writing. The Tenant is responsible for the conduct of guests and their adherence to these rules at all times.

1. The Property must be kept clean, sanitary, and free from objectionable odors.
2. Tenant is responsible to maintain the cleanliness of the areas visible from the street.
3. No littering of papers, cigarette butts, hazardous waste or trash. All trash must fit inside the city bins. No trash or other materials may be accumulated which will cause a hazard or be in violation of any health, fire, safety ordinance or regulation.
4. Furniture must be kept inside the property, unless it is patio furniture. Clothing, curtains, and rugs shall not be hung outside any window, ledge, or balcony.
5. NO SMOKING POLICY: Tenant is aware that this is a non-smoking property and neither they nor their guests shall smoke or vape inside the property at any time. If Tenant violates this Agreement, they shall be fined fifty dollars ($50.00) to be paid within three (3) days of notice.
6. The use of gasoline, flammable cleaning solvents, or other combustibles in the Property is prohibited.

**REPAIRS:**

**Exhibit 3**
**Page 3 of 9**

1. It shall be the responsibility of the Tenant to regularly test smoke detectors within the Property to ensure that the device(s) are in operable condition, and if they are not, Tenant is responsible for replacing them. Owner/Landlord is not liable for any fire related occurrences.

2. Tenant shall advise management, in writing, of any items requiring repair that constitute an emergency so that a claim to the landlord policy insurance can be made.

3. No alteration or improvements shall be made by Tenant without written consent of the Owner/Landlord. Tenant shall be liable for any repairs necessary during or after residency to restore Property to the original condition.

4. Tenant will be responsible for keeping the walkways clear and salted in the winter months. Owner/Landlord will not be held liable for accident or injury incurred from poor weather or weather-related conditions.

5. Vehicles illegally parked or stopped unattended on the Property will be towed away at the Tenant's expense. Vehicles may not be repaired on the Property and cannot be stored on the Property if they are not able to be driven.

Move -In Check List: Move-Out Check List:

Kitchen: _____

Flooring: _____

Oven/Racks: _____

Range top: _____

Dishwasher: _____

Fan/fixtures: _____

Refrigerator: _____

Freezer: _____

Light bulbs: _____

Windows: _____

Walls: _____

Vent Fan: _____

Cabinets: _____

Counter Tops: _____

Ceiling: _____

Fire Ext.: _____

Page 4 of 9

**Exhibit 3**
**Page 4 of 9**

Paint Cond.: _____

Baseboards: _____

Bedroom 1:
Light Fixture: _____

Light Bulbs: _____

Walls: _____

Door: _____

Vents: _____

Windows: _____

Floor: _____

Closets: _____

Knobs: _____

Paint: _____

Ceiling: _____

Baseboards: _____

Bedroom 2:
Light Fixture: _____

Light Bulbs: _____

Walls: _____

Door: _____

Vents: _____

Windows: _____

Floor: _____

Closets: _____

Knobs: _____

Paint: _____

Ceiling: _____

Exhibit 3
Page 5 of 9

Baseboards: _____

Hall: _____

Bedroom 3:
Light Fixture: _____

Light Bulbs: _____

Walls: _____

Door: _____

Vents: _____

Windows: _____

Floor: _____

Closets: _____

Knobs: _____

Paint: _____

Ceiling: _____

Baseboards: _____

Bedroom 4:
Light Fixture: _____

Light Bulbs: _____

Walls: _____

Door: _____

Vents: _____

Windows: _____

Floor: _____

Closets: _____

Knobs: _____

Paint: _____

Ceiling: _____

Exhibit 3
Page 6 of 9

Baseboards: _____

Bathroom 1:
Floor: _____

Counters: _____

Shower/Tub: _____

Doorknobs: _____

Toilet: _____

Sink: _____

Cabinets: _____

Towel Bars: _____

Light Fixture: _____

Light Bulbs: _____

Baseboards: _____


Bathroom 2:
Floor: _____

Counters: _____

Shower/Tub: _____

Doorknobs: _____

Toilet: _____

Sink: _____

Cabinets: _____

Towel Bars: _____

Light Fixture: _____

Light Bulbs: _____

Baseboards: _____

**Exhibit 3**
**Page 7 of 9**

Living Room:
Baseboards: _____

Floor: _____

Walls: _____

Windows: _____

Fixtures: _____

Ceiling: _____


Hallway:
Floor: _____

Walls: _____

Light Fixture: _____

Light Bulbs: _____

Garage: _____

Smoke/Carbon Det: _____

Front Door: _____

Back Door: _____

Side Doors: _____

Storage Area: _____

Other: _____

# of Keys Given: _____ 0 _____

Page 8 of 9

**Exhibit 3**
**Page 8 of 9**

*LEB* **FULLY INFORMED AND NOT CONFUSED, DISORIENTED OR OTHERWISE IMPARED:** I/We have signed all of the documents being fully informed and with sufficient understanding of all terms and conditions contained therein. I/We are not under the influence of any mind-altering substance(s). I/We have no physical, mental or emotional conditions or ailments that would cause in any way for me not to be able to make rational, well thought out decisions.

*LEB* **LEGAL COUNSEL HAS BEEN ADVISED:** I/We agree and acknowledge that Foreclosure Help, LLC has advised me to seek independent legal counsel to review the Residential Rental Agreement and terms of the agreement. If I/We choose not to seek counsel it will be a decision I/We made of our own accord.

*LEB* **NOT UNDER DURESS:** I/We are not under duress and have signed all the rental documents of our own free will, without any undue financial pressure. Foreclosure Help, LLC has in no way pressured me into renting the Property or signing any documents.

*LEB* **PROFIT FROM THIS TRANSACTION:** I/We agree that Foreclosure Help, LLC and/or assigns is entitled to any profit, in any amount that may ultimately result from the subsequent resale of the Property.

*LEB* **NO OTHER PROMISES HAVE BEEN MADE:** I/We have not been promised anything other than what is described in this Agreement. There are no unresolved issues; no "side agreements", nor are there other terms not disclosed in this Agreement. Every agreement made here has been reduced to writing.

*LEB* **SATISFACTION:** I/We have made a decision to rent the Property. I/We have no legal claim to the Property or any items left on or in the Property. Once the term of the rental agreement expires, the Property or any items left on or in the Property will belong to the Owner/Landlord.

_____ (Tenant) Date 20 Nov 2021

_____ (Tenant) Date

_____ (Tenant) Date

_____ (Owner/Landlord) Date 11/19/2021

_____ (Owner/Landlord) Date

Page 9 of 9

**Exhibit 3**
**Page 9 of 9**

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS on all CM/ECF participants through the Court's Case Management Electronic Case File system on the date set forth below:

Dated this 2nd day of August, 2023.

WILDWOOD LAW GROUP LLC

By: *s/ Jeanne Sinnott*
Jeanne Sinnott, OSB #075151

*Of Attorneys for Defendants*