Terry Scannell, OSB #853220
E: *terry@scannellaw.com*
Christopher E. Hayes, OSB #093777
E: *chris@scannellaw.com*
SCANNELLAW, LLC
7307 SW Beveland Street, Suite 200
Tigard, OR  97223
T:  503-776-0806
*Attorneys for Plaintiffs*


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **LARRY BALCOM,** an individual, by and through his attorney-in-fact, and **MARY BARNES,** attorney-in-fact for Larry Balcom, | Case No. 3:23-cv-00528-SB |
| | **AMENDED COMPLAINT** |
| Plaintiffs, | 1. Violation of the Oregon Unlawful Trade Practices Act |
| v. | 2. Financial Abuse of a Vulnerable Person |
| | 3. Breach of Fiduciary Duty |
| **CLINTON PETERSON** and **APRIL PETERSON**, a married couple, and **FORECLOSURE HELP, L.L.C**, an Idaho Limited Liability Company, John & Jane Doe 1-5, | 4. Constructive Fraud/Quiet Title |
| | 5. Action to Pierce the Corporate Veil of Foreclosure Help |
| | 6. Fraudulent Transfer |
| Defendants. | **Demand for Jury Trial** |

The Plaintiffs by and through their attorneys, Scannellaw, LLC, plead as follows:

//

Page 1 – COMPLAINT

**PARTIES, VENUE AND JURISDICTION**

1.

Plaintiff Larry Balcom ("Larry") is an individual who was and is a citizen of the State of Oregon at all relevant times.  Mary Barnes ("Barnes") is the Attorney-in-Fact for her brother, Larry, and is operating pursuant to a Power of Attorney.  A true and correct copy of that POA is attached to this Amended Complaint as Exhibit A.

2.

The property at issue is located at 14176 South West Barrows Road, Unit 3, Tigard, Oregon ("the Property"), and is located within the District.

3.

Defendants Clinton and April Peterson ("April" and "Clinton" collectively "Defendants") are a married couple who were and are citizens of Idaho.

4.

Defendant Clinton holds an inactive salesperson real estate license in the State of Idaho and was running Foreclosure Help, LLC, at all relevant times.

5.

Defendant April is an active designated real estate broker in the State of Idaho, license number DB48430, and employed with Prestige Real Estate Investments, LLC ("PREI").  The address of record for PREI is 1775 W. State St. Ste 276, Boise, ID 83702.   April was Larry's primary contact with Foreclosure Help, LLC, and worked in concert with her husband during their transaction with Larry.

//

//

Page 2 – COMPLAINT

6.

Foreclosure Help, L.L.C. ("Foreclosure Help") was an Idaho Limited Liability Company that was under the control of the individual Defendants at all material times. The address for Foreclosure Help was also 1775 W State St Ste 276, Boise, ID 83702. At a time currently unknown to Plaintiffs, Foreclosure Help was dissolved or simply ceased its operations and transferred all its assets to others.

7.

Jane and John Does 1-5 are individuals or entities who are currently unknown to the Plaintiffs. These John and Jane Does aided and abetted in the transfer of assets of Foreclosure Help, or who are themselves transferrers of the assets, which the Defendants transferred for the purpose of defeating the Plaintiffs' claims.

8.

Venue is proper, pursuant to 28 U.S.C. § 1391(b), because the real property that is the subject of this action is located in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because the Defendants conducted substantial business in this District, and had sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District through the promotion, sale, and marketing, of their products and services in this District.

9.

This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Larry and Defendants, and the amount in controversy exceeds $75,000. The named Defendants have also consented to the jurisdiction of this Court. This court also has jurisdiction over state law claims in this action pursuant to 28

Page 3 – COMPLAINT

U.S.C. § 1376.  There is personal jurisdiction of the Defendants in the case because each Defendant had substantial and continuing contact within the State of Oregon through their phone calls, business solicitations, emails, and through their sending of documents to Larry to be signed in Oregon and returned to the Defendants.  One or more of the Defendants acted as the actual agent for another Defendant in taking such action.  The Defendants also provided other Oregonians with foreclosure "help."

## FACTS COMMON TO ALL CLAIMS

### 10.

Larry is a 61-year-old man who has relied on his mother for advice and assistance his entire life.  He is and has always been highly vulnerable and susceptible to manipulation and bullying.

### 11.

The Plaintiffs' parents, Mark and Carol Balcom, ("the Plaintiffs' Parents"), purchased the Property in 2017 for $240,000, free of any mortgage or lien.

### 12.

The Plaintiffs' Parents moved to Colorado in 2018 to be near their daughter, Barnes, who would care for them as they got older.  Prior to their move, for estate planning purposes, they transferred the title of the Property to Larry.

### 13.

Shortly after the Parents moved away, Larry fell victim to a gift card scam that would take approximately $100,000 from him over a five-year period.

//

//

14.

Plaintiffs' mother passed away on November 28, 2020.

15.

Larry only sought help and advice from his mother and would rarely say more than three or four words to other family members.  Without his mother there for assistance, and because he fell behind on bills due to the ongoing gift card scam, Larry took a line of credit from OnPoint Credit Union for $5,500, followed by a $25,000 line of credit from Bank of America, and finally in June of 2021, a $72,000 mortgage on the Property from Homeside Financial.

16.

On November 01, 2021, Larry received a statement informing him that he was three months past due on his Homeside mortgage payments and owed $1,288.24.

17.

Larry contacted Foreclosure Help, on or around November 12, 2021, seeking assistance to avoid foreclosure.  Larry asked what options were available to him in order to avoid foreclosure, but was scared and thought his only option was to sell the Property.  Larry asked the Defendants what options he had to secure funding and prevent losing his home.  Defendants immediately began discussing the options available to Larry to avoid foreclosure.

18.

At the time Larry contacted the Defendants, the Foreclosure Helps website, which no longer exists, read:

> "*For over a decade we have been dedicated to helping homeowners avoid foreclosure across the United States.  You can STAY living in your home OR we can help you sell it for top dollar.  YOU decide*."

//

19.

The Property had an estimated value of $340,000 in November 2021, and a current market value of up to $450,000.

20.

Defendants offered to assist Larry to avoid foreclosure and remain in his home but never executed a contract for those services, nor did the Defendants inform Larry that he had the right to cancel or rescind any agreement made between them.

21.

On or around November 18, 2021, Defendants offered to buy the Property for the amount of the Larry's debt and closing costs.  They told Larry he could lease the property for $300 a month for the first year, but then the rent would be raised to market value.

22.

On or around November 19, 2021, Defendants instructed Larry on how to use Zoom. After they taught him how to use the software, he walked the Defendants around the Property using the software so they could inspect the Property.

23.

A Standard Purchase and Sale Agreement was executed on November 19, 2021, for the Property.  The total purchase price was $73,800, which was the $72,500 mortgage plus the $1,300 past due that Larry owed to Homeside.  Closing was set for November 20, 2021.  Clinton Peterson, on behalf of Foreclosure Help, and Larry E. Balcom signed the agreement on November 24, 2021.  Attached to this Complaint is a true and correct copy of the Purchase and Sale Agreement as Exhibit B.

//

Page 6 – COMPLAINT

24.

On November 20, 2021, Larry signed several documents.  The first was a Residential

Rental Agreement with the Defendants for the Property.  Rent was set at $300 a month and the

terms would expire on November 30, 2022.  Second, Larry signed a release that allowed Clinton

and April, Kim Bailey, and Foreclosure Help, to access his account information.  Attached to this

Complaint is a true and correct copy of the Rental Agreement and Release as Exhibits C and D.

25.

The next document Defendants requested Larry sign on November 20, 2021, was a

Special Power of Attorney ("POA").  This document granted Clinton ("Agent") rights as Larry's

"attorney-in-fact."  As Larry's Agent, Clinton had a wide range of powers, including but not

limited to selling or conveying any interest in the Property, mortgaging or encumbering any

interest in the Property, selling *any* personal property that Larry might own now or in the future,

and acting on Larry's behalf with respect to matters involving real estate.  The POA document

states that it was "effective immediately" and "shall continue effective until my death."  A true

and correct copy of the Special Power of Attorney is attached to this Complaint as Exhibit E.

26.

The final document the Defendants requested Larry sign on November 20, 2021, was a

Statutory Warranty Deed conveying the Property to Foreclosure Help.  A true and correct copy

of the Statutory Warranty Deed is attached to this Complaint as Exhibit F.

//

//

//

//

Page 7 – COMPLAINT

27.

Larry called April on or about January 19, 2022, to inquire about buying a new condominium.  At that time Larry had a credit score of 500.  Later that month, Larry called and asked to be put back on the title for the Property.  In the first few weeks of February, Larry called April for a loan.

28.

Larry received verification from Idaho Central Credit Union on March 3, 2022, that $71,697.30 had been transferred by Clinton W. Peterson to pay off his mortgage loan.

29.

Foreclosure Help conveyed the Property by Quitclaim deed to Clinton on August 18, 2022, for and in consideration of $1.00.  Clinton signed the Quitclaim Deed on behalf of Foreclosure Help and was the Grantee.  Despite all the books and records of Foreclosure Help being under document request from the Plaintiffs since August 11, 2023, Foreclosure Help has not produced any documents showing that it held a meeting or took any formal action to approve this transfer.  In fact, the Defendants have failed to produce any documents that demonstrate Foreclosure Help held any meetings to take any actions, including to wind up or down the entity.

30.

Clinton personally secured a Line of Credit Trust Deed against the Property on October 17, 2022, for $288,000.  The Defendants promptly used the Property for collateral to obtain a loan for $288,000.  This constituted a profit of 75% in four weeks.  April has also admitted that she participated in obtaining this loan.

//

//

Page 8 – COMPLAINT

31.

Defendants notified Larry on November 3, 2022, that he either needed to agree to a rental increase from $300 to $2,200, which is a 633% increase, or find another place to live by December.  This demand letter was signed by April Peterson personally as "Landlord."   A true and correct copy of this demand letter is attached to this Amended Complaint as Exhibit G. Utilizing the original Rental Agreement, $300 was redlined, and "$2,200.00 per month starting on "12/3/2022" was added and electronically initialed by "AP" and "LB" on "11/03/22."

32.

In 2022, landlords in Oregon were barred from raising the rent on any tenant during a 12-month period by more than 9.9% to comply with ORS 90.323(3)(c).

33.

Larry makes a small wage and continued to be defrauded by the gift card scheme at this point.  He struggled to pay the $300 in rent and could not afford anything higher, let alone $2,200.  Had Larry been forced to pay more than $300 a month in rent, he would have been forced into homelessness.

34.

Defendants understood Larry could not pay the amount they required for rent and began searching for places they could move Larry to so that the Defendants could take possession of the Property.

35.

One of the people the Defendants contacted to "help" Larry became concerned about his well-being.  A landlord in Lake Oswego ("Troy") was approached by someone claiming to be "Larry's niece" who was looking for a place for him to rent.  After Troy met with Larry, Troy

discovered it was not Larry's niece who was trying to find Larry a place to live.  Troy became

extremely concerned for Larry's wellbeing and believed he was the victim of a fraud.  Despite

Larry not wanting to involve the family out of shame and embarrassment, Troy tracked down

Larry's sister, Barnes, via Facebook.

36.

Larry was initially hesitant to discuss in detail the gravity of the situation with Barnes.

Over the first weeks of December 2022, through conversations with Larry and Troy, Barnes was

able to piece together what was happening.  Larry believed he had to move out of the Property

immediately and claimed that the Defendants had found him a trailer for $500 a month, a storage

facility for his personal belongings, and had a moving truck coming to move him.  Barnes

convinced Larry to stay in the property, stop communicating with the Defendants, and block

their calls.

37.

On December 30, 2022, Larry received a letter from attorney Damon J. Petticord

notifying Larry that he owed two months past due rent for the Property.  When Barnes

questioned Larry about his financial situation and his ability to pay rent, she learned of the

ongoing gift card scam and immediately referred that matter to the Federal Bureau of

Investigation, which has since opened a case.  While Mr. Petticord did bring a suit against Larry

for eviction, Mr. Petticord quickly dropped the suit once he did additional due diligence.

38.

On or about February 10, 2023, Larry received a phone call from Rick Carmen with

Cornerstone Law Group in Hillsboro, Oregon.  Mr. Carmen informed Larry that the Defendants

were willing to waive the late charges for the four months he owed in rent and pay moving fees

Page 10 – COMPLAINT

for his relocation, but that their next steps were to initiate eviction proceedings.  As of the date of

the filing of this Amended Complaint, Mr. Carmen is no longer representing the Defendants.

39.

Throughout Larry's entire transaction with Foreclosure Help, April was his primary

contact.  April was the person who onboarded Larry, took his phone calls, and handled his file.

While Clinton's name is on most of the paperwork along with their company, Foreclosure Help,

Clinton and April worked together to try and "help" Larry.

## CLAIMS FOR RELIEF

### First Claim for Relief

### (Violation of the Oregon Unfair Trade Practices Act (OUTPA))

40.

Paragraphs 1-39 are hereby incorporated by reference as if set forth in full herein.

41.

Foreclosure Help and its agents, Clinton and April, solicited through their website and

represented that for a fee they could assist Larry, a homeowner, in preventing, postponing, or

obtaining, a loan or advancement of funds, to avoid foreclosure.  Therefore, the Defendants are

"Foreclosure Consultants" as defined by ORS 646A.702(3).

42.

ORS § 646A.710 requires that any services a foreclosure consultant provides to a

homeowner be in writing and be provided at least 24-hours before the homeowner signs, inter

alia.  Here, the Defendants provided no written contract to Larry outlining any of the services

they would offer him as foreclosure consultants despite him clearly requesting assistance to

avoid foreclosure, and them offering themselves as experienced foreclosure consultants with

Page 11 – COMPLAINT

over a decade of experience.  Thus, the Defendants failed to comply with the requirements of
ORS § 646A.710.

43.

ORS § 646A.720 restricts what foreclosure consultants can do when assisting
homeowners.  In relevant parts, the restrictions among ORS § 646A.720 are:

> (1) Collecting or receiving any compensation unless the foreclosure consultant
> has performed in good faith under the contract;
>
> (5)  Directly or indirectly acquire an interest in a residence in foreclosure or
> default transferred by a homeowner with whom the foreclosure consultant has
> contracted.
>
> (8) Take a power of attorney from a homeowner except for the purpose of
> obtaining or inspecting documents.
>
> (9)  Induce or attempt to induce any homeowner to enter into a foreclosure
> consulting contract that does not comply in all respects with ORS 646A.702 to
> 646A.720.
>
> (10)  Directly or by implication make a statement or engage in conduct that is
> false, deceptive, misleading, or likely to cause confusion or misunderstanding
> regarding
>
>> (a)  foreclosure consultant service;
>>
>> (b)  foreclosure consulting contract, or;
>>
>> (c)  residence in foreclosure or default.

44.

The Defendants in this case have violated nearly every restriction placed on foreclosure
consultants that the State of Oregon has imposed.  They never followed the statutory
requirements for a contract, making any and all compensation they received in bad faith.  The
Defendants "helped" Larry avoid foreclosure by acquiring fee simple interest in the Property,

Page 12 – COMPLAINT

which was in default, for 5 times less than its market value, and by a person (Clinton) who had a fiduciary duty to Larry. This was done in less than two weeks' time. Even if Larry had not found alternative means to pay the mortgage, his lender would have been required to abide by Oregon foreclosure statutes which can often take a year, ensuring that Larry received the equity from the foreclosure sale. The Property was wrongfully taken by Foreclosure Help, then transferred by Quitclaim deed, for $1.00 to Clinton. Shortly after this transfer, there was a $288,000 mortgage taken out by the Defendants against the Property. Larry remained confused and misled throughout the entire process. The speed at which the Defendants moved, the lack of any legal contracts or consultation, the utter disregard for their client's best interests, and Clinton's status as fiduciary for Larry, evidences the Defendants' maliciousness to violate their statutory duty.

45.

O.R.S. § 646.608(1)(hhh)(iii) states that a person engages in an unlawful business or trade practice if in the course of their business, vocation, or occupation, if it violates a provision of ORS 646A.702 to 646A.720. As shown above, the Defendants violated nearly every provision of the governing statutes while acting in a business they owned and working in an occupation they had for over a decade.

46.

Larry has incurred ascertainable damages in the amount of $327,000. Due to Defendants' willful and unlawful acts and omissions contained herein, Larry has suffered actual damages in the amount of $400,000, or an amount to be proven at trial, or the statutory penalty of $200.00 whichever is greater. Due to the egregious nature of Defendants' acts, the vulnerability of Larry, Clinton's status as fiduciary, and the public interest, Larry also requests

Page 13 – COMPLAINT

$4 million in punitive damages.  Per ORS 646.638(3), Larry asks for reasonable attorney fees and costs.

## SECOND CLAIM FOR RELIEF

### (Financial Abuse of a Vulnerable Person ORS 124.110)

47.

Paragraphs 1 - 46 are hereby incorporated by reference as if set forth in full herein.

48.

Larry has been unable to manage his financial resources due to mental limitations for many years.  Larry relied completely on his mother to obtain housing, manage money, monitor spending over the years, and to ensure his financial well-being.  This reliance, and Larry's inability to manage his financial resources, was made painfully clear in the years following his mother's passing.

49.

Within four years, Larry went from owning a property with no encumbrances and a healthy financial situation to being defrauded out of over $100,000 in a gift card scam, running up over $70,000 in debt against his Property, falling behind on mortgage payments, being manipulated into selling his home for 5 times less than what it was worth, and nearly becoming homeless because he could not afford $300 a month in rent.  Moreover, Larry continued to call the Defendants repeatedly for months with questions about his finances; Defendants admitted the calls were "strange."  Larry didn't understand why he could not buy another condominium with a credit score of 500 and a monthly budget of $300.  He did not understand why the Defendants couldn't put him back on the title or why April wouldn't give him a loan.  When looking at the totality of the circumstances, from the financial scams Larry fell victim to, to the lack of a basic

Page 14 – COMPLAINT

understanding of how property loans work, it is evident that Larry satisfies the requirements for "financially incapable" as defined by ORS 125.005(3), and is therefore "vulnerable" as defined by ORS 124.100(1)(e).

50.

ORS § 124.110 states an action may be brought for financial abuse when a person wrongfully takes or appropriates money or property of a vulnerable person without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person. Conduct is seen as "wrongful" if it is carried out with an improper motive or by improper means. *Empire Fire & Marine Ins. v. Fremont Indemnity*, 90 Or.App. 56, 62, 750 P.2d 1178 (1988). "Improper means" must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of. *Church v. Woods*, 77 P.3d 1150, 1153 (Or. App. 2003).

51.

The Defendants violated nearly every applicable section of the Oregon Mortgage Rescue Fraud Prevention Act as shown in the First Claim for Relief while appropriating Larry's real property. Therefore, as a vulnerable person, the Defendants wrongfully took Larry's home and money through improper means due to their violation of the foreclosure consultant law. As a result of Defendants' wrongful taking of Larry's money and real property, he has suffered economic damages in the amount of $400,000 or statutory damages in the amount of $500, and noneconomic damages in the amount of $50,000. Larry is entitled to three times all economic and noneconomic damages under ORS 124.100(2)(a)&(b). Larry also requests reasonable attorney fees under ORS 124.100(2)(c).

//

Page 15 – COMPLAINT

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

52.

Paragraphs 1-51 are incorporated by reference as if set forth in full herein.

53.

The Defendants acting together, and in violation of ORS 646A.720A(5),(8), unlawfully manipulated Larry into signing over many of his rights under a Special Power of Attorney document the Defendants requested he sign.  While Clinton gained the right to control Larry's personal and real property, he also owed a duty to Larry to act in his best interest regarding those property transactions.  While the POA document protects the Agent [Clinton] from "any loss that results from a judgment error that was made in good faith" it clearly states "[h]owever, my [Plaintiff] Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney." *Exhibit E*, p. 2, ¶ 3.

54.

The POA document states that it "shall be governed by the laws of the state of Oregon." *Exhibit E*, p. 2, ¶ 6.  Under ORS 127.045 which governs the duty of agents under an Oregon POA "an agent must use the property of the principal for the benefit of the principal." Furthermore, Oregon courts have extended the fiduciary duty owed by an agent acting under a POA when controlling the principal's finances, stating that agents have a "legal duty of care" to the principal. *State v. Roberts*, 436 P.3d 57, 65 (Or. App. 2019).  The POA document itself imposed several legal duties on the Defendants to "act solely in the interest of the principal," "avoid conflicts of interest," "keep the principal's property separate…from other property owned

or controlled by you [Clinton]," "[y]ou *may not* transfer the principal's property to yourself without *full and adequate consideration*." Italics added. *Exhibit E*, p. 5, ¶¶ 1, 5, 9.

55.

Clinton violated the fiduciary duty he owed Larry, both under Oregon law and the Special Power of Attorney.  At the direction of the Defendants, Larry signed and appointed Clinton his agent on November 20, 2021; per the terms of the document it was effective immediately.  At the time Clinton assumed responsibility to act as Larry's fiduciary, specifically in matters of real estate and property, Larry still held title to his home.

56.

Clinton's first act as Larry's fiduciary was co-signing the paperwork that would convey Larry's home to the Defendants' company, Foreclosure Help, for 5 times less than what it was worth.  Nothing Clinton did was to the benefit of Larry, whose only problem related to the Property before he met the Defendants was $1,200 in late mortgage payments.  As a fiduciary, Clinton could have helped Larry secure funding against his equity to pay the late mortgage payments, inquired about his financial problems and discovered the gift card scam, or helped Larry negotiate a repayment plan with his bank and monthly budget.  Clinton did none of the things fiduciaries are bound to do, yet violated nearly all the duties he owed Larry.  Clinton working in concert with the other Defendants utilized a company he held an interest in to take property from his principal for far below full and adequate consideration.  Shortly after the Property was free and clear of encumbrances, while still having a legal fiduciary to Larry, Clinton transferred Larry's property to himself by Quitclaim deed for $1.00, and within two months took out nearly $300,000 against the title.

//

Page 17 – COMPLAINT

57.

Because of Clinton's multiple breaches of his fiduciary duties, Larry lost his home, was forced to pay rent on the Property that was wrongfully taken from him, suffered emotional distress, and nearly became homeless. Larry incurred economic damages in the amount of $400,000 and non-economic damages in the amount of $50,000. Due to Larry being a vulnerable person, the number of statutes the Defendants violated, and the astounding number of duties Clinton violated as a fiduciary, Larry requests $4 million in punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Constructive Fraud/Quiet Title)

58.

Paragraphs 1-57 are hereby incorporated by reference as if set forth in full herein.

59.

Oregon courts have long recognized the theory of constructive fraud. "Constructive fraud often exists where the parties to a transaction have a special confidential or fiduciary relation which affords the power and means to one to take undue advantage of, or exercise undue influence over, the other. A course of dealing between persons so situated is watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party." *U.S. Nat. Bank of Portland* v. *Guiss*, 331 P.2d 865, 876 (Or. 1958).

60.

"The law seems to be well settled that when one accepts a confidential or fiduciary relation to another, as that of guardian and ward, attorney and client, and the like, where the donee or grantee is supposed to exercise an unusual and commanding influence over the grantor,

courts will set aside the conveyance, unless the grantee can show that the transaction was fair, and without fraud or undue influence." *Gilmore v. Burch*, 7 Or. 374, 383 (1879).

61.

Clinton and the other Defendants, working in concert with each other and as an agent of Foreclosure Help, held a fiduciary duty to Larry. Moreover, Clinton and April, working as agents for Foreclosure Help, held themselves out to be foreclosure consultants as defined by ORS 646A.702(3). The Oregon Mortgage Rescue Fraud Prevention Act imposes several statutory duties on individuals holding themselves out to be "foreclosure consultants" because those facing foreclosure are uniquely susceptible to fraud. As discussed above, Clinton violated almost all the duties he owed Larry as a fiduciary, the consideration was incredibly below what could be considered fair, and Larry is financially vulnerable. The lack of the requisite contracts and the violation of nearly every governing statute further supports the finding of constructive fraud in the transaction.

62.

Larry is in possession of the Property despite Defendants' attempts to evict him, is without an adequate remedy at law, and has a substantial interest or claim to the Property.

63.

Defendants took advantage of their relationship with Larry and his vulnerabilities to enrich themselves with a deal that no financially capable person would deem "fair." In the process of taking Larry's home for far less than it was worth, they violated nearly every applicable statute as well as Clinton's fiduciary duty. Therefore, Larry is entitled to a judgment granting him equitable relief and/or ownership of the Property, or a judgment to the effect that Larry's rights are superior to anyone else.

## FIFTH CLAIM FOR RELIEF

### (Piercing the Corporate Veil of Foreclosure Help)

64.

Paragraphs 1-63 are hereby incorporated by reference as if set forth in full herein.

65.

Clinton and April either control or did control Foreclosure Help and used Foreclosure Help as their alter egos or agent, and/or ignored corporate formalities and did not keep the finances of Foreclosure Help and its assets, such as the Property, separate from their own accounts.

66.

For example, between December 1, 2021, and December 31, 2022, Foreclosure Help maintained a bank account with Idaho Central Credit Union.  The Defendants have refused to release specific banking information about the Foreclosure Help account that will establish the assets and liabilities of the entity.  The account information does show that Foreclosure Help had significant economic activity during 2022 and appears to have held or is making payments on approximately three to four properties.  Foreclosure Help was "dissolved" at a time unknown to the Plaintiffs, but at a time after the Plaintiffs' claims were made known to the Defendants. Before Foreclosure Help was dissolved, all its assets were transferred to third-parties.

67.

Clinton and April engaged in the improper conduct as is more specifically set forth in paragraphs 17 through 26.

//

//

Page 20 – COMPLAINT

68.

As a direct and proximate result of the improper conduct alleged herein, Larry

entered into a transaction with Foreclosure Help and the Defendants that he would not otherwise

have entered into.

69.

Larry has been told that Foreclosure Help was dissolved and has no assets from which to

stratify a judgment in this case.

70.

By transferring the Property and all its other assets, Foreclosure Help acting through the

individual Defendants, made itself insolvent and is inadequately capitalized.  Its assets are

insufficient to cover its potential liabilities, which were reasonably foreseeable from the nature of

the business.

71.

Therefore, if the Plaintiffs prevail on their Claims for Relief in this lawsuit, the Plaintiffs

will be unable to collect from Foreclosure Help.

72.

For that reason, the Plaintiffs ask the Court to ignore the entity status of Foreclosure Help

and find that Clinton and April are jointly and severally liable for any judgment herein.

### **SIXTH CLAIM FOR RELIEF**

**(Fraudulent Transfer ORS 95.200)**

**COUNT 1 (As to Foreclosure Help & Clinton Peterson Only)**

73.

Paragraphs 1-72 are hereby incorporated by reference as if set forth in full herein.

Page 21 – COMPLAINT

74.

To establish a fraudulent transfer under the statute, a plaintiff must prove, by a preponderance of the evidence, that the debtor made a "transfer," that the plaintiff has a claim as a creditor that arose before or after the transfer was made, and that the transfer was made "with actual intent to hinder, delay, or defraud" the plaintiff. *Fadel v. El–Tobgy*, 245 Or.App. 696, 707, 264 P.3d 150 (2011), *re v. den.*, 351 Or. 675, 276 P.3d 1123 (2012) (describing elements); *Preferred Funding, Inc. v. Jackson*, 185 Or.App. 693, 699, 61 P.3d 939 (2003); *Morris v. Nance*, 132 Or.App. 216, 223, 888 P.2d 571 (1994), *rev. den.*, 321 Or. 340, 898 P.2d 192 (1995) (stating preponderance of evidence standard).

75.

95.200(12) defines a "transfer" in broad terms as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset [.]"  An "asset," in turn, is defined as "property of a debtor." ORS 95.200(2).  Finally, "property" is defined as "anything that may be the subject of ownership." ORS 95.200(10). *Norris v. R & T Mfg., LLC*, 265 Or App 672, 676, 338 P3d 150, 154 (2014).

76.

As set forth in paragraph 49, the Defendants were aware that Larry was contesting the transfer of the Property to them, but chose to transfer the Property from Foreclosure Help to Clinton.  Not only did the Defendants transfer the Property to Clinton, but they also transferred all of the assets of Foreclosure Help to the Jane and John Doe Defendants.

77.

Foreclosure Help transferred the Property in haste to Clinton and the other Jane and John Doe Defendants in an effort to defeat and hinder the legitimate claims of Larry.

Page 22 – COMPLAINT

Under ORS 95.200:

> (3) "Claim*" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.*

> (4) "Creditor" means a person who has a claim against a debtor.

Larry is the Creditor.

> (6) "Debtor" means a person against whom a creditor has a claim.

The Debtor is Foreclosure Help. The transferees are Clinton and the Jane and John Doe Defendants.

> (1) In any action for relief against a transfer or obligation under ORS 95.200 to 95.310, a creditor, subject to the limitations provided in ORS 95.270, may obtain:

> > (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

> > (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by any applicable provision of any other statute or the Oregon Rules of Civil Procedure.

> > (c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

> > > (A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

> > > (B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

> > > (C) Any other relief the circumstances may require

78.

By making the transfer as described in Paragraphs 25 through 30 above, the Defendants are in violation of the Uniform Fraudulent Transfer Act (UFTA), ORS 95.200 *et seq.*, and the common law.

Page 23 – COMPLAINT

**COUNT 2 (As to April Peterson and John and Jane Doe Defendants Only)**

79.

Plaintiffs reallege and incorporate by reference the allegations in paragraphs 1 through 78.

80.

April and or the Jane and John Doe Defendants aided and abetted in the fraudulent

transfer of the Property to Clinton and also benefited in the form of the value of the Property.

81.

Section 876 of the Restatement (Second) of Torts (1979) ("Restatement") sets out three

ways in which persons acting in concert may be held accountable for each other's tortious

conduct:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:
>
>> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>>
>> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>>
>> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Or put another way, as early as the turn of the century, the courts in Oregon have held:

> "all who aid, command, advise, or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be if they had done the same tort with their own hands.' *Granewich v. Harding*, 329 Or 47, 53–54, 985 P2d 788, 792 (1999).

82.

April and/or the Jane and John Doe Defendants acted to aid and abet the violations of the

fraudulent conveyance statute.  As an aider and abettor, April along with the John and Jane Doe

Defendants, is responsible as if they were the debtor or the transferee.

Page 24 – COMPLAINT

83.

As a direct result of the actions of April and the John and Jane Does as described in Paragraphs 79 through 82, Larry has been damaged in an amount not more than $400,000.

84.

Larry is also entitled to his attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees under ORS 95.260(1)(c)(C).

**PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff prays for relief as follows on his claims:

1) On their First Claim for Relief for Plaintiffs' actual damages, in the amount of approximately $400,000, or an amount to be proven at trial, ascertainable damages in the amount of $327,000, or an amount to be proven at trial, or $200 of statutory damages, whichever is greater, plus pretrial interest, plus $4 million in punitive damages, plus attorney fees and costs allowed under the statute;

2) On their Second Claim for Relief for Plaintiffs' actual damages in the amount of $1.2 million, or an amount to be proven at trial, or $500 of statutory damages, whichever is greater, plus pretrial interest, plus emotional distress damages of $150,000, plus attorney fees and costs allowed under the statute;

3) On their Third Claim for Relief for Plaintiffs' actual damages in the amount of $400,000, or an amount to be proven at trial, plus pretrial interest, plus non-economic damages of $50,000, plus $4 million in punitive damages;

4) On their Fourth Claim for Relief, Plaintiffs pray for equitable relief granting Larry fee simple ownership in the Property or a judgment to the effect that Larry's rights are superior to those of anyone else;

5) On their Fifth Claim for Relief, Plaintiffs pray that the Court ignore the entity status of Foreclosure Help and find the individual Defendants are jointly and severally liable for any judgment herein;

6) On their Six Claim for Relief for Plaintiffs' actual damages, in the amount of approximately $400,000, or an amount to be proven at trial, plus attorney fees and costs allowed under the statute;

7) On all Plaintiffs' Claims for Relief for their costs and disbursements incurred herein;

8) Any other relief the Court finds right and just.


## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.


DATED:  November 9, 2023        By:    //s// Terry Scannell
                                       Terry Scannell, OSB #853220
                                       E: terry@scannellaw.com
                                       Christopher E. Hayes, OSB #093777
                                       E: chris@scannellaw.com
                                       SCANNELLAW, LLC
                                       7307 SW Beveland Street, Suite 200
                                       Tigard, OR  97223
                                       T:  503-776-0806
                                       *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed with

the Court using CM/ECF.  I also certify that the foregoing document is being served this day via

E-mail and the Electronic Filing Notice generated by CM/ECF on the parties listed below:


Jeanne Sinnott, OSB #075151
Wildwood Law Group
*jeanne.sinnott@wildwoodlaw.com*
3519 NE 15th Avenue, #362
Portland, Oregon 97212
(503) 564-3049
*Attorney for Defendants*



DATED:  November 9, 2023

<u>/s/Terry Scannell</u>
Terry Scannell, OSB #853220
*terry@scannellaw.com*
Christopher E. Hayes, OSB #093777
*chris@scannellaw.com*
SCANNELLAW, LLC
7307 SW Beveland St. #200
Tigard, OR 97223
(503) 776-0806
*Attorneys for Plaintiffs*

**DECLARATION OF TERRY SCANNELL IN SUPPORT OF PLAINTIFFS'
RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND TO
QUASH BANK SUBPOENAS AND TO DISMISS PUNITIVE DAMAGES CLAIM**