Terry Scannell (OSB No. 853220)
*terry@scannellaw.com*
Christopher E. Hayes (OSB No. 093777)
*chris@scannellaw.com*
SCANNELLAW, LLC
7307 SW Beveland St., 200
Tigard, Oregon 97223
(503) 776-0806
*Of Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **LARRY BALCOM**, an individual, by and through his attorney-in-fact, and **MARY BARNES**, attorney-in-fact for Larry Balcom, | Case No: 3:23-cv-00528-SB |
| Plaintiffs, | **PLAINTIFFS' MOTION TO VACATE PROTECTIVE ORDER** |
| v. | |
| **CLINTON PETERSON** and **APRIL PETERSON**, a married couple, and **FORECLOSURE HELP, L.L.C.,** an Idaho Limited Liability Company, **TRUSTED HOME OFFER, L.L.C.,** an Idaho Limited Liability Company, and **JOHN & JANE DOES 1-5**, | **Oral Argument Requested** |
| Defendants. | |

## I.      LR 7-1 CERTIFICATION

Counsel for Plaintiffs Larry Balcom ("Larry") and Mary Barnes ("Mary") (collectively "Plaintiffs") hereby certifies that he has attempted to confer with Defendants Clinton ("Clinton") and April ("April") Peterson, Foreclosure Help, L.L.C. ("FH"), and Trusted Home Offer, L.L.C. ("TH", collectively "Defendants") following the withdrawal of Defendants' prior counsel. Plaintiffs' counsel has called both of the individual Defendants and sent them both emails in an effort to confer with them no less than three times.  Plaintiffs' counsel made one final effort to contact the Defendants prior to filing this Motion.  The Defendants have never responded.

PAGE 1 - **PLAINTIFFS' MOTION TO VACATE PROTECTIVE ORDER**

## II.    LR 26-3 CERTIFICATION

This Motion complies with the applicable word-count limitation under LR 26-3(b)(2), as it is less than ten pages and it contains 1,658 words, including headings, footnotes, and quotations, but excluding the caption, signature blocks, exhibits, and certificates of counsel.

## III.    MOTION

Pursuant to Fed. R. Civ. P. 26(c) and under the inherent power of the Court, Plaintiffs respectfully move the Court to lift the temporary protective order prohibiting discovery on the personal financial accounts of Defendants Clinton and April Peterson.

The Motion is based on this Memorandum of Law, as well as the filings relating to the Motion to Compel and for Sanctions and the Motion for Provisional Process.  The filings and exhibits for those Motions are incorporated by reference.

## IV.    INTRODUCTION

The Court is generally familiar with the facts of this case; therefore, Plaintiffs will not recount them here.  Plaintiffs respectfully ask the Court to grant this motion along with the other two motions that Plaintiffs filed concurrently.

Following Oral Argument on December 15, 2023, the Court entered a temporary Protective Order with respect to any discovery of the personal financial accounts of Clinton and April pending Plaintiffs' review of the FH bank statements and conferral regarding the Lending Associates, LLC discovery. *See* Docket No. 48.

Review of the FH bank statements has exposed instances of references to multiple accounts that money was sent to and received from without accompanying records to show where that money was going or where it came from; details of those instances are below.  In her deposition as the custodian of records for FH, April would not answer as to how many LLCs she had interest in but admitted to having between ten (10) and fifteen (15) bank accounts.  Multi-

million-dollar enterprises often operate with far fewer entities and bank accounts as those enterprises happen to be legitimate and not fraudulent.

The Individual Defendants' bank account records are relevant to the Plaintiffs' theory of liability of piercing the corporate veil, among others.  The Plaintiffs ask the Court to vacate its Order.

## V.    LEGAL STANDARD

Under F.R.C.P. 26(c)(1)(D), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id*.  Furthermore, under 26(c)(2), "the court may, on just terms, order that any party or person provide or permit discovery" upon the whole or partial denial of a protective order. *Id.*  Courts have liberal decision-making ability to decide issues of protective orders. *Seattle Times Co. v. Rhinehart*, 467 US 20, 104 S Ct 2199, (1984).  This discretion applies equally to whether to modify or vacate a protective order, which is reviewed on an abuse of discretion standard. *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013).  Once a party to a suit opposes a protective order, the court must require the party in favor of the protective order to show "for each particular document he seeks to protect…that specific prejudice or harm will result" from modification of the order. *Id.*

## VI.    ANALYSIS & ARGUMENT

### A.  *History of the Court's Position*

The temporary protective order (Docket No. ) has three qualifications.  One is that Plaintiffs would be allowed to review FH bank statements.  The second was that counsel for both sides would confer regarding the Lending Associates discovery.  The third is that parties will

contact the Court to resolve any further discovery issues.  Plaintiffs chose to wait to involve the Court until they had filed a second Amended Complaint (Docket No. 72) and had issued and received responses to Requests for Production and Interrogatories to Trusted Home Offer, LLC, due on May 30, 2024.  Counsel for both sides conferred regarding the Lending Associates Discovery and were unable to agree.  The Plaintiffs waited until they had what information the Defendants would produce and afterwards, they conducted the deposition of the document custodian of FH and TH to pursue this Motion and their other concurrent Motions.

During the hearing of February 21, 2024, the Court said that the prior Court Order (Docket No. 48) "anticipated that we would revisit the issue of whether the personal accounts were discoverable."  A true and correct copy of the relevant portions of that transcript of the hearing are attached to this Motion as Exhibit 1.  The Court next outlined the required steps to determine if the personal accounts of April and Clinton would be discoverable:

> "And my recollection of our prior discussion is that we would take those in two steps: One, look at the accounts of Foreclosure Help; and then, two, determine from those statements whether there was commingling or transfers or other evidence of a relationship between the business accounts and the personal accounts such that it would open the door to the discovery of the personal accounts." *Id*. 1, p. 3, lns. 19-25.

Plaintiffs believe that the Court's requirement has been met to vacate the Protective Order and allow discovery of April and Clinton's personal accounts.

### B. Examples of Commingling, Transfers, and Altering Documents

Plaintiffs assert that the production of the accounts of FH did show commingling, transfers, and evidence of a relationship between the business and personal accounts.  Please reference the Exhibits accompanying Plaintiffs' Motion to Compel and for Sanctions for this Motion to Vacate.

In addition to the evidence of commingling of assets, there is the serious and concerning issue of the alteration of business records.  As Plaintiffs have argued in their Motion to Compel

and for Sanctions, the assertion that the Defendants have fabricated evidence is so serious that Plaintiffs obtained the services of Mr. Mark Songer, a former FBI document examiner, to review the documents. *See Id*. 1, pp. 1-6 to Mot. to Compel.  Upon review of the documents, Mr. Songer concluded that "it is my professional opinion that…the *unredacted* Idaho Central Credit Union Bank Statement (Q2), **Bates Number PET0000308 was fabricated.**" *Id.*, p 15, ¶7 (Emphasis added).

### C.  Argument

Plaintiffs vehemently disagree with Defendants that in trying to pierce the corporate veil, "this is really about trying to see whether they have any money" to satisfy any potential judgment. *Id*. 1, p. 4, lns. 24-25.  In part, the Plaintiff's discovery efforts were to establish that the fraud perpetrated on the Plaintiffs was the "tip of the iceberg."  What the Plaintiffs have uncovered, even with the limited discovery allowed, is that the Defendants have created and maintained numerous shell companies to troll for distressed properties and transfer money through various accounts to attempt to evade liability.  They have done this in part through several LLCs, all named "Foreclosure Help," which operate in the states of  Colorado, Texas, Nevada, Utah, Arizona, Washington, and Idaho.  The Defendants only intended to help themselves and no one else.

The point of piercing the corporate veil claim is not to dig into deeper pockets but rather to show that Defendants' companies are not legitimate at all.  Rather, they are instruments in a multi-state, multi-million-dollar fraudulent real estate enterprise to defraud vulnerable people out of their homes.  During the February 21, 2024, hearing, the Court stated that it was "not going to order the Petersons to produce their personal financial statements just yet, and if that becomes

relevant, then we will revisit the issue at that time." *Id*. 1, pp. 5-6, lns. 23-1.  Plaintiffs

respectfully objected.[1]

The Court also stated that "there is no lien" that we "necessarily have to concern"

ourselves with regarding the Lending Associates documents. *Id*. 1, p. 6, lns. 5-6.  Plaintiffs

assume the Court made that statement because the documentation showed that Lending

Associates International was, in fact, April and Clinton Peterson.  The Defendants are using

many additional companies that they are members and managers for to layer funds and hide the

source funds in an attempt to deter litigation and suggest that they are judgment-proof.

The Defendants' actions with Lending Associates International, as well as with their own

personal finances, are directly related to Larry's claims that he is a vulnerable person who trusted

April and Clinton because they stood behind a company name "Foreclosure Help."  Defendants

were not just two people who listed their telephone number online.  They had a name, a

company, and a website.  A hypothetical person of normal understanding and functioning who

might consider suing FH would potentially reconsider after seeing Lending Associates

International's lien because they would believe that the Petersons and their assets are judgment

proof.  Plaintiffs' claims of unlawful trade practices, abuse of a vulnerable person, breach of

fiduciary duty, constructive fraud, and fraudulent transfer are inextricably linked to each other as

well as to the reality that the corporate veil should be pierced.

It is relevant to Plaintiffs' claims that it was Defendants' pattern and practice to use their

business name, reputation, website, and customer service, to find homeowners who could be

easily parted from their property.  It is relevant that wealth was then quietly siphoned into

various other companies or personal accounts, one of which then placed a lien on April and

---

[1] For example, in looking through the FH and TH bank statements, seven accounts were linked via transfers to the Idaho Community Credit Union ("ICCU") account ending in 4804.  Decl. Gazda, ¶ 4.

Clintons' property to make litigation appear fruitless.  April and Clinton's personal financial statements are proportional to the discovery requests because they bought Larry's home from him for far less than it was worth and then turned around and took out a line of credit on that home.  The FH accounts show quite a bit of money exiting the company but requests for ledgers and financial statements showing, for example, valid company expenses like payroll, QuickBooks, or any kind of accounting system have never been produced.

### VII.    CONCLUSION

The Plaintiffs' legal team has worked tirelessly and at a detailed level to show that many of the statements the Defendants have made are false or misleading.  It was based on these statements that the Court granted the Defendants' Motion to Quash bank subpoenas and provide the Defendants with Court protection in the form of the Protective Order.  The arguments made are no longer relevant.

For the foregoing reasons, the Plaintiffs respectfully ask the Court to grant this Motion to Vacate the Protective Order on Defendants April and Clinton Peterson's personal financial accounts.


Dated:  June 10, 2024

/s/ Terry Scannell
Terry Scannell, OSB No. 853220
*terry@scannellaw.com*
Christopher E. Hayes, OSB No. 093777
*chris@scannellaw.com*
SCANNELLAW, LLC
7307 SW Beveland St., Ste 200
Tigard, Oregon 97223
(503) 776-0806
*Of Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing on all CM/ECF participants through the Court's Case Management Electronic Case File system and as indicated to non-CM/ECF registered parties on the date set forth below:

April & Clinton Peterson
1775 W State Street
Boise, ID 83702
*april@208prestige.com*
*clintonwpeterson@gmail.com*
Defendants

April & Clinton Peterson
1775 W State Street, #275
Boise, ID 83702
*april@208prestige.com*
*clintonwpeterson@gmail.com*
Defendants

Clinton Peterson, Registered Agent
c/o Foreclosure Help, LLC
1775 W State Street, #275
Boise, ID 83702
*clintonwpeterson@gmail.com*

Clinton Peterson, Registered Agent
c/o Trusted Home Offer, LLC
1775 W State Street, #275
Boise, ID 83702
*clintonwpeterson@gmail.com*

DATED:  June 10, 2024                    */s/Terry Scannell*

Terry Scannell, OSB #853220
*terry@scannellaw.com*
Christopher E. Hayes, OSB #093777
*chris@scannellaw.com*
SCANNELLAW, LLC
7307 SW Beveland St. Ste 200
Tigard, OR 97223
(503) 789-6866
*Of Attorneys for Plaintiffs*