Terry Scannell, OSB #853220
*terry@scannellaw.com*
Christopher E. Hayes, OSB #093777
*chris@scannellaw.com*
SCANNELLAW, LLC
7307 SW Beveland Street, Suite 200
Tigard, OR  97223
503-776-0806
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **LARRY BALCOM,** an individual, by and through his attorney-in-fact, and **MARY BARNES,** guardian ad litem, <br><br> Plaintiffs, <br><br> v. <br><br> **CLINTON PETERSON** and **APRIL PETERSON**, a married couple, and **FORECLOSURE HELP, L.L.C**, an Idaho Limited Liability Company, **TRUSTED HOME OFFER LLC**, an Idaho Limited Liability Company, ~~JOHN & JANE DOES 1-5,~~ <br><br> Defendants. | Case No. 3:23-cv-00528-SB <br><br> ~~THIRD SECOND~~ **THIRD AMENDED COMPLAINT** <br><br> 1. Violation of the Oregon Unlawful Trade Practices Act <br> 2. Financial Abuse of a Vulnerable Person <br> 3. Breach of Fiduciary Duty <br> 4. Constructive Fraud <br> 5. Fraudulent Transfer <br> 6. Promissory Estoppel <br><br> **Demand for Jury Trial** |

The Plaintiffs by and through their attorneys, Scannellaw, LLC, plead as follows:

//

//

//

Page 1 – ~~SECOND~~ THIRD AMENDED COMPLAINT

## PARTIES, VENUE, AND JURISDICTION

1.

Plaintiff Larry Balcom ("Larry") is an individual who was and is a citizen of the State of Oregon at all relevant times.  Mary Barnes ("Barnes") is Larry's sister and the Attorney-in-Fact for her brother, and is operating pursuant to a Power of Attorney.  Attached as Exhibit 1 to this ~~Second~~ Third Amended Complaint is a true and correct copy of that POA.  Barnes was also appointed as the Guardian ad litem for Larry by this Court on February 7, 2024, Docket No. 60.

2.

Defendants Clinton and April Peterson ("April" and "Clinton" collectively "Defendants") are a married couple who were and are citizens of Idaho.  At all relevant times herein, April and Clinton were acting as actual or apparent agents of each other or their various entities.

3.

The property at issue is located at 14176 South West Barrows Road, Unit 3, Tigard, Oregon ("the Property"), and is located within the District.

4.

Defendant Clinton holds an inactive salesperson real estate license in the State of Idaho and was running Foreclosure Help, LLC, at all relevant times.  Jurisdiction and Venue were stipulated to by the Defendants on August 25, 2023, Docket No. 23.

5.

Defendant April is an active designated real estate broker in the State of Idaho, license number DB48430, and employed with Prestige Real Estate Investments, LLC ("PREI").  The address of record for PREI is 1775 W. State St. Ste 276, Boise, ID 83702.  April was Larry's

primary contact with Foreclosure Help, LLC, and she worked in concert with her husband during their transaction with Larry.

6.

Foreclosure Help, L.L.C. ("Foreclosure Help") was or is an Idaho Limited Liability Company that was under the control of the individual Defendants at all material times. The address for Foreclosure Help was also 1775 W State St Ste 276, Boise, ID 83702.

7.

When this case was filed in October of 2023 the Plaintiff named Jane and John Does 1-5 as ~~are~~ individuals or entities who ~~are~~ were currently unknown to the Plaintiffs. ~~These~~ The Plaintiffs also alleged that the John and Jane Does aided and abetted in the transfer of assets of Foreclosure Help, or who are themselves transferrers of the assets, which the Defendants transferred for the purpose of defeating the Plaintiffs' claims. The Plaintiffs have removed the John and Jane Does but added additional information on individuals and entities who have aided and abetted the Defendants in the asset transfers.

8.

Venue is proper, pursuant to 28 U.S.C. § 1391(b), because the real property that is the subject of this action is located in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because the Defendants conducted substantial business in this District, and had sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District through the promotion, sale, and marketing of their products and services in this District.

//

//

Page 3 – ~~SECOND~~ THIRD AMENDED COMPLAINT

9.

This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Larry and Defendants, and the amount in controversy exceeds $75,000.  The named Defendants have also consented to the jurisdiction of this Court.  This court also has jurisdiction over state law claims in this action pursuant to 28 U.S.C. § 1376.  There is personal jurisdiction of the Defendants in the case because each Defendant had substantial and continuing contact within the State of Oregon through their phone calls, business solicitations, emails, and through their sending of documents to Larry to be signed in Oregon and returned to the Defendants.  One or more of the Defendants acted as the actual agent for another Defendant in taking such action.  The Defendants also provided other Oregonians with foreclosure "help."

**FACTS COMMON TO ALL CLAIMS**

10.

Larry is a 61-year-old man who relied on his mother for advice and assistance his entire life.  He is and has always been highly vulnerable and susceptible to manipulation and bullying. Larry was formally found to have Intellectual Developmental Disorder (Intellectual Disability) by a competent medical practitioner.  The report of the practitioner who examined Larry has been filed under seal with this Court, under Docket No. 57.  The same practitioner has opined that if this were a criminal proceeding Larry would not be competent to assist in his own defense.

11.

At all relevant times to this Second Third Amended Complaint, Larry has either been a vulnerable person as defined under ORS 124.100, and/or has been legally incompetent.

//

Page 4 – SECOND THIRD AMENDED COMPLAINT

12.

The Plaintiffs' parents, Mark and Carol Balcom ("the Plaintiffs' Parents"), purchased the Property in 2017 for $240,000, free of any mortgage or lien.

13.

The Plaintiffs' Parents moved to Colorado in 2018 to be near their daughter, Barnes, who would care for them as they got older.  Prior to their move, for estate planning purposes, they transferred the title of the Property to Larry.

14.

Shortly after the Parents moved away, Larry fell victim to a gift card scam that would take approximately $100,000 from him over a five-year period.

15.

Plaintiffs' mother passed away on November 28, 2020.

16.

Larry only sought help and advice from his mother and would rarely say more than three or four words to other family members.  Without his mother there for assistance, and because he fell behind on bills due to an ongoing gift card scam, Larry took a line of credit from OnPoint Credit Union for $5,500, followed by a $25,000 line of credit from Bank of America, and finally in June of 2021, a $72,000 mortgage on the Property from Homeside Financial.

17.

On November 01, 2021, Larry received a statement informing him that he was three months past due on his Homeside mortgage payments and owed $1,288.24, and was in danger of foreclosure.

//

Page 5 – ~~SECOND~~ THIRD AMENDED COMPLAINT

18.

Larry went to the internet and entered the term "foreclosure help" into the search bar. Defendant Foreclosure Help appeared in the search results. Larry then contacted Foreclosure Help, on or around November 12, 2021, seeking assistance to avoid foreclosure. Larry asked what options were available to him in order to avoid foreclosure, but was scared and thought his only option was to sell the Property. Larry asked the Defendants what options he had to secure funding and prevent losing his home. Defendants immediately began discussing the options available to Larry to avoid foreclosure.

19.

At the time Larry contacted the Defendants, the Foreclosure Helps website, which no longer exists, read:

> "*For over a decade we have been dedicated to helping homeowners avoid foreclosure across the United States. You can STAY living in your home OR we can help you sell it for top dollar. YOU decide.*"

20.

The Property had an estimated value of $340,000 in November 2021, and a current market value of up to $450,000.

21.

Defendants offered to assist Larry in order to avoid foreclosure and remain in his home.

22.

These statements and the material that Larry read on the Foreclosure Help website were false and/or misleading. The Defendants are, in fact, specialists in finding, acquiring, and then holding or flipping distressed properties.

//

Page 6 – SECOND THIRD AMENDED COMPLAINT

23.

In this instance, the Defendants "troll" for or solicit homeowners using the false or misleading name of "Foreclosure Help."  The Defendants knew that this would attract homeowners who are in distress or believe that they are, or who are otherwise vulnerable to the sale techniques of the Defendants.  These techniques are designed first to engender trust by the homeowner, like Larry, and to use that trust to manipulate and otherwise persuade the homeowner to sell their property to the Defendants at a depressed price.

24.

In this case, Larry was particularly vulnerable or, in fact, incapable of understanding the substance of the real estate transaction.  This was not a "normal" arms-length sales transaction where the Defendants simply made a "good deal."  It was a transaction where the Defendants used false and/or misleading representations that they wanted to "help" Larry "avoid" foreclosure when, in fact, the Defendants' actual goal was to take or appropriate Larry's property.

25.

On November 18, 2021, six days after Larry contacted Foreclosure Help, Defendants offered to buy Larry's property for the amount of Larry's debt and closing costs.  Defendants informed Larry that he could lease the property for $300 a month for the first year, but then the rent would be raised to market value.  The next day, November 19, 2021, Defendants instructed Larry on how to use the Zoom video platform and Larry walked Defendants around the Property using the software so they could inspect the Property.

26.

After the inspection, Defendants prepared a Purchase and Sale Agreement dated November 19, 2021.  The Purchase and Sale Agreement defined Larry as the seller and

Page 7 – ~~SECOND~~ THIRD AMENDED COMPLAINT

Foreclosure Help as the buyer and provided that closing was set for November 20, 2021. Attached to this ~~Second~~ Third Amended Complaint as Exhibit 2 is a true and correct copy of the Purchase and Sale Agreement.

27.

The total purchase price was $73,800.  This amount included the $72,500 mortgage, the $1,300 past due that Larry owed to his lender.

28.

The Purchase and Sale Agreement provided that unless the offer was signed by Larry and personally received by the buyer (Foreclosure Help), by 7:00 a.m. on November 20, 2021, the offer shall be deemed revoked, and any deposit shall be returned.  Larry did not sign the Purchase and Sale Agreement until November 24, 2021, the same day that Clinton signed the Purchase and Sale Agreement on Foreclosure Help's behalf.

29.

Once Larry signed the Purchase and Sale Agreement, the Defendants exercised full control over the Property and obtained the major portion of the economic value of the Property.  As stated in paragraph 5, the Defendants acting in concert with one another were able to dispose of Larry's Property for their benefit or the benefit of another.

30.

At the time of the filing of this ~~Second~~ Third Amended Complaint, the Defendants, through Clinton, hold legal title to the Property with the intent to deny Larry his interests in the Property.

//

//

Page 8 – ~~SECOND~~ THIRD AMENDED COMPLAINT

31.

Before Larry, Clinton, and Foreclosure Help signed the Purchase and Sale Agreement, Clinton (acting on Foreclosure Help's behalf) and Larry signed a Residential Rental Agreement on November 19 and November 20, 2021, respectively.  The Residential Rental Agreement, which was dated November 19, 2021, and which defined Foreclosure Help as the Property's "Owner/Landlord" and Larry as the "Tenant," provided that Balcom would pay $300 per month in rent and Larry's lease would expire on November 30, 2022.  Attached as Exhibit 3 to this ~~Second~~ Third Amended Complaint is a true and correct copy of the Residential Rental Agreement.

32.

The Residential Rental Agreement also included a provision, which states that all parties that have signed the Agreement Release and forever discharge the Defendants from all actions, proceedings, claims, damages, costs, demands, court orders, and legal fees that may arise from utilizing the provided contracts.  Attached as Exhibit 4 to this ~~Second~~ Third Amended Complaint is a true and correct copy of the Release.

33.

This Release is not valid as it was given for future claims, the supposedly released claims are not explicitly described, and Larry could not understand the release.  Larry did not execute the release with full knowledge of the import of what he signed and with an intent to discharge liability.  In addition, April and Clinton were not parties to the release.

34.

Larry signed three other documents on November 20, 2021.  He signed an Authorization to Release Information, a Special Power of Attorney, and a Statutory Warranty Deed.  The

Page 9 – ~~SECOND~~ THIRD AMENDED COMPLAINT

Authorization to Release Information indicated that Larry was providing his written permission to release the Property's account statement, payoffs, and other information regarding the referenced account to Clinton, April, Kim Bailey, Foreclosure Help, and all associates.

35.

The Special Power of Attorney, which stated that it shall become effective immediately and continue to be effective until Larry's death or until he lacks sufficient mental competence to understand and handle his financial and personal affairs, appointed Clinton as Larry's attorney-in-fact. The Special Power of Attorney authorized Clinton to act on Larry's behalf with respect to real estate; sell, convey, mortgage, or encumber Larry's interest in the Property; manage, insure, improve, repair, collect rents, execute leases, or take any other action that a landlord might take; and sell or convey any personal property that Larry might own now or in the future, tangible or intangible, on such terms and conditions as Clinton deems appropriate. Attached as Exhibit 5 to this ~~Second~~ Third Amended Complaint is a true and correct copy of the Special Power of Attorney.

36.

The Special Power of Attorney also added that Clinton was entitled to reasonable compensation for any services provided and for reimbursement of all reasonable expenses incurred as a result of carrying out any provision of this appointment.

37.

The Special Power of Attorney also included a "Notice to Person Executing Power of Attorney" and "Notice to Person Accepting the Appointment as Attorney-in-Fact." Clinton signed the Notice to Person Accepting the Appointment as Attorney-in-Fact on November 22, 2021. This Notice provided that by acting or agreeing to act as Larry's Agent (attorney-in-fact)

Page 10 – ~~SECOND~~ THIRD AMENDED COMPLAINT

under this Power of Attorney, Clinton assumed the fiduciary and other legal responsibility of an Agent, including the legal duty to act solely in the interest of the principal and avoid conflicts of interest.  Clinton also acknowledged that he may be held responsible and liable for any intentional actions that violate or abuse his authority under this Power of Attorney, as provided by the state and federal laws governing the Power of Attorney.

38.

The Statutory Warranty Deed reflected that Larry conveyed and warranted the Property to Foreclosure Help free of encumbrances, except as specifically set forth herein, and that Larry received $10.00 as true consideration for the conveyance of the Property.  Since this conveyance on August 18, 2022, Clinton, with the assistance of April, in turn caused Foreclosure Help to deed the Property to Clinton for the consideration of $1.00.  This transfer was not an arms-length transaction for value.  This transfer was a fraudulent attempt to insulate the Defendants from liability for their wrongful behavior.  Attached as Exhibit 6 to this ~~Second~~ Third Amended Complaint is a true and correct copy of the Statutory Warranty Deed.

39.

On January 19, 2022, about two months after he signed the documents described above, Larry called April, who was his primary contact at Foreclosure Help, to inquire about buying a new condominium.  At the time of the call, Larry had a credit score of 500.  In late January 2022, Larry also called April and asked to be put back on the Property's title, and again for a loan in early February 2022.

40.

On August 18, 2022, Clinton signed a quitclaim deed on behalf of Foreclosure Help that conveyed the Property to Clinton, and with assistance from April, obtained a $288,000 line

of credit secured by a trust deed on the Property for their personal benefit.  At that point, the

Defendants both individually and collectively had total economic control of the Property.

41.

On November 3, 2022, about four weeks before the lease expiration date set forth in the

Residential Rental Agreement, Defendants sent Larry a notice stating that he needed to agree to

a rental increase from $300 to $2,200 or find another place to live by December 2022.  April

signed the notice in her capacity as a landlord.  Attached as Exhibit 7 is a true and correct copy

of the notice Larry received, signed by April in her capacity as a landlord.

42.

Around the same time, Defendants contacted individuals in Oregon, including a landlord

from Lake Oswego, regarding their efforts to find a rental location in order to move Larry.

These actions were part of the Defendants' fraudulent conduct to take or appropriate the Property

from Larry.  After meeting with Larry and learning that the person who contacted him had

falsely represented that she was Larry's niece, the landlord became extremely concerned for

Larry's wellbeing and believed he was the victim of fraud.  Although Larry was embarrassed and

did not want to involve his family, the landlord used a social media network to track down and

inform Larry's sister, Barnes, about the situation.  The Defendants had contacted a landlord and

fraudulently stated the caller was Larry's niece.  This was a part of the Defendants ongoing fraud

to appropriate Larry's Property.

43.

In December 2022, Barnes pieced together what happened based on her conversations

with the landlord and Larry.  Larry believed that he immediately had to vacate the Property and

told Barnes that Defendants had found him a $500 per month trailer rental, storage facility for

personal belongings, and moving truck.  Barnes convinced Larry to stay in the Property, to stop

communicating with Defendants, and to block Defendants' calls.

44.

In late December 2022, a lawyer who no longer represents Defendants notified Larry

that his rent was two months past due.  The lawyer filed, but quickly dropped an eviction

proceeding against Larry.

45.

The Defendants allege that Foreclosure Help was dissolved or simply ceased its

operations in December 2022, and its assets were transferred to other legal entities or persons.

46.

In early February 2023, a different lawyer, who also no longer represents Defendants,

called and informed Larry that the Defendants were willing to waive the late charge for the four

months Larry owed in rent, pay moving fees for Larry's relocation, but that the Defendants'

next steps were going to be to initiate eviction proceedings.

47.

Two months later, on April 10, 2023, Plaintiffs filed the present action against

Defendants.

48.

On information and belief, on or about May 2023, all or substantially all of the assets of

Foreclosure Help were transferred to Trusted Home Offer LLC ("Trusted Home").  Trusted

Home is a continuation of Foreclosure Help.  Trusted Home was formed, and the assets of

Foreclosure Help were transferred to Trusted Home to escape the liabilities of Foreclosure Help.

Those liabilities include but are not limited to the possible recovery from this lawsuit.

Page 13 – SECOND THIRD AMENDED COMPLAINT

49.

Clinton and April either control or did control Foreclosure Help, and Trusted Home used

Foreclosure Help and Trusted Home as their alter egos or agent, and/or ignored corporate

formalities and did not keep the finances of Foreclosure Help and its assets, such as the Property,

separate from their own accounts.  Clinton and April now control Trusted Home.  In addition,

Clinton and April have set up multiple entities including but not limited to Prestige Real Estate

Investments LLC, Trusted Home Offer LLC, Black Hawk LLC, Taft Enterprises LLC, FI

International LLC, and Lending Associates International LLC (collectively "The Peterson

Enterprises").

50.

The Peterson Enterprise shares the same ownership, the same employees and/or

"contractors," operate out of the same office[s], do not adhere to corporate formalities, move

money and/or assets between one another, do not keep books and records of the intercompany

transactions, and are in fact one enterprise that is an extension of April and Clinton Peterson.

The entities do not file separate tax returns but rather they are "rolled up" into an entity called FI

International LLC.  This appears to be the "holding company" for the Peterson Enterprise.  In

fact, The Peterson Enterprise is designed for "asset protection" and to "layer" funds between the

entities to make holding April and Clinton accountable for their fraudulent conduct harder.

51.

Each of these entities have been used to comingle funds, pay the debts of Clinton and

April as well as divert funds from FH and TH to other entities and to April and Clinton.  For

example, Larry paid rent into accounts other than Foreclosure Help, the December 2022 FH bank

statement shows payments to Barclays Credit Card, a card held solely in April's name, and what

Page 14 – ~~SECOND~~ THIRD AMENDED COMPLAINT

appears to be tax payments for Blackhawk LLC out of the FH bank account. *See* Docket No. 90, p. 8.

52.

Between December 1, 2021, and December 31, 2022, Foreclosure Help maintained a bank account with Idaho Central Credit Union.  That account was then merely renamed Trusted Home on or about October 1, 2023.

53.

The Defendants were eventually Ordered by the Court to provide "unredacted bank records to the Plaintiffs."  Instead of providing unredacted bank statements, April, and on information and belief her partner Clinton, knowingly altered the bank records using "white out."

54.

At the time of the alteration, April was acting on her own behalf as well as an agent, actual or apparent, for Clinton and The Peterson Enterprise.

55.

The altering of this material evidence was done either knowingly or was grossly negligent.

56.

Defendant April Peterson has admitted in a sworn statement that she made the alterations. Docket No. 103, ¶ 6.

57.

The Plaintiffs assert that the spoliation was done intentionally to prevent them from knowing that money was being comingled among The Peterson Enterprise.  The spoliation was

Page 15 – ~~SECOND~~ THIRD AMENDED COMPLAINT

done specifically to hide the fact that funds were used by Foreclosure Help/Trusted Home to make house payments for the Wildhorse property.

58.

The Wildhorse Property ("Wildhorse") is located at 6029 E. Wildhorse Ln., in Boise, Idaho.  It is a 40-acre site that has a six (6) bedroom, 4,777 sq ft. on home it.  Wildhorse appears to be free and clear of any liens and encumbrances except those manufactured by the Defendants using self-imposed liens through a Delaware entity Lending Associates International LLC ("Lending Associates").

59.

Lending Associates has only two members.  April and Clinton Peterson.

60.

On April 26, 2020 the Petersons came on to the title of Wildhorse.

61.

On May 31, 2020 Wildhorse was retitled so that April Peterson's name shows first on title and not Clinton's name.

62.

On July 7, 2023, and after this lawsuit was filed, Wildhorse was vended or "sold" from April and Clinton to RD White.  No specific consideration is shown in the Deed.

63.

On August 18, 2023 RD White vended or "sold" Wildhorse to Lending Associates.  No specific consideration is shown in the deed.

//

//

Page 16 – SECOND THIRD AMENDED COMPLAINT

64.

In the same sworn statement April Peterson made, Docket No. 103, also referenced in paragraph 56 above, she stated that "This case is the first time I have been involved in civil litigation other than an eviction matter." Id., ¶ 8.  This statement was false.  April, along with her husband Clinton were defendants in a case in Idaho, Case No. CV01-21-12453.

65.

That case has similar facts to those alleged in this Third Amended Complaint.

66.

The Defendants were also named in one other civil lawsuit in Idaho, Case No. CV03-22-01783.

67.

Based in part on this fact, along with the other acts and omissions described in this Third Amended Complaint, the acts and omissions of April and Clinton, along with The Peterson Enterprise, is part of a pattern and practice of the Defendants to engage in making false or misleading statements not only to people like Larry but also to this Court.  These false statements are made with the intention to appropriate the property of unsuspecting homeowners and to avoid responsibility for their acts and omissions.

68.

The Defendants continue to ~~have~~ refused to release all ~~specific~~ banking information from the FH or TH ~~about the Foreclosure Help~~ account that will establish the assets and liabilities of the entity.  ~~The account information does show that Foreclosure Help had significant economic activity during 2022 and appears to have held or is making payments on approximately three to four properties.  Foreclosure Help was allegedly "dissolved" at a time unknown to the Plaintiffs,~~

Page 17 – ~~SECOND~~ THIRD AMENDED COMPLAINT

~~but at a time after the Plaintiffs' claims were made known to the Defendants. Before Foreclosure Help was dissolved, all its assets were transferred to third parties.~~

69.

On information and belief the Defendants are refusing to produce the records of TH in order to hide the fact that what money was in that account was moved to one or more of The Peterson Enterprises in an effort to avoid any judgment that might occur in this case and to try and hide the fact that money from the TH account was being used to pay the obligations of April and Clinton or other portions of The Peterson Enterprise.

70.

As a direct and proximate result of the improper conduct alleged herein, Larry entered into a transaction with Foreclosure Help and the Defendants that he would not otherwise have entered into.

71.

Larry has been told that Foreclosure Help was dissolved and has no assets from which to stratify a judgment in this case.

72.

By transferring the Property and all its ~~other~~ assets, Foreclosure Help and some of the other Peterson Enterprise entities while acting through the individual Defendants, ~~made~~ have attempted to make itself insolvent and is inadequately capitalized. Its assets are insufficient to cover its potential liabilities, which were reasonably foreseeable from the nature of the business.

73.

Therefore, if the Plaintiffs prevail on their Claims for Relief in this lawsuit, the Plaintiffs will be unable to collect from Foreclosure Help.

Page 18 – ~~SECOND~~ THIRD AMENDED COMPLAINT

74.

For that reason, the Plaintiffs ask the Court to ignore Foreclosure Help's entity status and the entity status of all entities in The Peterson Enterprise, and find that Clinton and April ~~along with the Jane and John Doe Defendants~~ are jointly and severally liable for any judgment herein.

## CLAIMS FOR RELIEF

## <u>FIRST CLAIM FOR RELIEF</u>

**(Violation of the Oregon Unfair Trade Practices Act (OUTPA) ORS 646.608, ORS 646.638)**

75.

Paragraphs ~~1-55~~ 1-74 are hereby incorporated by reference as if set forth in full herein.

76.

Foreclosure Help and its agents, Clinton and April, ~~along with John and Jane Does 1-5~~ solicited through the course of their business, vocation, or occupation, using their website and represented, that they could assist Larry, a homeowner, in preventing, postponing, or obtaining a loan or advancement of funds to avoid foreclosure.  Larry used the services for his personal and household purposes.  As set forth in Paragraph 23 above, the Defendants trolled, represented, or solicited homeowners, including Larry, using the false or misleading name of Foreclosure Help, and false and misleading statements on their website.  Specifically, the Defendants

(i)    "*Advertise[d]*real estate, goods or services with *intent not to provide* the real estate, goods *or services as advertised*, or with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity. (Emphasis added.) ORS 646.608(1)(i), made actionable under ORS 646.638.

77.

As a direct result, Larry had a direct ascertainable loss of $300 in obtaining title reports on the Property.

Page 19 – ~~SECOND~~ THIRD AMENDED COMPLAINT

78.

In addition, Larry has incurred ascertainable damages in the amount of $327,000. Due to Defendants' willful and unlawful acts and omissions contained herein, Larry has suffered actual damages in the amount of $400,000, or an amount to be proven at trial, or the statutory penalty of $200.00, whichever is greater. Due to the egregious nature of Defendants' acts, the vulnerability of Larry, Clinton's status as fiduciary, and the public interest, Larry also requests $4 million in punitive damages. Pursuant to ORS 646.638(3), Larry asks for reasonable attorney fees and costs.

79.

Foreclosure Help is directly liable to Larry for its acts and omissions.

80.

April and Clinton are liable to Larry based on their direct acts and omissions.

81.

April and Clinton are libel as aiders and abettors as agents for each other and The Peterson Enterprise.

82.

April and Clinton are libel because Foreclosure Help's corporate structure should be ignored.

## SECOND CLAIM FOR RELIEF

### (Financial Abuse of a Vulnerable Person ORS 124.110)

83.

Paragraphs 1-63 1-82 are hereby incorporated by reference as if set forth in full herein.

//

Page 20 – SECOND THIRD AMENDED COMPLAINT

84.

Larry has been unable to manage his financial resources due to mental limitations for many years.  Larry relied completely on his mother to obtain housing, manage money, monitor spending over the years, and to ensure his financial well-being.  This reliance and Larry's inability to manage his financial resources were made painfully clear in the years following his mother's passing.

85.

Within four years, Larry went from owning a property with no encumbrances and a healthy financial situation to being defrauded out of over $100,000 in a gift card scam, running up over $70,000 in debt against his Property, falling behind on mortgage payments, being manipulated into selling his home for 5 times less than what it was worth, and nearly becoming homeless because he could not afford $300 a month in rent.  Moreover, Larry continued to call the Defendants repeatedly for months with questions about his finances; Defendants admitted the calls were "strange."  Larry did not understand why he could not buy another condominium with a credit score of 500 and a monthly budget of $300.  He did not understand why the Defendants could not put him back on the title or why April would not give him a loan.  When looking at the totality of the circumstances, from the financial scams Larry fell victim to, to the lack of a basic understanding of how property loans work, it is evident that Larry satisfies the requirements for "financially incapable" as defined by ORS 125.005(3), and is therefore "vulnerable" as defined by ORS 124.100(1)(e).

//

//

//

Page 21 – ~~SECOND~~ THIRD AMENDED COMPLAINT

86.

ORS 124.110 states an action may be brought for financial abuse when a person

"wrongfully *takes or appropriates* money or property of a vulnerable person, without regard to

whether the person taking or appropriating the money or property has a fiduciary relationship

with the vulnerable person." ORS 124.110(1)(a).  Conduct is seen as "wrongful if it is carried out

for some improper motive or by the use of an improper means." *Empire Fire & Marine Ins. v.*

*Fremont Indemnity*, 90 Or.App. 56, 62, 750 P.2d 1178 (1988).  "Improper means [which] must

be independently wrongful by reason of statutory or common law, beyond the mere fact of the

injury complained of." *Church v. Woods*, 77 P.3d 1150, 1153 (Or. App. 2003).

87.

In this instance, the Defendants ~~and John and Jane Does 1-5~~ have also violated the

Oregon Unfair Trade Practices Act as pleaded in the First Claim for Relief while appropriating

Larry's real property.  In addition, Plaintiffs have filed a report from a qualified medical

professional that demonstrates that Larry has Intellectual Developmental Disorder (Intellectual

Disability) and is likely not only "vulnerable" but incompetent. *Id*., *Supra*.  Therefore, as a

vulnerable person, the Defendants wrongfully took Larry's home and money through improper

means due to their violation of the UTPA.  Specifically, providing $73,800 to obtain a property

worth up to $450,000 from a vulnerable or a person without capacity is wrongful.  As a result of

Defendants' wrongful taking or appropriation of Larry's money and real property, he has

suffered economic damages in the amount of $400,000 or statutory damages in the amount of

$200, and noneconomic damages in the amount of $50,000.  Larry is entitled to three times all

economic and noneconomic damages under ORS 124.100(2)(a)&(b).  Larry also requests

reasonable attorney fees under ORS 124.100(2)(c).

Page 22 – ~~SECOND~~ THIRD AMENDED COMPLAINT

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

88.

Paragraphs 1-68 1-87 are incorporated by reference as if set forth in full herein.

89.

The Defendants acting together, and in violation of ORS 646A.720A(5),(8), unlawfully manipulated Larry into signing over many of his rights under a Special Power of Attorney document that the Defendants requested he sign.  While Clinton gained the right to control Larry's personal and real property, he also owed a duty to Larry to act in his best interest regarding those property transactions.  While the POA document protects the Agent (Clinton) from "any loss that results from a judgment error that was made in good faith" it clearly states "[h]owever, my [Plaintiff] Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney." Ex. 5, p. 2, ¶ 3.

90.

The POA document states that it "shall be governed by the laws of the state of Oregon." Ex. 5, p. 2, ¶ 6.  Under ORS 127.045 which governs the duty of agents under an Oregon POA "an agent must use the property of the principal for the benefit of the principal."  Furthermore, Oregon courts have extended the fiduciary duty owed by an agent acting under a POA when controlling the principal's finances, stating that agents have a "legal duty of care" to the principal. *State v. Roberts*, 436 P.3d 57, 65 (Or. App. 2019).  The POA document itself imposed several legal duties on the Defendants to "act solely in the interest of the principal," "avoid conflicts of interest," "keep the principal's property separate…from other property owned or

Page 23 – SECOND THIRD AMENDED COMPLAINT

controlled by you [Clinton]," "[y]ou *may not* transfer the principal's property to yourself without *full and adequate consideration*." Ex. 5, p. 5, ¶¶ 1, 5, 9. (Emphasis added).

91.

Clinton violated the fiduciary duty he owed Larry, both under Oregon law and the Special Power of Attorney.  At the direction of the Defendants, Larry signed and appointed Clinton his agent on November 20, 2021; per the terms of the document it was effective immediately.  At the time Clinton assumed responsibility to act as Larry's fiduciary, specifically in matters of real estate and property, Larry still held title to his home.

92.

Clinton's first act as Larry's fiduciary was co-signing the paperwork that would convey Larry's home to the Defendants' company, Foreclosure Help, for five times less than what it was worth.  Nothing Clinton did was to the benefit of Larry, whose only problem related to the Property before he met the Defendants was $1,200 in late mortgage payments.  As a fiduciary, Clinton could have helped Larry secure funding against his equity to pay the late mortgage payments, inquired about his financial problems and discovered the gift card scam, or helped Larry negotiate a repayment plan with his bank and monthly budget.  Clinton did none of the things fiduciaries are bound to do, yet violated nearly all the duties he owed Larry.  Clinton working in concert with the other Defendants utilized a company he held an interest in to take property from his principal for far below full and adequate consideration.  Shortly after the Property was free and clear of encumbrances, while still having a legal fiduciary to Larry, Clinton transferred Larry's property to himself by Quitclaim deed for $1.00, and within two months took out nearly $300,000 against the title.

//

Page 24 – ~~SECOND~~ THIRD AMENDED COMPLAINT

93.

Because of Clinton's multiple breaches of his fiduciary duties, Larry lost his home, was forced to pay rent on the Property that was wrongfully taken from him, suffered emotional distress, and nearly became homeless.  Larry incurred economic damages in the amount of $400,000 and non-economic damages in the amount of $50,000.  Due to Larry being a vulnerable person, the number of statutes the Defendants violated, and the astounding number of duties Clinton violated as a fiduciary, Larry requests $4 million in punitive damages.

## FOURTH CLAIM FOR RELIEF

### (Constructive Fraud)

94.

Paragraphs 1-74 1-93 are hereby incorporated by reference as if set forth in full herein.

95.

Oregon courts have long recognized the theory of constructive fraud.  "Constructive fraud often exists where the parties to a transaction have a special confidential or fiduciary relation which affords the power and means to one to take undue advantage of, or exercise undue influence over, the other.  A course of dealing between persons so situated is watched with extreme jealousy and solicitude; and if there is found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party." *U.S. Nat. Bank of Portland* v. *Guiss*, 331 P.2d 865, 876 (Or. 1958).

96.

"The law seems to be well settled that when one accepts a confidential or fiduciary relation to another, as that of guardian and ward, attorney and client, and the like, where the donee or grantee is supposed to exercise an unusual and commanding influence over the grantor,

Page 25 – SECOND THIRD AMENDED COMPLAINT

courts will set aside the conveyance, unless the grantee can show that the transaction was fair, and without fraud or undue influence." *Gilmore v. Burch*, 7 Or. 374, 383 (1879).

97.

Clinton and the other Defendants, working in concert with each other and as an agent of Foreclosure Help and each other, held a fiduciary duty to Larry. Moreover, Clinton and April, working as agents for Foreclosure Help, held themselves out as providing "foreclosure help" when in fact they were engaged in acquiring and holding or selling distressed real estate. As discussed above, Clinton violated almost all the duties he owed Larry as a fiduciary, the consideration was incredibly below what could be considered fair, and Larry is financially vulnerable.

98.

Larry is in possession of the Property, but the Defendants hold legal title. Larry is without an adequate remedy at law, and has a substantial interest or claim to the Property.

99.

Defendants violated their duty to Larry and took advantage of their relationship with Larry and his vulnerabilities to enrich themselves with a deal that no financially capable person would deem "fair." In the process of taking Larry's home for far less than it was worth, they violated nearly every applicable statute as well as Clinton's fiduciary duty. Therefore, Larry is entitled to a judgment granting him equitable relief in the form of Ordering the Property be returned to him, plus any costs and expenses he has incurred.

//

//

//

Page 26 – SECOND THIRD AMENDED COMPLAINT

## FIFTH CLAIM FOR RELIEF

### (Fraudulent Transfer ORS 95.200)

### COUNT 1 (As to Foreclosure Help & Clinton Peterson Only)

100.

Paragraphs ~~1-80~~ 1-99 are hereby incorporated by reference as if set forth in full herein.

101.

To establish a fraudulent transfer under the statute, a plaintiff must prove, by a preponderance of the evidence, that the debtor made a "transfer," that the plaintiff has a claim as a creditor that arose before or after the transfer was made, and that the transfer was made "with actual intent to hinder, delay, or defraud" the plaintiff. *Fadel v. El–Tobgy*, 245 Or.App. 696, 707, 264 P.3d 150 (2011), *re v. den.*, 351 Or. 675, 276 P.3d 1123 (2012) (describing elements); *Preferred Funding, Inc. v. Jackson*, 185 Or.App. 693, 699, 61 P.3d 939 (2003); *Morris v. Nance*, 132 Or.App. 216, 223, 888 P.2d 571 (1994), *rev. den.*, 321 Or. 340, 898 P.2d 192 (1995) (stating preponderance of evidence standard).

102.

ORS 95.200 defines a "transfer" in broad terms as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset[.]" ORS 95.200(12).  An "asset," in turn, is defined as "property of a debtor." ORS 95.200(2). Finally, "property" is defined as "anything that may be the subject of ownership." ORS 95.200(10). *Norris v. R & T Mfg., LLC*, 265 Or App 672, 676, 338 P3d 150, 154 (2014).

//

//

//

Page 27 – ~~SECOND~~ THIRD AMENDED COMPLAINT

103.

As set forth in paragraphs ~~56~~ 39-40, the Defendants were aware that Larry was contesting the transfer of the Property to them, but chose to transfer the Property from Foreclosure Help to Clinton.  Not only did the Defendants transfer the Property to Clinton, but they also transferred all of the assets of Foreclosure Help to Trusted Home Offer LLC ~~and the Jane and John Does 1-5 Defendants~~.

104.

Foreclosure Help transferred the Property in haste to Clinton ~~and the other Jane and John Doe Defendants~~ in an effort to defeat and hinder the legitimate claims of Larry.

Under ORS 95.200:

> (3) "Claim" *means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.*
>
> (4) "Creditor" means a person who has a claim against a debtor. Larry is the Creditor.
>
> (6) "Debtor" means a person against whom a creditor has a claim. (Emphasis added).

The Debtor is Foreclosure Help.  The transferees are Clinton, April, and other portions of The Peterson Enterprise ~~and the Jane and John Doe Defendants~~.  In any action for relief against a transfer or obligation under ORS 95.200 to 95.310, a creditor, subject to the limitations provided in ORS 95.270, may obtain:

> (a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.
>
> (b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by any applicable provision of any other statute or the Oregon Rules of Civil Procedure.

Page 28 – ~~SECOND~~ THIRD AMENDED COMPLAINT

(c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) Any other relief the circumstances may require. *Id*.

105.

By making the transfer as described in paragraphs ~~13~~, 38, 45, ~~73~~ 92, and ~~84-85~~ 103-104 above, the Defendants are in violation of the Uniform Fraudulent Transfer Act (UFTA), ORS 95.200 *et seq.*, and the common law.

**COUNT 2 (As to April Peterson ~~, John and Jane Does 1-5,~~ The Peterson Enterprise, and Trusted Home Offer LLC Defendants Only)**

106.

Paragraphs ~~1-84~~ 1-105 are hereby incorporated by reference as if set forth in full herein.

107.

April ~~and/or the John and Jane Does 1-5,~~ and/or Trusted Home, and/or The Peterson Enterprise aided and abetted in the fraudulent transfer of the Property to Clinton, and also benefited in the form of the value of the Property.

108.

Section 876 of the Restatement (Second) of Torts (1979) ("Restatement") sets out three ways in which persons acting in concert may be held accountable for each other's tortious conduct:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:

(a) does a tortious act in concert with the other or pursuant to a common design

Page 29 – ~~SECOND~~ THIRD AMENDED COMPLAINT

with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."  Restatement (Second) of Torts § 876 (1979).

Or put another way, as early as the turn of the century, the courts in Oregon have held:

"[A]ll who aid, command, advise, or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be if they had done the same tort with their own hands." *Granewich v. Harding*, 329 Or 47, 53–54, 985 P2d 788, 792 (1999).

109.

April, and/or Clinton, along with The Peterson Enterprise, ~~the John and Jane Does 1-5~~, and/~~or~~ Trusted Home, acted to aid and abet the violations of the fraudulent conveyance statute. As an aider and abettor, April, Clinton, Trusted Home, The Peterson Enterprise, ~~along with the John and Jane Does 1-5,~~ and Trusted Home are responsible as if they were the debtor or the transferee.

110.

As a direct result of the actions of April, ~~and/or the John and Jane Does 1-5,~~ and/or Trusted Home, and/or The Peterson Enterprise, as described in paragraphs ~~82 through 90~~ 100 through 109, Larry has been damaged in an amount not more than $400,000.

111.

Larry is also entitled to his attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees under ORS 95.260(1)(c)(C).

//

//

Page 30 – ~~SECOND~~ THIRD AMENDED COMPLAINT

**COUNT 3 (As to April Peterson and Clinton Peterson Wildhorse Transfer)**

112.

Paragraphs 1-111 are incorporated by reference herein.

113.

The transfer of Wildhorse is more specifically described in Paragraphs 60 to 62 above

114.

As described in detail in Paragraph 62, the Defendants transferred Wildhorse in a manner in which to make it appear Wildhorse had been "sold" when in fact, RD White was a straw purchaser whose only role was to act as a middleman in the transfer of Wildhorse between April and Clinton and Lending Associates, a company that the Defendants established, at least in part, to make it appear they had large debts and were judgment proof.

115.

This was a fraudulent transfer under the statute as more thoroughly described in Paragraphs 100 through 105 above.

116.

As a direct result of the actions of April and Clinton as described in paragraphs 106 through 110, Larry has been damaged in an amount of not more than $400,000.

117.

Larry is also entitled to his attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees under ORS 95.260(1)(c)(C).

//

//

//

Page 31 – ~~SECOND~~ THIRD AMENDED COMPLAINT

**Sixth Claim For Relief**

**(Promissory Estoppel)**

118.

Paragraphs 1-117 are incorporated by reference herein.

119.

As stated in Paragraphs 18 through 22, and 24 above, the Defendants made representations to Larry that they wanted to "help" him out of or to avoid foreclosure.

120.

 These promises were false and/or misleading.  The Defendants were in the business of trolling for owners of distressed real estate using the internet and the name of their company "Foreclosure Help."  Once a vulnerable seller was found, the Defendants would attempt to pay little to no money to the seller to divert the equity in the property to themselves.  Larry acted on the promise of April and Clinton and sold the Property to FH for a price that was substantially under the fair market value of the Property.  Larry relied on the promise of April and Clinton to "help" him out of foreclosure and as a direct result, no longer has legal title to the Property.  This fact was never disclosed to Larry.

121.

The Defendants made these representations and withheld the material information from Larry knowingly.

122.

Larry was ignorant of the truth and/or was not capable of understanding what the Defendants were doing.  Larry does not believe or understand that he sold his Property.

//

Page 32 – ~~SECOND~~ THIRD AMENDED COMPLAINT

123.

The Defendants intended for Larry to act on the information that they provided to him.

124.

The Defendants induced Larry to act on their representations and omissions.

125.

Larry did act on the representations and omissions when he entered into the transaction as described in more detail in Paragraphs 25 through 29.

126.

As a direct result of the actions of April and Clinton, as described in paragraphs 118 through 125, Larry has been damaged in an amount not more than $400,000.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiffs pray for relief as follows on their claims:

1) On their First Claim for Relief for Plaintiffs' actual damages, in the amount of approximately $400,000, or an amount to be proven at trial, ascertainable damages in the amount of $327,000, or an amount to be proven at trial, or $200 of statutory damages, whichever is greater, plus pretrial interest, plus $4 million in punitive damages, plus attorney fees and costs allowed under the statute;

2) On their Second Claim for Relief for Plaintiffs' actual damages in the amount of $1.2 million, or an amount to be proven at trial, or $500 of statutory damages, whichever is greater, plus pretrial interest, plus emotional distress damages of $150,000, plus attorney fees and costs allowed under the statute;

3) On their Third Claim for Relief for Plaintiffs' actual damages in the amount of $400,000, or an amount to be proven at trial, plus pretrial interest, plus non-economic damages of $50,000, plus $4 million in punitive damages;

4) On their Fourth Claim for Relief, Plaintiffs pray for equitable relief granting Larry fee simple ownership in the Property or a judgment to the effect that Larry's rights are superior to those of anyone else;

5) On their Fifth Claim for Relief for Plaintiffs' actual damages in the amount of $400,000, or an amount to be proven at trial, plus pretrial interest, plus non-economic damages of $50,000, $200 of statutory damages, plus attorney fees and costs allowed under the statute;

6) On their Sixth Claim for Relief for Plaintiffs' actual damages in the amount of $400,000, or an amount to be proven at trial, plus pretrial interest, plus non-economic damages of $50,000, $200 of statutory damages, plus attorney fees and costs allowed under the statute;

7) On all Plaintiffs' Claims for Relief for their costs and disbursements incurred herein;

8) On all Plaintiffs' Claims for Relief, any other relief the Court finds right and just, including clawing back the Property or the Wildhorse property and freezing it, along with freezing all the other assets of April Peterson and Clinton Peterson, Foreclosure Help, Trusted Home, and The Peterson Enterprise, or appointing a receiver.

//

//

//

//

Page 34 – SECOND THIRD AMENDED COMPLAINT

### DEMAND FOR JURY TRIAL

The Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.


DATED:  June 27, 2024                    By:        /s/ Terry Scannell
                                                    Terry Scannell, OSB #853220
                                                    *terry@scannellaw.com*
                                                    Christopher E. Hayes, OSB #093777
                                                    *chris@scannellaw.com*
                                                    SCANNELLAW, LLC
                                                    7307 SW Beveland Street, Suite 200
                                                    Tigard, OR  97223
                                                    (503) 776-0806
                                                    *Attorneys for Plaintiffs*

Page 35 – ~~SECOND~~ THIRD AMENDED COMPLAINT