IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LARRY BALCOM, an individual, by and
through his attorney-in-fact; and MARY
BARNES, guardian ad litem,

               Plaintiffs,

    v.

CLINTON PETERSON and APRIL
PETERSON, a married couple;
FORECLOSURE HELP, L.L.C., an Idaho
Limited Liability Company; and TRUSTED
HOME OFFER, L.L.C., an Idaho Limited
Liability Company,

               Defendants.

Case No. 3:23-cv-00528-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

       Plaintiffs Larry Balcom ("Balcom") and Mary Barnes ("Barnes") (together, "Plaintiffs")

filed this action against Defendants Clinton and April Peterson, Foreclosure Help, LLC, and

Trusted Home Offer, LLC (together, "Defendants"). Plaintiffs assert claims for violation of

Oregon's Unlawful Trade Practices Act, financial abuse of a vulnerable person under Oregon

Revised Statute ("ORS") § 124.110, breach of fiduciary duty, constructive fraud, and fraudulent

transfer.

PAGE 1 – OPINION AND ORDER

Before the Court is Plaintiffs' counsel's petition for approval of fees and expenses. The Court has jurisdiction pursuant to 28 U.S.C. § 1332(a), but not all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).[1] For the reasons explained below, the Court grants Plaintiffs' counsel's petition in part and awards $33,232.80 in fees and expenses.

## BACKGROUND

On December 10, 2024, the Court issued an opinion addressing Defendants' violation of a previous discovery order. *See Balcom v. Peterson*, No. 3:23-cv-00528-SB, 2024 WL 5058740, at *3-4 (D. Or. Dec. 10, 2024) (addressing Defendants' violation of a December 15, 2023 discovery order).

The Court's previous discovery order required Defendants' production of unredacted bank statements from the Idaho Central Credit Union account of Foreclosure Help by December 29, 2023. *Id.* at *3. Defendants failed to comply with the Court's order (as Plaintiffs' evidence established and Defendants did not dispute) and instead produced redacted versions of the bank statements without disclosing that they had altered the documents prior to production. *Id.* Defendants also apparently failed to disclose their alteration of records to their then-counsel, who

---

[1] "Although the parties have not consented to allow a [m]agistrate [j]udge to enter final orders and judgment in this case in accordance with [Rule] 73 and 28 U.S.C. § 636(c), this Court has the authority to decide a request for attorneys' fees [and expenses where, as here, it] aris[es] out of a distinct pretrial event, such as attorneys' fees arising out of a discovery dispute." *Marshall v. Healthy Living Network Res., LLC*, No. 6:21-cv-01304-MK, 2022 WL 2015325, at *5 n.2 (D. Or. May 11, 2022) (quoting *Meyers v. Highlands at Vista Ridge Homeowners Ass'n, Inc.*, No. 6:20-cv-00562-MK, 2021 WL 5985164, at *1 n.1 (D. Or. Dec. 16, 2021)), *findings and recommendation adopted*, 2022 WL 1988000, at *1 (D. Or. June 6, 2022); *Meyers*, 2021 WL 5985164, at *1 & n.1 (describing the previous order "imposing discovery sanctions on [the] [p]laintiffs pursuant to [Rule 37]" and that magistrate judges have such authority in the pretrial discovery context) (simplified) (citing *Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 240 (9th Cir. 1991))).

withdrew and noted that she was required to do so under ethical rules governing her professional conduct. *Id.*

Based on these facts and others, the Court determined that Defendants' failure to produce the unredacted bank statements and comply with the Court's December 15, 2023 discovery order was not substantially justified and there were no circumstances that made an award of expenses unjust. *Id.*; *see also* FED. R. CIV. P. 37(b)(2)(C) (explaining that "[i]nstead of or in addition to the orders above, [a district] court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust"). The Court also noted that Defendants did not oppose Plaintiffs' request for payment of expenses under Rule 37(b)(2)(C). *Balcom*, 2024 WL 5058740 at *3. Accordingly, the Court granted Plaintiffs' motion for reasonable expenses (including attorney's and expert fees) "caused by" Defendants' violation of the Court's discovery order, and ordered Plaintiffs to send Defendants a detailed itemization of Plaintiffs' reasonable expenses, meaningfully confer with Defendants, and file any necessary motion for attorney's fees and expenses by January 14, 2025. *Id.* at *4 (first citing *McVeigh v. Climate Changers, Inc.*, 704 F. App'x 694, 695 (9th Cir. 2017); and then citing *Dagupion v. Nat'l City Mortg. Co.*, 542 F. App'x 643, 644 (9th Cir. Oct. 18, 2013)).

On January 10, 2025, the Court granted a stipulated motion to extend the filing deadline to January 28, 2025. (ECF No. 143.) Plaintiffs' counsel then timely filed their petition for fees and expenses, and the Court took the petition under advisement on March 4, 2025. (ECF Nos. 145, 161.)

## DISCUSSION

Plaintiffs argue that they reasonably incurred and are entitled to recover $76,777.22 in fees and costs "caused by" Defendants' violation of the Court's discovery order. (Pls.' Pet.

Approval Atty. Fees & Expenses ("Pls.' Pet.") at 1-11, ECF No. 145.) Defendants respond that

the Court should reduce Plaintiffs' requested award to $13,269.50, emphasizing that a "vast

majority" of Plaintiffs' fees and costs were not "caused by" Defendants' violation of the Court's

order. (Defs.' Resp. Pls.' Pet. Approval Atty. Fees & Expenses ("Defs.' Resp.") at 1-2, ECF No.

157.)

## I.    APPLICABLE LAW

"Once a party is found eligible for fees, the district court must then determine what fees

are reasonable[.]" *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) (quoting

*Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016)). District "[c]ourts begin the

analysis by applying the lodestar method."[2] *Id.* (citing *Bravo v. City of Santa Maria*, 810 F.3d

659, 665-66 (9th Cir. 2016)); *see also Edmo v. Corizon, Inc.*, 97 F.4th 1165, 1168-69 (9th Cir.

2024) ("To calculate [reasonable] attorneys' fees, courts in the Ninth Circuit use the . . . 'lodestar

method.'" (quoting *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1201-02 (9th Cir. 2013)));

*Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) ("The 'lodestar [method]'

has 'achieved dominance in the federal courts' and is 'the guiding light of the Supreme Court's

fee-shifting jurisprudence.'" (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551

(2010))); *Zweizig v. Nw. Direct Teleservices, Inc.*, No. 3:15-cv-02401-HZ, 2019 WL 5889296, at

*2 (D. Or. Nov. 11, 2019) ("Oregon courts generally . . . [utilize] the lodestar method[.]")

(simplified).

///

---

[2] The parties agree that in evaluating the reasonableness of Plaintiffs' counsel's fees and
expenses, the Court should apply the lodestar method. (Pls.' Pet. at 3; Defs.' Resp. at 2.) Courts
have applied the lodestar method in this context. *See Meyers*, 2021 WL 5985164, at *1-2 (noting
that the magistrate judge imposed discovery sanctions (fees and costs) under Rule 37(b)(2)(C)
and applied the lodestar method in evaluating the reasonableness of the fees requested). The
Court does the same here.

"The lodestar method is a two-step process." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (citing *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)). First, "the court multiplies the number of hours the prevailing party reasonably spent on litigation by a reasonable hourly rate to determine a presumptively reasonable fee award." *Kim v. Allison*, 8 F.4th 1170, 1180 (9th Cir. 2021) (citing *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016)). This "presumptively reasonable fee award" is the "lodestar figure," *Kelly*, 822 F.3d at 1099, and the reasonable hourly rate underlying this figure is "determined by assessing 'the prevailing market rate in the relevant community.'" *Roberts*, 938 F.3d at 1024 (quoting *Kelly*, 822 F.3d at 1099). "[T]he lodestar figure roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case[.]" *Kelly*, 822 F.3d at 1099 (quoting *Perdue*, 559 U.S. at 551).

Second, "[a]fter the lodestar figure is determined, [a court may exercise its] discretion to adjust the lodestar figure upward or downward based on a variety of [reasonableness] factors 'not subsumed in the lodestar figure.'" *Roberts*, 938 F.3d at 1024 (quoting *Kelly*, 822 F.3d at 1099). These "reasonableness" factors, also "known as the *Kerr* factors," include the (1) quality of representation, (2) results obtained, (3) complexity and novelty of the issues presented, and (4) risk of nonpayment. *Stetson v. Grissom*, 821 F.3d 1157, 1166-67 (9th Cir. 2016) (first citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941-42 (9th Cir. 2011); and then citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992)); *see also Vogel*, 893 F.3d at 1158 ("[O]ther considerations . . . may lead the district court to adjust the fee upward or downward,

including the important factor of the results obtained." (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983))).

## II.    ANALYSIS

As the parties agree (Pls.' Pet. at 3; Defs.' Resp. at 2), the Court must "begin [its] analysis by applying the [two-step] lodestar method." *Roberts*, 938 F.3d at 1023 (citing *Bravo*, 810 F.3d at 665-66).

### A.    Reasonable Hourly Rates

The Court's "first step" in applying the lodestar method is to "determine the presumptive lodestar figure." *Edmo*, 97 F.4th at 1168 (citing *Gonzalez*, 729 F.3d at 1202). The "first component" of this presumptive lodestar figure is a reasonable hourly rate. *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1106 (9th Cir. 2015); *see also Roberts*, 938 F.3d at 1026 (explaining that "[f]or purposes of establishing the lodestar figure in an attorney's fees case, district courts must first determine a reasonable hourly rate"). "The established standard when determining a reasonable hourly rate is the rate prevailing in the [relevant] community for similar work performed by attorneys of comparable skill, experience, and reputation." *Edmo*, 97 F.4th at 1168 (quoting *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008)); *see also Kelly*, 822 F.3d at 1099 (observing that "[a] reasonable hourly rate is ordinarily the 'prevailing market rate in the relevant community'" (brackets omitted) (quoting *Perdue*, 559 U.S. at 551)).

Plaintiffs' counsel and paralegals seek these hourly rates: (1) $450.00 for Plaintiffs' lead counsel, Terry Scannell ("Scannell"), (2) $350.00 for Scannell's co-counsel, Christopher Hayes ("Hayes"), and (3) $150.00 for Plaintiffs' counsel's paralegals, Stephen Gazda ("Gazda"), Zoë Kaidariades ("Kaidariades"), Tammi Broskoski ("Broskoski"), and Mallory Daniel ("Daniel"). (*See* Defs.' Resp. Exs. 1-4, ECF Nos. 157-1 to 157-4, listing these individuals' rates; Decl.

Bonnie Richardson Supp. Pls.' Pet. Approval Atty. Fees & Expenses ("Richardson Decl.") Exs.

1-2, ECF Nos. 159-1 and 159-2, confirming Scannell's, Hayes', and Broskoski's hourly rates of

$450.00, $350.00 and $150.00; Pls.' Pet. at 5, addressing the "paralegal rate of $150.00 per

hour"). Plaintiffs' counsel presents evidence and arguments in support of these requested hourly

rates.

For example, in addition to describing Scannell's and Hayes' backgrounds and legal

experience in the petition for fees and expenses, Plaintiffs' counsel argues that Scannell's and

Hayes' $450.00 and $350.00 hourly rate are consistent with the Oregon State Bar's ("OSB")

2022 Economic Survey and their paralegals' rates of $150.00 aligns with case law from this

district.[3] (Pls.' Pet. at 5, 7, 9-10.) Scannell also submitted a declaration stating that "[t]he

customary fee in the community would be the hourly rates shown [in his itemization] and

multiplied by the hours worked," he took Plaintiffs' case on a "mixed hourly and contingent fee

basis," and he is charging "lower hourly rates" and "lower than the normal contingent fee rate on

any recovery in the case." (Decl. Terry Scannell Supp. Pls.' Pet. Approval Atty. Fees &

Expenses ("Scannell Decl.") ¶¶ 8-9, ECF No. 146.) Furthermore, Plaintiffs' counsel submitted a

declaration from Bonnie Richardson ("Richardson"), an Oregon attorney who has twenty-seven

years of experience practicing law, served as an expert on attorney fee cases, reviewed the

---

[3] Judges in this district use the "most recent" OSB Economic Survey "as a benchmark for assessing the reasonableness of hourly billing rates." *Munger v. Intel Corp.*, No. 3:22-cv-00263-HZ, 2023 WL 8433191, at *2 (D. Or. Dec. 1, 2023); *Huyck v. Shilling-Devaney*, No. 3:18-cv-00400-JR, 2022 WL 16924130, at *2 (D. Or. Nov. 14, 2022); *see also* LR 54-3(a) (providing a "Practice Tip" on fee motions and noting that "[a]s for the reasonable hourly rate, the Court uses the most recent [OSB] Economic Survey as its initial benchmark," and "[a]ttorneys may argue for higher rates based on inflation, specialty, or other factors," but "the Court requests that fee petitions address the Economic Survey and provide justification for requested hourly rates higher than reported by the Survey"). "The most recent [2022] OSB Economic Survey is available at https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf." *Munger*, 2023 WL 8433191, at *2 n.2.

relevant filings and Plaintiffs' counsel's itemization, and proposed reductions, and offered opinions on Plaintiffs' counsels' and paralegals' rate-related practices. (Richardson Decl. ¶¶ 1-3, 7, 9, 14, 16-18; *id.* Exs. 1-2.)

"It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate." *Roberts*, 938 F.3d at 1024 (first citing *Hensley*, 461 U. S. at 433; and then citing *Camacho*, 523 F.3d at 980). Defendants do not dispute that Plaintiffs' counsels' and paralegals' rates are consistent with the prevailing market rates in the relevant community. *See generally Daley v. A&S Collection Assocs., Inc.*, No. 09-cv-00946-ST, 2010 WL 5137834, at *3 (D. Or. Dec. 10, 2010) ("Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997))).

Nor do Defendants argue that Plaintiffs' counsel failed to present satisfactory evidence of the prevailing market rates in the relevant community. *See generally Roberts*, 938 F.3d at 1024 (noting that "[a]ffidavits of the plaintiff['s] attorneys and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate" (quoting *Camacho*, 523 F.3d at 980)); *see also Poticny v. Movers & Packers Relocation Specialists LLC*, No. 3:22-cv-01243-IM, 2022 WL 18024218, at *9 (D. Or. Dec. 30, 2022) ("According to the 2020 National Utilization and Compensation Survey Report, the mean hourly billable rate for a paralegal in the Far West region, which includes the State of Oregon, is $140 per hour."); *Huyck*, 2022 WL 16924130, at *3 (finding that a paralegal's $200.00 hourly rate was reasonable); *Brinkmann v. ABM Onsite Servs.-West, Inc.*, No. 3:17-cv-00275-SI, 2021 WL 3932040, at *19 (D. Or. Sept. 2, 2021) (performing a lodestar cross-check and accepting a paralegal's $205.00 hourly rate).

Under these circumstances, the Court concludes that Plaintiffs' counsels' and paralegals' hourly rates are reasonable.[4] *Cf. $28,000.00 in U.S. Currency*, 802 F.3d at 1106 ("Because the government did not contest the market fee rate supported by these declarations, the district court was required to presume that rate reasonable." (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990))); *see also Roberts*, 938 F.3d at 1025 (reversing and remanding to the district court and emphasizing that "in the absence of countervailing evidence from the [defendant], the [hourly rate] declarations stood unrefuted," and that "'[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence

---

[4] The Court notes that attorneys typically detail their education and experience in the declarations they file in support of their fee motions, not briefs, as the former is evidence and latter is argument. *See Roberts*, 938 F.3d at 1024 (addressing an attorney's fee request and obligation to "submit evidence to support the requested hourly rate" and noting that "[t]o meet this obligation, [the attorney] submitted his own declaration detailing his education and experience," which is the "type [of material] ordinarily considered by courts to determine an appropriate lodestar amount") (citations omitted); *Comstock v. Humphries*, 786 F.3d 701, 709 (9th Cir. 2015) ("Although the State's brief in opposition to Comstock's new trial motion claimed that Street told the State that he did not lose the ring, arguments in briefs are not evidence[.]" (citing *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002))). The Court, however, also notes that (1) Defendants "do not [generally] object to an award to Plaintiffs for 'reasonable' expenses 'caused by' Defendants violation of the Court's December 15, 2023 Order," and simply "request that Plaintiffs' award be reduced to $13,269.50," (2) Defendants and Richardson received copies of and reviewed Plaintiffs' counsels' itemization, and Plaintiffs counsel conferred with Defendants regarding any specific objections thereto, and (3) the Court is familiar with Plaintiffs' counsels' firm and experience and reviewed the most recent 2022 OSB Economic Survey. (*See* Defs.' Resp. at 1-2, 8; Defs.' Resp. Exs. 1-4; Richardson Decl. ¶¶ 17-18 & Exs. 1-2.) Given these considerations, the Court is satisfied that Plaintiffs' counsel discharged their initial burden of production and that it may proceed to the factual determination as to whether the requested fee is "reasonable," which is the only matter in dispute. *See generally $28,000.00 in U.S. Currency*, 802 F.3d at 1105-06 (describing the "well established" "evidentiary burdens governing fee motions," stating that "[i]f the [fee] applicant discharges [his] legal obligation as to the burden of production, [a district] court then proceeds to a factual determination as to whether the requested fee is reasonable," and explaining that an "applicant's initial duty of production is not excused by lack of opposition" and that a district "court does 'not improperly shoulder defendant['s] burden of challenging the fee petition' in finding that the applicant has failed to meet its initial burden of production") (simplified).

to the district court challenging the accuracy' of the submitted affidavits" (quoting *Camacho*, *523 F.3d at 980*)).

## B.    Hours Reasonably Expended

The second component of the lodestar figure is the number of hours reasonably expended. *See $28,000 in U.S. Currency*, 802 F.3d at 1105-08 (addressing each "component of the lodestar [figure]—the [reasonable] hourly rate [and] hours expended," and identifying and treating the "reasonable hourly rate," which is "the prevailing market rate," as the "first component"). "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Id.* at 1107 (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992)). The "evidence must include . . . detailed documentation of the hours worked." *Id.* at 1105 (citing *Gates*, 987 F.2d at 1397).

In their petition, Plaintiffs' counsel seeks a total fee and cost award of $76,777.22. (*See* Pls.' Pet. at 2, reflecting that Plaintiffs' counsel requests "$76,777.22 in fees and costs caused by . . . Defendants' violation of the Court's December 15, 2023[] Order"). Defendants respond that they "do not object to an award to Plaintiffs for 'reasonable' expenses 'caused by' Defendants violation of the Court's December 15, 2023 Order." (Defs.' Resp. at 1, 8.) Defendants, however, request that the Court reduce Plaintiffs' counsel's award to $13,269.50. (*Id.* at 2.)

### 1.    Preliminary Issues

Before turning to the hours reasonably expended, the Court must address a few preliminary issues relevant to the scope of the Court's analysis under the lodestar figure's second component.

///

### a.    Defendants' Objections and Exhibits

Defendants divide their objections and $63,507.72 in proposed reductions (i.e., Plaintiffs' requested award of $76,777.22, minus Defendants' proposed award of $13,269.50) into four categories.

First, Defendants argue that it is unreasonable for Plaintiffs to request $19,856.25 in attorney's and paralegal fees for preparing an eleven-page motion to compel and impose sanctions (ECF No. 90). (Defs.' Resp. at 3.) Defendants attach as Exhibit 1 to their opposition the relevant billing entries from Plaintiffs' itemization. (*See id.* Ex. 1 at 1-3, listing a total of $19,856.25).

Second, Defendants argue that Plaintiffs improperly seek to recover $7,447.50 in fees for preparing their supplemental brief (ECF No. 130) regarding their motion to compel and impose sanctions. (Defs.' Resp. at 5.) Defendants attach as Exhibit 2 to their opposition the relevant billing entries from Plaintiffs' counsel's itemization. (*See id.* Ex. 2 at 1, listing a total of $7,447.50).

Third, Defendants seek to exclude $37,988.35 in fees and costs that Plaintiff would have "incurred in the normal course of this litigation," and therefore were not "caused by" Defendants' violation of the Court's December 15, 2023 Order. (*Id.* at 5.) Defendants attach as Exhibit 3 to their opposition the relevant billing entries from Plaintiffs' counsel's itemization. (*See id.* Ex. 3 at 1-6, listing a total of $24,133.50 in fees; *id.* at 7, listing $13,854.85 in total costs).

Fourth and finally, Defendants seek $2,965.62 in reductions stemming from Plaintiffs' vague billing entries. (*Id.* at 7.) Defendants attach as Exhibit 4 to their opposition the relevant entries from Plaintiffs' counsel's itemization. (*See id.* Ex. 4 at 1-2, listing totals of $2,922.50 and $43.12).

PAGE 11 – OPINION AND ORDER

b.    **Unopposed Fees and Costs**

The difference between Defendants' exhibits' listed totals (i.e., $68,257.72 or the sum of

$19,856.25, $7,447.50, $37,988.35, and $2,965.62) and requested reductions (i.e., $63,507.72) is

$4,750.00, which Defendants argue is a reasonable fee award under Exhibit 1 for entries related

to Plaintiffs' motion to compel and impose sanctions. (Defs.' Resp. at 5 n.1, 8.) Defendants do

not challenge the reasonableness of what the parties describe as the remaining $8,519.50 in fees

and costs at issue.[5] (*Id.* at 2, 8; *see also* Pls.' Reply Defs.' Resp. Pls.' Pet. Approval Atty. Fees &

Expenses ("Pls.' Reply") at 7, ECF No. 158, citing the same total of "$8,519.50" and stating that

Defendants "apparently include[d]" the $4,750.00 Exhibit 1 award in their proposal). Rather,

Defendants simply note that their proposed total award includes "several entries related to

Plaintiffs' uncovering of [Defendants'] violation, Plaintiffs' communications with the Court

[about] the violation, drafting [the] attorneys' fee petition, and the cost of Plaintiffs' document

expert Mark Songer, all of which Defendants[] [d]o not dispute a[re] recoverable."[6] (Defs.' Resp.

at 8 n.5.)

Given their stipulation and the remaining entries to which they object and include in their

exhibits, Defendants arrived at their proposed award of $13,269.50 by subtracting these sums

from Plaintiffs' requested award of $76,777.22: (1) $22,553.75, which represents Exhibit 1's

listed total of $19,856.25, plus Exhibit 2's listed total of $7,447.50, minus Defendants' $4,750.00

---

[5] This is equivalent to the total award that Defendants propose ($13,269.50) minus the
Exhibit 1 award ($4,750.00) that they propose for Plaintiffs' motion to compel and impose
sanctions, and Plaintiffs' requested award ($76,777.22) minus the sum of Defendants' exhibits'
listed totals ($68,257.72).

[6] Defendants fail to direct the Court to specific billing entries to which they do not object.
Presumably, the parties' conferral efforts and Defendants' pre-filing review of Plaintiffs'
counsel's itemization resulted in Defendants finding it unnecessary to include such entries in
their exhibits.

proposed award for Exhibit 1's billing entries, which concern Plaintiffs' motion to compel and impose sanctions, (2) $37,988.35, which is Exhibit 3's listed sum total, and (3) $2,965.62, which is Exhibit 4's listed sum total. (*See id.* at 2, 5 n.1, 8; *id.* Ex. 1 at 3; *id.* Ex. 2 at 1; *id.* Ex. 3 at 6-7; *id.* Ex. 4 at 1-2, setting forth the relevant sum totals and Defendants' method for arriving at "$22,553.75").

At this juncture, the Court must note that it imported the data from Defendants' exhibits into Microsoft Excel and confirmed that Defendants' sum totals are based on the amounts listed in their exhibits' "total fees after reduction" and "[t]otal" costs columns. (*See* Defs.' Ex. 1 at 1-3; *id.* Ex. 2 at 1; *id.* Exs. 3 at 1-7; *id.* Ex. 4 at 1-2) (simplified). By comparison, $75,241.72 is the sum of the amounts listed in these exhibits' "[b]illable" columns (i.e., $22,230.75 in fees under Exhibit 1, plus $7,447.50 in fees under Exhibit 2, plus $28,743.00 in fees and $13,854.85 in costs under Exhibit 3, plus $2,922.50 in fees and $43.12 in costs under Exhibit 4). (*See id.*) The Court's review also confirmed that Defendants' Exhibits 1 and 3 include $6,273.00 in duplicate billing entries:

| Date | User | Hours | Rate | Billable | Plaintiffs' Counsel's Description | Defendants' Notations | Hours Subtracted | Charges Subtracted | Total Hours After Reduction | Total Fees After Reduction |
|------|------|-------|------|----------|-----------------------------------|----------------------|------------------|--------------------|-----------------------------|----------------------------|
| 5/21/24 | Zoe Kaidariades | 1 | 150 | $150.00 | compose email to opposing counsel re motion to compel, **deposition dates and MOET** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.67 | $100.50 | 0.33 | $49.50 |
| 5/21/24 | Zoe Kaidariades | 1 | 150 | $150.00 | compose email to opposing counsel re motion to compel, **deposition dates and MOET** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.5 | $75.00 | 1 | $75.00 |
| 5/23/24 | Zoe Kaidariades | 1.3 | 150 | $195.00 | reading through and taking notes on the conference call from 2.21 with judge beckerman on discovery issues | | | | 1.3 | $195.00 |
| 5/23/24 | Zoe Kaidariades | 1.3 | 150 | $195.00 | reading through and taking notes on the conference call from 2.21 with judge beckerman on discovery issues | Not "caused by Defendants' violation of the Court's December 15, 2023, order." | | | 1.3 | $195.00 |

///

| Date | Name | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/28/24 | Terry Scannell | 1.5 | 450 | $675.00 | Draft the Motion to compel (1h) **and work on the deposition schedule. (.5h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.5 | $225.00 | 1 | $450.00 |
| 5/28/24 | Terry Scannell | 1.5 | 450 | $675.00 | Draft the Motion to compel (1h) **and work on the deposition schedule (.5h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 1 | $450.00 | 1 | $225.00 |
| 5/29/24 | Terry Scannell | 3.53 | 450 | $1,588.50 | Draft the Motion to compel (2.5h) **and work on the deposition schedule (1.0h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 1 | $450.00 | 2.53 | $1,138.50 |
| 5/29/24 | Terry Scannell | 3.53 | 450 | $1,588.50 | Draft the Motion to compel (2.5h) **and work on the deposition schedule (1.0h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2.5 | $1,125.00 | 1.03 | $463.50 |
| 5/31/24 | Steve Gazda | 1.92 | 150 | $288.00 | Analyzed emails and bank statements ISO **Motion to Vacate**, Motion to Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.96 | $144.00 | 0.96 | $144.00 |
| 5/31/24 | Steve Gazda | 1.92 | 150 | $288.00 | Analyzed emails and bank statements ISO **Motion to Vacate**, Motion to Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.96 | $144.00 | 0.96 | $144.00 |
| 6/1/24 | Steve Gazda | 3.49 | 150 | $523.50 | Analyze statements ISO TS Motion to Compel and **Motion to Vacate** (2h), **deposition prep (1.49h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2.49 | $373.00 | 1 | $150.00 |
| 6/1/24 | Steve Gazda | 3.49 | 150 | $523.50 | Analyze statements ISO TS Motion to Compel and **Motion to Vacate (2h), deposition prep (1.49h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 1 | $150.00 | 2.49 | $373.50 |
| 6/5/24 | Chris Hayes | 3.1 | 350 | $1,085.00 | Edit Mot. Compel, **Settlement ltr. to OC** (2.6; 0.5) | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.5 | $175.00 | 2.6 | $910.00 |
| 6/5/24 | Chris Hayes | 3.1 | 350 | $1,085.00 | Edit Mot. Compel, **Settlement ltr. to OC (2.6; 0.5)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2.6 | $910.00 | 0.5 | $175.00 |
| 6/7/24 | Chris Hayes | 4.7 | 350 | $1,645.00 | Draft & Edit Mot. Compl (1.2; 1.2), **Mot. Vacate (0.6; 0.7);** Finalize Mots. **(1.0)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 1.8 | $630.00 | 2.9 | $1,015.00 |
| 6/7/24 | Chris Hayes | 4.7 | 350 | $1,645.00 | Draft & Edit Mot. Compl (1.2; 1.2), **Mot. Vacate (0.6; 0.7);** Finalize Mots. **(1.0)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2.9 | $1,015.00 | 1.8 | $630.00 |

///

///

PAGE 14 – OPINION AND ORDER

| Date | User | Hours | Rate | Billable | Activity Category | Plaintiffs' Counsel's Description | Position | Vague | Excessive | Richardson's Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/10/24 | Tammi Broskoski | 0.82 | 150 | $123.00 | | Electronic filing of Motion to Compel & Sanctions, **Motion to Vacate Protective Order, Motion to Freeze Assets, Declarations, & Accompanying Exhibits** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.55 | $82.50 | 0.27 | $40.50 |
| 6/10/24 | Tammi Broskoski | 0.82 | 150 | $123.00 | | Electronic filing of Motion to Compel & Sanctions, **Motion to Vacate Protective Order, Motion to Freeze Assets, Declarations, & Accompanying Exhibits** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.27 | $40.50 | 0.55 | $82.50 |
| **Total** | | | | **$12,546.00** | | | | | | |
| **Ex. 3** | | | | **$6,273.00** | | | | | | |

Accounting for Defendants' exhibits' $6,273.00 in duplicate billing entries reduces the sum of the totals listed in the billable fees and costs columns from $75,241.72 to $68,968.72. That means that there is no more than $7,808.50 in entries to which Defendants do not object or include in their exhibits, which is $711.00 less (i.e., a miscalculation) than the $8,519.50 sum that Defendants derived from (1) Plaintiffs' requested award and the sum of their exhibits' total fees and costs after reduction column, and/or (2) their proposed award and the Exhibit 1 billing entries that they agree are recoverable and propose as an award under their exhibits. *See supra* note 5 at 12; (*see also* Defs.' Resp. at 5 n.1, 8, objecting to all remaining entries in Defendants' exhibits). Also notable (and addressed further below) is Richardson's proposal (and Plaintiffs' counsel's acceptance) of $1,440.00 in reductions based on Richardson's six unique, nonduplicate billing entries:

| Date | User | Hours | Rate | Billable | Activity Category | Plaintiffs' Counsel's Description | Position | Vague | Excessive | Richardson's Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 12/30/23 | Terry Scannell | 0.84 | 450 | $378.00 | Conferral | Review the bank statements and write opposing attorney about the issues. Confer. | Attorney | X | | More detail needed. |
| 1/9/24 | Terry Scannell | 0.33 | 450 | $148.50 | | Subject: RE: Balcom v. Foreclosure Help- FH Bank Statements (PET000283-317) | Attorney | X | | More detailed needed. |
| 1/29/24 | Terry Scannell | 0.33 | 450 | $148.50 | Email Compose or Read | Subject: Settlement | Attorney | X | | More detail needed. |
| 2/15/24 | Zoe Kaidariades | 2.6 | 150 | $390.00 | Letter Draft | compose draft letter to judge, includes time spent looking for important dates in the chronology to put in the letter | Clerk | X | | More detail needed. |

| 7/2/24 | Tammi Broskoski | 2 | 150 | $300.00 | Motion Support and Proofing | Editing & Formatting Motion for Protective Order, Including Checking Citations | Paralegal | | X | Formatting portion is administrative. |
|---|---|---|---|---|---|---|---|---|---|---|
| 8/2/24 | Zoe Kaidariades | 0.5 | 150 | $75.00 | Email Compose or Read | emailing letter to judge beckerman. time includes editing letter to be via email only instead of through ecf | Clerk | | X | Administrative. |
| **Total** | | | | **$1,440.00** | | | | | | |

(*See* Richardson Decl. Exs. 1-2, reflecting that unlike the Court's figures herein and the parties' motion papers and with the exception of Broskoski's July 2, 2024 entry above, Richardson's exhibits and fee calculations are based on incorrect paralegal hourly rates of $100.00, not $150.00).

Accounting for duplicates and Richardson's $1,440.00 in unique, nonduplicate entries (and proposed and accepted reductions) means that of the $76,777.22 in fees and costs that Plaintiffs' counsel requested, there are $6,368.50 in billing entries to which Defendants do not object and that neither the parties nor Richardson made part of the current record (i.e., Plaintiffs' requested award minus $70,408.70, which is the sum of the $68,968.72 and $1,440.00 in nonduplicate entries in Defendants' and Richardson's exhibits, respectively).[7] (*See* Pls.' Reply at 5, accepting Richardson's proposed reductions based on the corresponding totals, which the Court adjusted).

In summary, Plaintiffs' counsel requested a total fee and cost award of $76,777.22, which includes $6,368.50 in billing entries that are not in the record before the Court or subject to any of Defendants' objections or Richardson's proposed reductions. Of these $70,408.70 in unique, nonduplicate billing entries, Defendants' exhibits cover $68,968.72 and Plaintiffs accepted the remaining $1,440.00 as reductions. Defendants propose a total fee and cost award of $13,269.50. Defendants, however, only stipulate to an award of $4,750.00 based on the billing entries that

---

[7] Plaintiffs' counsel inadvertently failed to attach a complete itemization to his declaration. (*See* Scannell Decl. ¶ 2, declaring but failing to attach counsel's itemization as an exhibit).

they included in their exhibits. (Specifically, the Exhibit 1 billing entries, all of which concern Plaintiffs' counsel's work on their motion to compel and impose sanctions.) Defendants also object to any award under their exhibits' remaining billing entries, and present arguments in support of these objections. Consequently, Defendants' arguments depend on the Court awarding Plaintiffs' counsel $6,368.50 for the entries absent from the record, as Defendants' proposed award ($13,269.50) equals the sum of these absent entries ($6,368.50), Defendants' miscalculation ($711.00) and proposed award pursuant to their exhibits ($4,750.00), and Richardson's unique (and subsequently filed) entries ($1,440.00), which Plaintiffs' counsel accepted as reductions:

| Description | Amount |
|---|---|
| Plaintiffs' Total Requested Fees & Costs | **$76,777.22** |
| *Unreasonable Fees & Costs for MTC and Supp. Brief* (10 attorney hours and 5 staff hours) | **(-$22,553.75[1])** |
| *Fees & Costs Not Caused by Violation* (93.44 hours and $13,854.85 in costs) | **(-$37,988.35)** |
| *Fees & Costs For Vague Entries* (7.05 hours and $43.12 in costs) | **(-$2,965.62)** |
| Total: | **$13,269.50** |

[1] $19,856.25 (MTC)+$7,447.50 (Supplemental Brief)-$4,750 (fees for MTC)=$22,553.75 (*See* Defs.' Resp. at 5 n.1, 8, displaying Defendants' calculations above) (footnote transposed and omitted).

The Court notes that the only other potential source for Defendants' proposed award is the partial reductions that Defendants listed in Exhibits 1 and 3. (*See id.* Ex. 1 at 1-3, applying partial reductions to ten entries, including Gazda's and Hayes' respective entries on June 10 and

June 25, 2025, which are nonduplicates; *id.* Ex. 3 at 1-4, applying partial reductions to nine

entries, which consist of eight Exhibit 1 duplicates and Hayes' June 10, 2024 nonduplicate

entry). Notably, however, Defendants' reductions to these three nonduplicate and eight duplicate

entries—the latter of which Defendants reduced twice for the same reason but often a different

amount (i.e., five entries' remaining fees and hours, $0.50 less for Gazda's June 1, 2024 entry,

$25.50 more and 0.17 hours more for Kaidariades' May 21, 2024 entry, and $13.50 less and 0.03

unattributed hours less for Scannell's May 29, 2024 entry)—effectively eliminated nearly all of

the billed fees:

| Date | User | Hours | Rate | Billable | Plaintiffs' Counsel's Description | Defendants' Notations | Hours Subtracted | Charges Subtracted | Total Hours After Reduction | Total Fees After Reduction |
|------|------|-------|------|----------|-----------------------------------|-----------------------|------------------|--------------------|-----------------------------|----------------------------|
| 5/21/24 | Zoe Kaidariades | 1 | 150 | $150.00 | compose email to opposing counsel re motion to compel, **deposition dates and MOET** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.67 | $100.50 | 0.33 | $49.50 |
| 5/21/24 | Zoe Kaidariades | 1 | 150 | $150.00 | compose email to opposing counsel re motion to compel, **deposition dates and MOET** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.5 | $75.00 | 1 | $75.00 |
| 5/28/24 | Terry Scannell | 1.5 | 450 | $675.00 | Draft the Motion to compel (1h) **and work on the deposition schedule (.5h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.5 | $225.00 | 1 | $450.00 |
| 5/28/24 | Terry Scannell | 1.5 | 450 | $675.00 | Draft the Motion to compel (1h) **and work on the deposition schedule (.5h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 1 | $450.00 | 1 | $225.00 |
| 5/29/24 | Terry Scannell | 3.53 | 450 | $1,588.50 | Draft the Motion to compel (2.5h) **and work on the deposition schedule (1.0h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 1 | $450.00 | 2.53 | $1,138.50 |
| 5/29/24 | Terry Scannell | 3.53 | 450 | $1,588.50 | Draft the Motion to compel (2.5h) **and work on the deposition schedule (1.0h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2.5 | $1,125.00 | 1.03 | $463.50 |
| 5/31/24 | Steve Gazda | 1.92 | 150 | $288.00 | Analyzed emails and bank statements ISO **Motion to Vacate**, Motion to Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.96 | $144.00 | 0.96 | $144.00 |
| 5/31/24 | Steve Gazda | 1.92 | 150 | $288.00 | Analyzed emails and bank statements ISO **Motion to Vacate**, Motion to Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.96 | $144.00 | 0.96 | $144.00 |

| Date | Name | Hours | Rate | Amount | Description | Notes | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/31/24 | Steve Gazda | 1.92 | 150 | $288.00 | Analyzed emails and bank statements ISO **Motion to Vacate**, Motion to Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.96 | $144.00 | 0.96 | $144.00 |
| 6/1/24 | Steve Gazda | 3.49 | 150 | $523.50 | Analyze statements ISO TS Motion to Compel and **Motion to Vacate (2h), deposition prep (1.49h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2.49 | $373.00 | 1 | $150.00 |
| 6/1/24 | Steve Gazda | 3.49 | 150 | $523.50 | Analyze statements ISO TS Motion to Compel and **Motion to Vacate (2h), deposition prep (1.49h)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 1 | $150.00 | 2.49 | $373.50 |
| 6/5/24 | Chris Hayes | 3.1 | 350 | $1,085.00 | Edit Mot. Compel, **Settlement ltr. to OC (2.6; 0.5)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.5 | $175.00 | 2.6 | $910.00 |
| 6/5/24 | Chris Hayes | 3.1 | 350 | $1,085.00 | Edit Mot. Compel, **Settlement ltr. to OC (2.6; 0.5)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2.6 | $910.00 | 0.5 | $175.00 |
| 6/7/24 | Chris Hayes | 4.7 | 350 | $1,645.00 | Draft & Edit Mot. Compl (1.2; 1.2); **Mot. Vacate (0.6; 0.7)**; Finalize Mots. **(1.0)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2.9 | $1,015.00 | 1.8 | $630.00 |
| 6/7/24 | Chris Hayes | 4.7 | 350 | $1,645.00 | Draft & Edit Mot. Compl (1.2; 1.2); **Mot. Vacate (0.6; 0.7)**; Finalize Mots. **(1.0)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 1.8 | $630.00 | 2.9 | $1,015.00 |
| 6/10/24 | Chris Hayes | 3.3 | 350 | $1,155.00 | Edit Mots. Compel (1.3; 0.7); **Vacate (1.3); Freeze Assets (NC)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 2 | $700.00 | 1.3 | $455.00 |
| 6/10/24 | Steve Gazda | 2.12 | 150 | $318.00 | Edit SG declaration ISO Motion to Compel, fact checked claims in both **Motion to Vacate** and Motion to Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.71 | $106.50 | 1.41 | $211.50 |
| 6/10/24 | Tammi Broskoski | 0.82 | 150 | $123.00 | Electronic filing of Motion to Compel & Sanctions, **Motion to Vacate Protective Order, Motion to Freeze Assets, Declarations, & Accompanying Exhibits** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.55 | $82.50 | 0.27 | $40.50 |

///

///

PAGE 19 – OPINION AND ORDER

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 6/10/24 | Tammi Broskoski | 0.82 | 150 | $123.00 | Electronic filing of Motion to Compel & Sanctions, **Motion to Vacate Protective Order, Motion to Freeze Assets, Declarations, & Accompanying Exhibits** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.27 | $40.50 | 0.55 | $82.50 |
| 6/25/24 | Chris Hayes | 0.5 | 350 | $175.00 | Review filings by OC in Resp. to **Mot. to Vacate PO** and Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." | 0.25 | $87.50 | 0.25 | $87.50 |
| **Sum Total All Listed Entries** | | **46.04** | | **$13,804.00** | | | **23.16** | **$6,983.50** | **23.88** | **$6,820.00** |
| **Sum Total Nonduplicate Entries** | | **5.92** | | **$1,648.00** | | | **2.96** | **$894.00** | **2.96** | **$754.00** |
| **Sum Total Single Billed Duplicate Entries** | | **20.06** | | **$6,078.00** | | | | | | |
| **Defendants' Reductions Duplicatice Entries** | | | | | | | **20.20** | **$6,089.50** | | |
| **Effective Total Post-Reductions Duplicate Entries** | | | | | | | **3.10** | **$905.50** | **2.82** | **$742.50** |
| **Defs' Exs. Listed Sum Totals** | | | | | | | | | **187.065** | **$68,257.72** |
| **Defs. Ex. 1 Listed Fee Totals** | | | | | | | | | **67.345** | **$19,856.25** |
| **Defs.' Ex. 2 Listed Fee Totals** | | | | | | | | | **19.23** | **$7,447.50** |
| **Defs.' Ex. 3 Listed Fee Totals** | | | | | | | | | **93.44** | **$24,133.50** |
| **Defs.' Ex. 3 Listed Costs Totals** | | | | | | | | | | **$13,854.85** |
| **Defs.' Ex. 4 Listed Fee Totals** | | | | | | | | | **7.05** | **$2,922.50** |
| **Defs.' Ex. 4 Listed Costs Totals** | | | | | | | | | | **$43.12** |

///

///

///

///

PAGE 20 – OPINION AND ORDER

Given these facts, the Court grants Plaintiffs' counsel's petition with respect to the $6,368.50 in entries to which Defendants do not object but accounted for in their proposed total award.[8]

### c.    Richardson's Proposed Reductions

As discussed above, Richardson reviewed and offered opinions regarding Plaintiffs' counsel's itemization and proposed reductions based on billing entries that she determined were impermissibly vague and/or excessive. (*See* Richardson Decl. ¶¶ 14-19; *see also* Pls.' Reply at 5, stating that Plaintiffs sought Richardson's assistance given the "large difference" in the parties' proposed fee and cost awards). Richardson also filed corresponding exhibits addressing her proposed reductions and the relevant billing entries. (Richardson Decl. Exs. 1-2.) The sum of Richardson's exhibits' totals is $10,264.00. (*See id.*, listing Richardson's primary and/or secondary basis for reduction and exhibit totals of $6,195.50 and $4,068.50). Plaintiffs' counsel treats this sum of $10,264.00 as the total reduction that Richardson proposes, which would in turn reduce Plaintiffs' counsel's requested fee and cost award to $66,513.22. (*See* Pls.' Reply at 5, explaining that Richardson's proposed reduction produces a total fee and cost award of "$66,513.22").

### d.    Plaintiffs' Counsel's Stipulation

Plaintiffs' counsel filed Richardson's declaration in support of their reply brief, in which they "accept[ed]" Richardson's "assessment and recommended haircut" of $10,264.00. (Pls.'

---

[8] It is undisputed that Plaintiffs' counsel complied with the Court's December 10, 2024 Order and thus conferred with and provided a copy of their complete itemization to Defendants' counsel. Considering these facts and the Court's summary of Defendants' proposed award and objections, Plaintiffs' counsel's failure to attach the itemization as an exhibit is a moot issue because the record includes all of the entries necessary to the Court's lodestar analysis and disposition.

Reply at 5.) Consequently, the Court must account for Plaintiffs' counsel's stipulation before evaluating the number of hours reasonably expended and objections that Defendants raised.

The Court's review of the record exhibits demonstrates that several preliminary adjustments are necessary. First, all but one of the paralegal entries in Richardson's exhibits are based on an hourly rate of $100.00, not $150.00. (Richardson Decl. Exs. 1-2.) Richardson's use of this $100.00 hourly rate appears inadvertent, as neither Richardson nor the parties dispute the reasonableness of Plaintiffs' counsel's paralegals' hourly rates of $150.00. (*See id.* ¶¶ 1-19, reflecting as much; *cf.* Pls.' Pet. at 5 & Defs.' Resp. Exs. 1-4, relying on the $150.00 paralegal rate).

Second, Richardson's exhibits only account for 0.5 of the 0.75 hours that Scannell billed on June 18, 2024. (*See* Richardson Decl. Ex. 1 at 1, billing 0.5 hours and $225.00 for having a "[c]onversation" with a "[n]ew [l]awyer"; *cf.* Defs.' Ex. 4 at 1, billing 0.75 hours and $337.50 for the same).

Third, Richardson's exhibits' totals are based on each entry's billable total, but her notes suggest that she recommended only a partial reduction with respect to two of her remaining exhibit entries. (*See* Richardson Decl. Ex. 2 at 1, addressing Scannell's entries dated May 28 and May 29, 2024, and observing that 0.5 out of 1.5 and 1.0 out of 3.53 hours were "presumably administrative"; *see also id.*, demonstrating that Scannell's May 28 and May 29 entries also included "(1h)" and "(2.5h)" for drafting work on the motion to compel). Richardson's exhibits also include three duplicates because she found that the entries were both vague and excessive. (*See id.* Exs. 1-2, showing that each exhibit lists separate July 16, 2024 entries of 0.34 hours and $153.00 in fees based on Scannell's discovery and expert witness work, and a June 1, 2024 entry

for Gazda's 3.49 hours of discovery analysis, which resulted in an adjusted paralegal fee of $523.50).

Despite Richardson's notations and inclusion of $829.50 in duplicate billing entries (i.e., the sum of $153.00, $153.00, and $523.50) and entries related to Plaintiffs' motion to compel and impose sanctions, Plaintiffs' counsel simply stipulated to a reduction based on Richardson's exhibits' original sum total of $10,264.00. (*See* Pls.' Reply at 5, accepting Richardson's initial "assessment and recommended haircut," which would produce a total award of "$66,513.22" or $10,264.00 less than the award that Plaintiffs initially requested; Pls.' Pet. at 2, seeking "$76,777.22"). Nevertheless, the Court accounts for Richardson's duplicate entries and Scannell's 3.5 hours drafting the motion to compel and impose sanctions, the latter of which Defendants agree is recoverable. (*See* Defs.' Resp. at 2-5, 8, seeking an Exhibit 1 award of $4,750.00 for work on this motion; *id.* Ex. 1 at 1 & Ex. 3 at 2, reflecting that Defendants used "[b]old text" to identify their partial objections to entries that in their view were not "caused by" their violation of the Court's December 15, 2023 Order and that they omitted the relevant parts of these entries).

The following table reflects the necessary adjustments to Plaintiffs' counsel's paralegals' hourly rates and corresponding billed totals and Scannell's underbilling of 0.25 hours multiplied by Scannell's hourly rate of $450.00. It also excludes Richardson's duplicates and $1,440.00 in nonduplicate entries, which Plaintiffs' counsel accepted as reductions and the Court addressed:

| Date | User | Hours | Rate | Billable | Activity Category | Plaintiffs' Counsel's Description | Position | Vague | Excessive | Richardson's Notes |
|------|------|-------|------|----------|-------------------|-----------------------------------|----------|-------|-----------|--------------------|
| 2/12/24 | Terry Scannell | 0.5 | 450 | $225.00 | Conferral | Emails to Jeanne Sinnott on case conferral | Attorney | X | | More detail needed. |
| 2/12/24 | Terry Scannell | 0.67 | 450 | $301.50 | Email Compose or Read | Emails to & from Jeanne Sinnott and Court | Attorney | X | | More detail needed. |
| 2/26/24 | Terry Scannell | 0.6 | 450 | $270.00 | Conferral | Conferral on discovery via email | Attorney | X | | More detail needed. |

| Date | Name | Hrs | Rate | Amount | Category | Description | Role | | | Notes |
|---|---|---|---|---|---|---|---|---|---|---|
| 2/27/24 | Terry Scannell | 0.5 | 450 | $225.00 | Conferral | Conferral on discovery | Attorney | X | | More detail needed. |
| 5/22/24 | Zoe Kaidariades | 1.2 | 150 | $180.00 | Draft Motion | 3rd Discovery MOET | Clerk | | X | |
| 5/28/24 | Steve Gazda | 0.3 | 150 | $45.00 | Draft Subpoenas | ICCU b based on Beckerman "suggestions" | Paralegal | X | | More detail needed. |
| 5/28/24 | Terry Scannell | 1.5 | 450 | $675.00 | Draft Motion | Draft the Motion to compel (1h) and work on the deposition schedule. (.5h) | Attorney | | X | Scheduling (0.5) is presumably administrative. |
| 5/29/24 | Steve Gazda | 1.26 | 150 | $189.00 | Draft Subpoenas | v8 of ICCU subpoena and notice | Paralegal | X | | More detail needed. |
| 5/29/24 | Terry Scannell | 3.53 | 450 | $1,588.50 | Draft Motion | Draft the Motion to compel (2.5h) and work on the deposition schedule.(1.0h) | Attorney | | X | Scheduling (1.0) is presumably administrative. |
| 5/30/24 | Chris Hayes | 0.6 | 350 | $210.00 | Consider Strategic Options for Case | Strategy discussion w/ TS & SS | Attorney | X | | More detail needed. |
| 6/1/24 | Steve Gazda | 3.49 | 150 | $523.50 | Discovery Analysis | Analyze statements ISO TS Motion to Compel and Motion to Vacate, deposition prep | Paralegal | X | X | Appears excessive absent more detail. |
| 6/3/24 | Zoe Kaidariades | 0.2 | 150 | $30.00 | Email Compose or Read | sending chris an email with the motion to compel with exhibits | Clerk | X | | As written, appears administrative. |
| 6/3/24 | Zoe Kaidariades | 0.8 | 150 | $120.00 | Draft Motion | reading terry's motion to compel | Clerk | | X | |
| 6/3/24 | Zoe Kaidariades | 5 | 150 | $750.00 | Draft Motion | editing terry's motion to compel | Clerk | | X | |
| 6/4/24 | Chris Hayes | 0.2 | 350 | $70.00 | Research | Research on ICCU policies | Attorney | X | | More detail needed. |
| 6/4/24 | Zoe Kaidariades | 0.7 | 150 | $105.00 | Deposition Preparation | veritext tech support getting exhibit share set up | Clerk | | X | Administrative. |
| 6/5/24 | Zoe Kaidariades | 3.3 | 150 | $495.00 | Deposition Support - Zoom | depo of document custodian | Clerk | X | | More detail needed. |
| 6/10/24 | Zoe Kaidariades | 0.3 | 150 | $45.00 | Calendaring & Scheduling | updating dates on default for other side to get new attorney | Clerk | | X | Administrative. |
| 6/18/24 | Terry Scannell | 0.75 | 450 | $337.50 | | Conversation with New Lawyer | Attorney | X | | More detail needed. |
| 6/18/24 | Chris Hayes | 0.7 | 350 | $245.00 | Communication | Call (0.5); Email (0.2) w/ new OC re: matter | Attorney | X | | More detail needed. |
| 7/16/24 | Terry Scannell | 0.34 | 450 | $153.00 | Discovery | Get more information on the Oregon addresses we have. | Attorney | X | X | As phrased, appears administrative. |
| 7/16/24 | Terry Scannell | 0.34 | 450 | $153.00 | Expert Witness | Make sure information from the bank accounts gets to Tiffany Couch for analysis. | Attorney | X | X | As phrased, appears administrative. |
| 8/2/24 | Terry Scannell | 1.33 | 450 | $598.50 | Email Compose or Read | Subject: RE: Balcom Subpoena | Attorney | X | | Need more detail. |
| 8/14/24 | Terry Scannell | 2.75 | 450 | $1,237.50 | Expert Witness | Work with the expert witness. Write to opposing counsel and propose a solution on the PI. Pull documents on Lending International. | Attorney | X | | More detail needed. |

///

PAGE 24 – OPINION AND ORDER

| 8/14/24 | Terry Scannell | 0.33 | 450 | $148.50 | Email Compose or Read | Subject: RE: ATTORNEY WORK PRODUCT: Balcom v. Peterson | Attorney | X | | More detail needed. |
|---------|----------------|------|-----|---------|-----------------------|---------------------------------------------------------|----------|---|---|---------------------|
| 8/14/24 | Terry Scannell | 0.33 | 450 | $148.50 | Email Compose or Read | Subject: RE: ATTORNEY WORK PRODUCT: Balcom v. Peterson emails from and to Mary B | Attorney | X | | More detail needed. |
| 8/21/24 | Steve Gazda | 1.09 | 150 | $163.50 | Draft Motion | v6 of SUPPLEMENTAL BRIEFING ON MOTIONS TO COMPEL AND FOR SANCTIONS ECF No. 90 | Paralegal | X | | More detail needed. |
| 8/21/24 | Steve Gazda | 0.86 | 150 | $129.00 | Draft Motion | v3 of SUPPLEMENTAL BRIEFING ON MOTIONS TO COMPEL AND FOR SANCTIONS ECF No. 94 | Paralegal | X | | More detail needed. |
| **Total** | | **33.47** | | **$9,361.50** | | | | | | |

As reflected in this table, Richardson's outstanding billables produce an adjusted sum total of $9,361.50. This adjusted total includes the portions of Scannell's May 28 and May 29, 2024 entries related to his work drafting Plaintiffs' motion to compel and impose sanctions, which Defendants previously agreed is compensable work and equates to $1,575.00 in attorney's fees (i.e., Scannell's $450.00 hourly rate multiplied by 3.5 hours). The Court excludes Scannell's $1,575.00 in fees from the adjusted total and addresses these fees in conjunction with its analysis under Defendants' Exhibit 1. The Court accepts Plaintiffs' counsel's stipulation in all other respects. (*See* Pls.' Reply at 5, accepting Richardson's "assessment and recommended haircut").

For these reasons, the Court denies Plaintiffs' counsels' petition to the extent that they seek the outstanding balance of $7,786.50 under Richardson's remaining billing entries, all of which Defendants included in their exhibits.[9] (*See* Defs.' Ex. 1 at 1-2; *id.* Ex. 2 at 1; *id.* Ex. 3 at 1-4, 6; *id.* Ex. 4 at 1, covering the twenty-eight entries depicted above and reflecting that Exhibit

---

[9] The Court denies as moot Defendants' objections to the extent that they overlap with the $7,786.50 in entries that Plaintiffs' counsel accepted as part of Richardson's proposed reductions.

3 also include duplicates of Scannell's May 28 and May 29 entries and Gazda's June 1 entry in Exhibit 1).

### 2.    Remaining Disputes

The Court addresses the parties' remaining fee and cost disputes and relevant exhibit in turn below.

### a.    Defendants' Exhibit 1

The Court's table below uses a strikethrough font to identify entries that are now moot and therefore excluded from Exhibit 1's updated sum total, and includes the hours and billables attributable only to Scannell's drafting work on May 28 and May 29, 2024, which the Court declined to treat as accepted reductions. Furthermore, the Court's table omits (1) Defendants' notations/partial objections to the excluded portions of Scannell's May 28 and May 29, 2024 entries because the Court previously accounted for these reductions, and (2) Defendants' columns on the hours and fees subtracted and resulting totals because as explained above, they are inconsistent with Defendants' proposed total award and arguments on which it depends:

| Date | User | Hours | Rate | Billable | Plaintiffs' Counsel's Description | Defendants' Notations |
|---|---|---|---|---|---|---|
| 5/21/24 | Zoe Kaidariades | 1.8 | 150 | $270.00 | getting the task assigned, getting up to speed and oriented as to why we are drafting a motion to compel, developing a plan of action with tammi and terry | |
| 5/21/24 | Zoe Kaidariades | 1 | 150 | $150.00 | compose email to opposing counsel re motion to compel, **deposition dates and MOET** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/22/24 | Zoe Kaidariades | 1.5 | 150 | $225.00 | working on draft motion to compel | |
| 5/22/24 | Zoe Kaidariades | 0.4 | 150 | $60.00 | writing Terry's declaration and getting his approval | |
| 5/22/24 | Zoe Kaidariades | 1.8 | 150 | $270.00 | working on motion to compel | |
| 5/23/24 | Zoe Kaidariades | 1.3 | 150 | $195.00 | working on motion to compel for discovry docs | |
| 5/23/24 | Zoe Kaidariades | 1.3 | 150 | $195.00 | reading through and taking notes on the conference call from 2.21 with judge beckerman on discovery issues | |

///

///

| Date | Name | Hrs | Rate | Amount | Description | Notes |
|---|---|---|---|---|---|---|
| 5/23/24 | Terry Scannell | 1.67 | 450 | $751.50 | Look at the discovery to date in the case and start to consider how to proceed with Motion to Compel. | |
| 5/24/24 | Steve Gazda | 0.8 | 150 | $120.00 | Research facts Re: stated Sinnott production vs reality ISO MtC | |
| 5/27/24 | Terry Scannell | 2.6 | 450 | $1,170.00 | Draft Motion to Compel | |
| 5/27/24 | Terry Scannell | 1.75 | 450 | $787.50 | Work with team to get all the facts and continue to write the Motion. | |
| 5/28/24 | Steve Gazda | 2.45 | 150 | $367.50 | Analyzed discovery vs Sinnott conferral recap email ISO TS Motion to Compel | |
| 5/28/24 | Terry Scannell | 2.39 | 450 | $1,075.50 | Work with team to get all the facts and continue to write the Motion. | |
| 5/28/24 | Zoe Kaidariades | 0.7 | 150 | $105.00 | 2nd meeting with Terry after we spent time doing work on analysis of discovery for the motion to compel. | |
| 5/28/24 | Terry Scannell | 1 | 450 | $450.00 | Draft the Motion to compel (1h) | |
| 5/29/24 | Terry Scannell | 2.5 | 450 | $1,125.00 | Draft the Motion to compel (2.5h) | |
| 5/31/24 | Steve Gazda | 1.92 | 150 | $288.00 | Analyzed emails and bank statements ISO **Motion to Vacate**, Motion to Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/31/24 | Zoe Kaidariades | 6.3 | 150 | $945.00 | helping terry with the motion to compel by organizing all of the evidence of commingling (2h) and referencing the appropriate documents, dates, times (2h) and getting the supporting documents all organized in one place (2.3h) | |
| 6/1/24 | Terry Scannell | 4.9 | 450 | $2,205.00 | Draft Motion to Compel and for Sanctions(.8h). Draft LR 7-1 (.8h), Draft motion section and check FRCP(.7h), Write legal standard(.6h) write introduction (2h) | |
| ~~6/1/24~~ | ~~Steve Gazda~~ | ~~3.49~~ | ~~150~~ | ~~$523.50~~ | ~~**Analyze statements ISO TS Motion to Compel and Motion to Vacate (2h), deposition prep (1.49h)**~~ | ~~**Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."**~~ |
| 6/2/24 | Terry Scannell | 4.53 | 450 | $2,038.50 | Draft Motion to Compel and for Sanctions Legal Analysis (3.56) for the portion on the facts and examples and to make other edits. (.75) on the legal standard. | |
| ~~6/3/24~~ | ~~Zoe Kaidariades~~ | ~~0.8~~ | ~~150~~ | ~~$120.00~~ | ~~**reading terry's motion to compel**~~ | |
| ~~6/3/24~~ | ~~Zoe Kaidariades~~ | ~~5~~ | ~~150~~ | ~~$750.00~~ | ~~**editing terry's motion to compel**~~ | |
| 6/3/24 | Zoe Kaidariades | 1.8 | 150 | $270.00 | motion to compel - gathering exhibits and filling in gaps for citations and references to previous docs | |
| ~~6/3/24~~ | ~~Zoe Kaidariades~~ | ~~0.2~~ | ~~150~~ | ~~$30.00~~ | ~~**sending chris an email with the motion to compel with exhibits**~~ | |
| 6/3/24 | Chris Hayes | 0.4 | 350 | $140.00 | Review Mot. Compel | |
| 6/5/24 | Chris Hayes | 3.1 | 350 | $1,085.00 | Edit Mot. Compel, **Settlement ltr. to OC (2.6; 0.5)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/7/24 | Chris Hayes | 4.7 | 350 | $1,645.00 | Draft & Edit Mot. Compl (1.2; 1.2); **Mot. Vacate (0.6; 0.7)**; Finalize Mots. **(1.0)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/9/24 | Terry Scannell | 2.17 | 450 | $976.50 | Review final draft of Motion to Compel and for Sanctions. | |
| 6/10/24 | Terry Scannell | 3.975 | 450 | $1,788.75 | Continue to make final changes on the Motions to compel and for sanctions.(1.8750) Continue to work on legal analysis and argument section.(2.1h) | |
| 6/10/24 | Steve Gazda | 2.12 | 150 | $318.00 | Edit SG declaration ISO Motion to Compel, fact checked claims in both **Motion to Vacate** and Motion to Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." |

| 6/10/24 | Tammi Broskoski | 1.74 | 150 | $261.00 | Finalizing Motion to Compel, Scannell & Gazda Declarations, & Exhibits | |
| 6/10/24 | Tammi Broskoski | 0.82 | 150 | $123.00 | Electronic filing of Motion to Compel & Sanctions, **Motion to Vacate Protective Order, Motion to Freeze Assets, Declarations, & Accompanying Exhibits** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/25/24 | Chris Hayes | 0.5 | 350 | $175.00 | Review filings by OC in Resp. to **Mot. to Vacate PO** and Compel | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| **Total** | | | | **$20,118.75** | | |

Defendants advance three justifications for the remaining $15,368.75 in across-the-board reductions that they seek (i.e., Exhibit 1's updated total of $20,188.75 minus the $4,750.00 award that Defendants propose for all billing entries listed under Exhibit 1 (Defs.' Resp. at 5 n.1, 8)). Defendants' three justifications are: (1) Plaintiffs' counsel fails adequately to "explain how an [eleven]-page motion [to compel and impose sanctions] can necessitate such an excessive number of hours by both staff (over [thirty-five] hours) and attorneys (over [thirty-five] hours)," (2) Plaintiffs' motion "did not hinge on a legally complex issue," and (3) Plaintiffs' counsel's motion "focuse[d] almost entirely on [an unsuccessful] request for terminating sanctions," and prevailed on "only one of the four forms of relief requested[.]"(Defs.' Resp. at 3-5; *id.* Ex. 1 at 1-6.)

A court must provide adequate documentation of its reasons for imposing a significant, across-the-board reduction in hours. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406-07 (9th Cir. 1990) ("The plaintiffs had requested, and supported in their documentation, fees for 3,656.40 hours. Without an indication from the district court of how it arrived at 1,500 hours, we find ourselves unable to review the district court's determination of the number of hours reasonably expended on the litigation. The number of hours was significantly reduced, with inadequate documentation of the reasons for the wholesale reductions in hours."). In the Court's view, Defendants' justifications do not support an additional $15,368.75 in reductions here.

///

PAGE 28 – OPINION AND ORDER

"In *Hensley*, the [Supreme] Court acknowledged that plaintiffs may often raise a variety of different claims and theories and may achieve success based on only a subset of them, and the [Supreme] Court set down certain general guidelines governing such situations." *Nerio Mejia v. O'Malley*, 120 F.4th 1360, 1366 (9th Cir. 2024) (citing *Hensley*, 461 U.S. at 434-35). The Supreme Court's general guidelines turn on the facts and legal grounds and theories upon which a party relies:

> In some cases, which the [Supreme] Court said may be "unlikely to arise with great frequency," the "plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories" and that should, for fee-shifting purposes, "be treated as if they had been raised in separate lawsuits." [*Hensley*, 461 U.S. at 434-35.] In such a case, if the plaintiff succeeds on one such claim and fails on an "unrelated claim[]," the [Supreme] Court stated that, as a general matter, "no fee may be awarded for services on the unsuccessful claim." *Id.* at 435. By contrast, in a case in which "the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories," the lawsuit cannot fairly "be viewed as a series of discrete claims," and in such cases "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* "Where a plaintiff has obtained excellent results," the [Supreme] Court explained, the "attorney should recover a fully compensatory fee," which will normally "encompass all hours reasonably expended on the litigation." *Id.* The [Supreme] Court underscored that, in such cases, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id.*

*Nerio Mejia*, 120 F.4th at 1366-67.

In an en banc decision, the Ninth Circuit "construed this discussion in *Hensley* as establishing a 'two-pronged approach for determining the amount of fees to be awarded when a plaintiff prevails on only some of his claims for relief or achieves limited success.'" *Id.* at 1367 (quoting *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019) (en banc)). "First, [courts] ask, 'did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?'" *Ibrahim*, 912 F.3d at 1172 (quoting *Hensley*, 461 U.S. at 434).

This prong of the "inquiry rests on whether the 'related claims involve a common core of facts *or* are based on related legal theories,' . . . with 'the *focus* . . . on whether the claims arose out of a common course of conduct[.]'" *Id.* (quoting *Webb v. Sloan*, 330 F.3d 1158, 1168-69 (9th Cir. 2003)).

"Second, [courts] ask whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *Id.* (quoting *Hensley*, 461 U.S. at 434). If a court finds that "the prevailing party achieved 'excellent results,' it may permit a full fee award—that is, the entirety of those hours reasonably expended on both the prevailing and unsuccessful but related claims." *Id.* (first quoting *Hensley*, 461 U.S. at 435; and then citing *Schwarz v. Sec'y of Health & Hum. Servs.*, 73 F.3d 895, 900 (9th Cir. 1995)). This aligns with "*Hensley*'s instruction that, when a litigant has in good faith raised alternative legal grounds for a desired outcome, [a] court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Nerio Mejia*, 120 F.4th at 1367 (simplified) (quoting *Hensley*, 461 U.S. at 435) (reversing a "legally flawed" decision that was "directly contrary to *Hensley*'s instruction").

Under *Ibrahim*'s first step, the Court finds that the relief Plaintiffs sought in their motion to compel and impose sanctions was based on related legal theories and alternatives, involved the same core facts, and arose out of a common course of conduct. *Cf. Nerio Mejia*, 120 F.4th at 1367 ("Under *Ibrahim*'s first step, Nerio Mejia did not raise multiple 'unrelated' claims; rather, she raised a single claim for relief that was supported by a variety of alternative theories."). Defendants do not present arguments to the contrary and instead focus on the level of success achieved.

///

Defendants argue that Plaintiffs achieved only limited success as a result of their motion to compel and impose sanctions. (Defs.' Resp. at 4.) In support of this argument, Defendants emphasize that Plaintiffs' motion "focuse[d] almost entirely on Plaintiffs' request for terminating sanctions, which the Court denied," and that the Court granted Plaintiffs' request for a fee and cost award but "in addition to [denying] terminating sanctions, the Court also denied Plaintiffs' request to strike Defendants' answer, and for a blanket order compelling Defendants to respond to all discovery requests [since August 2023.]" (*Id.*) Defendants in turn argue that "Plaintiffs were successful on only one of the four forms of relief requested[.]" (*Id.*) The Court finds Defendants' arguments unpersuasive.

Contrary to Defendants' arguments, Plaintiffs' request to strike Defendants' answer was "effectively [a] 'terminating' sanction[] that would [have] resolve[d] Plaintiffs' . . . claims on the merits." *Balcom*, 2024 WL 5058740, at *3. In other words, this was part of a form of relief that Defendants identify, not an additional form of relief that dilutes the results that Plaintiffs achieved.

Significantly, Plaintiffs' motion to compel and impose sanction was devoted largely to the facts and procedural history regarding April Peterson's "serious and concerning discovery violation," which served as the predicate for each of Plaintiffs' requests for relief. *See generally Balcom*, 2024 WL 5058740, at *3 (noting that the Court had already voiced its "concerns about April Peterson's alteration of a bank statement she produced in discovery, and [how] she was less than forthright about the altered records at her deposition," and "agree[d] with Plaintiffs that April Peterson's alteration of a discovery record [was] a serious and concerning discovery violation"); (*see also* Pls.' Mot. Compel Prod. Docs. & Impose Sanctions ("Pls.' Mot. Compel") at 2-9, ECF No. 90, describing the facts and procedural history and citing records and filings in

support). Under these circumstances, Plaintiffs appropriately presented alternative requests for relief because such alternatives are relevant to a district court's analysis and consideration of any terminating sanctions. (*See* Pls.' Mot. Compel at 2-4, 10, requesting an "alternative" finding and citing case law regarding terminating sanctions and a court's potential need to consider lesser "alternatives"); *see also Balcom*, 2024 WL 5058740, at *2 (describing factors that courts typically consider before imposing terminating sanctions, including the availability of less drastic sanctions).

Also significant is that Defendants do not dispute that Plaintiffs had a good faith basis for raising alternative legal grounds in support of their desired outcome. "[W]hen a litigant has 'in good faith . . . raise[d] alternative legal grounds for a desired outcome, . . . [a] court's rejection of . . . certain grounds is not a sufficient reason for reducing a fee[.]" *Nerio Mejia*, 120 F.4th at 1367 (quoting *Hensley*, 461 U.S. at 435). Accordingly, the Court finds that Plaintiffs' reliance on alternative legal grounds is not a sufficient reason for reducing the fees listed under Defendants' Exhibit 1.

Finally, Defendants argue that a reduction is warranted because Plaintiffs' motion was only eleven pages long, should not have resulted in an "excessive" number of hours, and "did not hinge on a legally complex issue[.]" (Defs.' Resp. at 3-4.) Defendants were unable to account for Plaintiffs' counsel's subsequent acceptance of Richardson's proposed reductions, which includes a portion of Exhibit 1's hours. Defendants also failed to account for or address the additional sixty-four pages of exhibits that Plaintiffs' counsel compiled, reviewed, summarized, and attached to their motion or the contents of these exhibits, which demonstrate that Plaintiffs' counsel needed to retain an expert in the field of forensic document examinations to confirm and attest to what occurred here. (*See* Pls.' Mot. Compel Ex. 1 at 1-15, describing the background of

Plaintiffs' forensic document examiner, Mark Songer ("Songer"), and the analysis that Songer conducted; *see also* Richardson Decl. ¶¶ 14, 19, addressing how "much work is often required to put together a complex discovery motion," and in the present situation, it was "reasonable for Plaintiffs' counsel to expend much more time preparing the [m]otion to [c]ompel and [impose] [s]anctions and related documents"; Scannell Decl. ¶ 6, discussing the complexity and challenges "in this situation" involving a "number of banks and companies"). All of this was relevant to the non-trivial inquiry of whether and "when a party has engaged deliberately in deceptive practices that undermine the integrity of [a] judicial proceeding[.]" *Balcom*, 2024 WL 5058740, at *2 (simplified).

From the Court's perspective, Plaintiffs' counsel achieved a level of success justifying a fee award reflecting the entirety of the hours that remain in dispute and Plaintiffs' counsel "reasonably expended" in seeking to rectify and sanction April Peterson for committing a serious and concerning discovery violation and failing to comply with the Court's Order. *See Nerio Mejia*, 120 F.4th at 1367 ("Under step two of *Ibrahim*, Nerio Mejia achieved 'a level of success' justifying an award reflecting 'the entirety' of the hours her counsel 'reasonably expended' in litigating her claim." (quoting *Ibrahim*, 912 F.3d at 1172)); *see also id.* (failing to obtain a "rare" form of relief did not "materially detract from [a party's] success in achieving her overall litigation goal").

For these reasons, the Court largely declines to reduce Plaintiffs' counsel's fees as Defendants request in Exhibit 1. The Court, however, applies reductions of $175.00 and $455.00 (0.5 and 1.3 hours multiplied by an hourly rate of $350.00) and $87.50 (fifty percent of $175.00) to Hayes' June 5, June 7, and June 25 entries, and fifty percent reductions to Kaidariades' May 21 entry ($75.00 out of the $150.00 billed), Gazda's May 31 and June 10 entries ($144.00 and

$159.00 out of the $288.00 and $318.00 billed), and Broskoski's June 10 entry ($61.50 out of the $123.00 billed), because the identified work was not "caused by" Defendants' discovery violation, as explained further below. Accordingly, the Court applies a total reduction of $1,157.00 and awards Plaintiffs' counsel $18,961.75 of Exhibit 1's $20,188.75 in remaining fees. Roughly twenty-five percent of this award accounts for Defendants' proposed award of $4,750.00 pursuant to their exhibits.

### b.    Defendants' Exhibit 2

Defendants argue that Plaintiffs' counsel is not entitled to any of Exhibit 2's listed fee total of $7,447.50, all of which concern Plaintiffs' counsel's supplemental briefing regarding their motion to compel and impose sanctions. (Defs.' Resp. at 4-5; *id.* Ex. 2 at 1.) Defendants argue that Plaintiffs' counsel cannot demonstrate that the "excessive fees requested [and] related to . . . [the] supplemental brief are reasonable," emphasizing that it "focuse[d] entirely on [their] unsuccessful request for terminating sanctions, a request that was not granted by the Court." (*Id.* at 5.)

Plaintiffs' counsel accepted Richardson's $292.50 in proposed reductions in Defendants' Exhibit 2. (*See* Richardson Decl. Ex. 1 at 1, determining that Gazda's August 21, 2024 entries for 1.09 and 0.86 hours and $163.50 and $129.00 in adjusted paralegal fees were vague and lacked sufficient "detail," because they referred only to "v6" and "v3" of the supplemental brief; Pls.' Reply at 5, accepting this proposal). Thus, $7,155.00 in fees remain in dispute.

The Court declines further to reduce Plaintiffs' counsel fees listed in Exhibit 2. In an Order dated June 27, 2024, the Court explained that Plaintiffs were free to supplement their briefing on their motion to compel and impose sanctions "with any new information obtained in response to the Idaho Central Credit Union subpoenas that relate[d] to Defendants' alleged discovery violations, misrepresentations, and attempts to hide assets from discovery." *Balcom v.*

*Peterson*, No. 3:23-cv-00528-SB, 2024 WL 4524862, at \*2 (D. Or. June 27, 2024). The Court also observed that it would not rule on the issue of sanctions until "the documentary record [was] complete." *Id.*

In its December 10, 2024 Order, the Court observed that it responded to April Peterson's "discovery violation, in part, by vacating its protective order quashing Plaintiffs' subpoenas to Defendants' financial institution and opening the door to additional discovery of the Petersons' personal financial records." *Balcom*, 2024 WL 5058740, at \*3. Plaintiffs "served new subpoenas on Defendants' bank, which produced records relating to eleven of Defendants' bank accounts, and Plaintiffs ha[d] [a previously] retained . . . expert . . . review the financial records." *Id.* In addition to vacating its protective order and opening the door to additional discovery of the Petersons' records, the Court "allowed Plaintiffs to serve a subpoena for records on the Petersons' CPA." *Id.*

In addressing Plaintiffs' request for terminating sanctions, the Court explained that "expanding the scope of discovery to allow Plaintiffs to obtain copies of Defendants' financial records from third parties . . . largely addressed the harm Defendants' lack of transparency caused." *Id.* The Court also explained that "ordering Defendants to pay Plaintiffs' reasonable expenses resulting from Defendants' violation of the Court's discovery order . . . [was] an alternative sanction that should motivate Defendants to follow the rules to avoid any further sanctions." *Id.*

Defendants argue that the fees associated with Plaintiffs' supplemental brief are excessive and unreasonable given the limited success that Plaintiffs achieved in seeking terminating sanctions. (*See* Defs.' Resp. at 5, arguing that the supplemental brief "focuse[d] entirely" on the "unsuccessful request for terminating sanctions"; *id.* Ex. 2 at 1, objecting to the

fees listed under every entry because the Court denied Plaintiffs' "request for terminating sanctions"). The Court disagrees. The Court finds that its two-pronged approach and analysis under Exhibit 1 applies equally to the arguments that Defendants advance under Exhibit 2, and that Plaintiffs' supplemental briefing was "caused by" Defendants' violation of the Court's discovery order.

The Court incorporates its analysis and findings under each of the *Ibrahim* prongs by reference, and therefore grants Plaintiffs' counsel's petition for fees to the extent that it concerns the remaining $7,155.00 in fees listed under Exhibit 2 and related to Plaintiffs' counsel's supplemental brief. *See Nerio Mejia*, 120 F.4th at 1367 ("[W]hen a litigant has 'in good faith . . . raise[d] alternative legal grounds for a desired outcome, . . . [a] court's rejection of . . . certain grounds is not a sufficient reason for reducing a fee[.]" (quoting *Hensley*, 461 U.S. at 435)).

### c.    Defendants' Exhibit 3

Defendants divided Exhibit 3 into two parts: (1) the first six pages cover Plaintiffs' counsel's and paralegals' fee entries, and (2) the last page covers Plaintiffs' counsel's costs. (Defs.' Resp. Ex. 3 at 1-7.) The Court first addresses the costs that remain in dispute in Exhibit 3.

Neither Plaintiff's counsel's accepted reductions nor the Court's previous rulings address the $13,854.85 in costs listed in Exhibit 3. (*Compare id.* Ex. 3 at 7, *with id.* Exs. 1-2, *and* Richardson Decl. Exs. 1-2.) The largest portion of Exhibit 3's costs (or fees) is the $10,476.75 attributable to Plaintiffs' counsel's payments to Acuity Forensics. (*See* Defs.' Resp. Ex. 3 at 7, listing the June 28 and August 30, 2024 Acuity Forensics entries for $5,000.00 and $5,476.75). Acuity Forensics is "a forensic accounting firm that conducts financial review in analysis in cases involving allegations of financial fraud and mismanagement." (Decl. Tiffany Couch ("Couch Decl.") ¶ 2, ECF No. 130-4.) Tiffany Couch ("Couch"), a certified public accountant,

PAGE 36 – OPINION AND ORDER

founded and serves as the chief executive officer of Acuity Forensics. (*Id.*) Couch is certified in financial forensics and as a fraud examiner and has practiced for more than twenty-seven years and served as a financial fraud expert in over ninety cases nationwide. (*Id.* ¶ 3.) In April 2024, Plaintiffs' counsel retained Couch to "complete a forensic analysis of [the Petersons'] banking records . . . and some associated documents of their various [limited liability companies]." (*Id.* ¶ 4.)

Defendants argue that Couch's $10,476.75 in costs have "nothing to do with" and "were not caused by Defendants' violation" of the Court's discovery order. (Defs.' Resp. at 5-6) (simplified). Defendants emphasize that Plaintiffs' counsel did not retain Couch to "examine documents for evidence of alteration of records"; rather, Plaintiffs' counsel retained Couch to "search for evidence of commingling to support Plaintiffs' veil-piercing theory and [part of] Plaintiffs' unsuccessful motion for terminating sanctions." (*Id.* at 6-7, citing Pls.' Mot. Compel at 3-4.)

Plaintiffs' counsel responds by focusing on whether Couch's expenses are "related to," not necessarily "caused by," Defendants' violation of the Court's discovery order. (*See* Pls.' Reply at 2-3, arguing that Defendants erred in eliminating Exhibit 3's $37,988.35 in fees and costs as "'unrelated' to the violation"). In doing so, Plaintiffs' counsel relies on their paralegal's declaration that an Excel formula confirmed that Defendants' error amounts to $23,357.54 in unspecified fee and cost entries under Exhibit 3. (*Id.* at 3, citing Decl. Mallory Daniel Supp. Pls.' Reply ("Mallory Decl.") ¶¶ 2-5, ECF No. 160.) Plaintiffs' counsel also rely on a passage from the Court's December 10, 2024 Order, arguing that Defendants' proposed deductions "include the additional discovery tasks that the Court specifically ruled [were] directly related." (*Id.*, indirectly citing *Balcom*, 2024 WL 5058740, at *3, which concerned the additional discovery of

the Petersons' records, Plaintiffs' service of new subpoenas, and Couch's review of the financial records).

Plaintiffs' counsel fails adequately to address the relevant inquiry here—namely, whether Couch's costs were "caused by" Defendants' discovery violation. Plaintiffs first asserted a veil piercing theory in their amended complaint, which they filed on November 9, 2023. (*Compare* Compl. at 1, 10, 13, 15, 17, ECF No. 1, *with* Am. Compl. at 1, 11, 14, 16, 18, 20-21, ECF No. 33.) Plaintiffs' counsel retained Couch to perform veil piercing theory-related work in April 2024, approximately one month after they voluntarily amended their veil piercing theory and two months before they filed their motion to compel and impose sanctions. (*See* Couch Decl. ¶ 4, representing that Plaintiffs' counsel retained Couch to "complete a forensic analysis of [the Petersons'] banking records . . . and some associated documents of their various [limited liability companies]"; Second Am. Compl. ¶¶ 49, 55, 63, ECF No. 72, reflecting that on March 14, 2025, Plaintiffs amended their theory regarding "alter egos," "ignored corporate formalities," not keeping "finances . . . separate from [personal bank] accounts," and how "Foreclosure Help's corporate structure should be ignored"; Pls.' Mot. Compel at 2-3, presenting Plaintiffs' counsel's discoveries and request for sanctions on June 10, 2024); *see also Balcom v. Peterson*, No. 23-cv-00528-SB, 2024 WL 923533, at *1 n.2 (D. Or. Feb. 16, 2024) (noting that opposing counsel withdrew her motion to dismiss to the extent that Plaintiffs' counsel agreed to replead their veil piercing theory), *findings and recommendation adopted*, 2024 WL 916037, at *1 (D. Or. Mar. 4, 2024).

Unlike the fees listed in Exhibits 1 and 2, the Court is unable to conclude that Couch's work was "caused by" Defendants' discovery violation. The Court agrees that Couch's work was related and relevant to the Court's imposition of sanctions and that Defendants' discovery

violation caused Plaintiffs' counsel to file motion papers, which necessarily discussed Couch's work. Standing alone, however, Plaintiffs' counsel's veil piercing theory of liability necessitated Couch's review of all relevant records that Plaintiffs' counsel obtained in discovery. Further, although Plaintiffs' counsel may have obtained and asked Couch to review additional financial records following the Court's imposition of sanctions and expansion of discovery, these records were part of the Court's attempt to address the harm that Defendants' lack of transparency caused, and therefore part of the relief that Plaintiffs have already received because of Defendants' discovery violation (i.e., additional, probative evidence pertaining to Plaintiffs' veil piercing theory and relevant to Plaintiffs' ability to recoup any associated costs at a later stage in this litigation).

For these reasons, the Court concludes that Plaintiffs have failed to demonstrate that they are entitled to recover Couch's $10,476.75 in costs as a further sanction because of Defendants' discovery violation. Accordingly, the Court denies Plaintiffs' petition for fees and expenses on this ground.

The Court grants in part and denies in part Plaintiffs' petition with respect to Exhibit 3's $3,378.10 in remaining costs. Plaintiffs have not demonstrated that Defendants' discovery violation caused Plaintiffs' $631.40 in costs to obtain the December 15, 2023, January 30, 2024, and February 21, 2024 hearing transcripts. (*See* Defs.' Resp. Ex. 3 at 7, listing these costs of $385.40 and $246.00; *see also* Pls.' Reply at 2-3, 6-7 & Mallory Decl. ¶¶ 2-5, improperly focusing on whether these fees and costs are "unrelated" to, as opposed to "caused by," Defendants' violation and lacking specificity in many other respects). These transcripts primarily concern matters that were not "caused by" Defendants' discovery violation: (1) Defendants' motions for a protective order and to quash Plaintiffs' subpoenas for banking records (i.e., a

common motion under the circumstances and considering the theories upon which Plaintiffs rely) and dismiss Plaintiffs' request for punitive damages and Plaintiffs' motion to strike a reply that Defendants filed in support of a discovery motion, (2) Defendants' motion to dismiss or make more definite and certain and Plaintiffs' motion to appoint a guardian ad litem, and (3) previously contemplated follow-up on outstanding discovery issues. (*See* ECF Nos. 48, 58, 64, 69-70.)

For the same reasons, the Court denies Plaintiffs' counsel's request for $2,404.15 in costs for Plaintiffs' taking Foreclosure Help's Federal Rule of Civil Procedure 30(b)(6) deposition. (*See* Defs.' Resp. Ex. 3 at 7, listing these deposition-related costs of $1,654.15 and $750.00). The Court also denies Plaintiffs' counsel's request for $295.00 in costs (i.e., the sum of $85.00, $125.00, and $85.00) related to their recent service of Idaho Central Credit Union because Defendants' discovery violation did not cause those costs, as the Court further explains below. The Court does, however, grant Plaintiffs' counsel's request for $47.55 in mailing costs related to Songer's work, which Defendants agree is recoverable. (*Id.*; *see also* Defs.' Resp. at 8 n.5; Pls.' Reply at 7.) Thus, the Court awards Plaintiffs' counsel $47.55 in costs under Exhibit 3.

With respect to fees, the table below reflects that there are $19,950.50 in fees that remain in dispute:

| Date | User | Hours | Rate | Billable | Plaintiffs' Counsel's Description | Defendants' Notations |
|---|---|---|---|---|---|---|
| 12/15/23 | Terry Scannell | 4 | 450 | $1,800.00 | Prepare for the hearing read all the documents (1.5h), outline oral argument, travel to the courthouse, wait time (1h) Wait time Oral argument (1.5h) | Cannot be "caused by Defendants' violation of the Court's December 15, 2023, order" because it was the hearing itself. |
| 1/29/24 | Terry Scannell | 3 | 450 | $1,350.00 | Work on the issues of discovery in the case (2h) and prep for hearing tomorrow. Write an email to opposing counsel about the new expert report (1h) | Hearing regarding pleadings, not discovery. Entry not "caused by Defendants' violation of the Court's December 15, 20230, order." Expert is likely related to psych evaluation. |
| 1/30/24 | Terry Scannell | 0.17 | 450 | $76.50 | Start to review all the discovery in the case and the prior order of the Court. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 4/11/24 | Tammi Broskoski | 0.83 | 150 | $124.50 | Drafting Discovery Requests for Trusted Home Offer | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 4/30/24 | Terry Scannell | 1 | 450 | $450.00 | Review the Subpoena to New Corp. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |

| Date | Name | Hours | Rate | Amount | Description | Note |
|---|---|---|---|---|---|---|
| 4/30/24 | Steve Gazda | 0.58 | 150 | $87.00 | v1 or Second RFP to April Peterson | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 4/30/24 | Tammi Broskoski | 0.79 | 150 | $118.50 | Drafting Interrogatories and Finalizing Requests for Production to Trusted Home Offer LLC | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 4/30/24 | Terry Scannell | 2 | 450 | $900.00 | Review the interrogatories(1h) and other discovery requests(1h). | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/9/24 | Steve Gazda | 0.63 | 150 | $94.50 | v2 RFP to April Peterson/Better Planet, Inc. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/19/24 | Terry Scannell | 1.32 | 450 | $594.00 | Continue to research issue of how to properly object to the scope of a 30b6 deposition. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~5/21/24~~ | ~~Zoe Kaidariades~~ | ~~1~~ | ~~150~~ | ~~$150.00~~ | ~~compose email to opposing counsel re motion to compel, deposition dates and MOET~~ | **Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."** |
| 5/21/24 | Zoe Kaidariades | 0.3 | 150 | $45.00 | starting to draft MOET #3 for discovery deadlines | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~5/22/24~~ | ~~Zoe Kaidariades~~ | ~~1.2~~ | ~~150~~ | ~~$180.00~~ | ~~3rd Discovery MOET~~ | ~~Not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |
| 5/22/24 | Zoe Kaidariades | 0.4 | 150 | $60.00 | filing 3rd MOET for discovery deadline and declaration | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/23/24 | Steve Gazda | 0.96 | 150 | $144.00 | Created Discovery Binders for TS, processed Trusted Home production received 5/23/24 | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~5/23/24~~ | ~~Zoe Kaidariades~~ | ~~1.3~~ | ~~150~~ | ~~$195.00~~ | ~~reading through and taking notes on the conference call from 2.21 with judge beckerman on discovery issues~~ | ~~Not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |
| ~~5/28/24~~ | ~~Steve Gazda~~ | ~~0.3~~ | ~~150~~ | ~~$45.00~~ | ~~ICCU b based on Beckerman "suggestions"~~ | ~~Not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |
| ~~5/28/24~~ | ~~Terry Scannell~~ | ~~1.5~~ | ~~450~~ | ~~$675.00~~ | ~~Draft the Motion to compel (1h) and work on the deposition schedule. (.5h)~~ | **Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."** |
| ~~5/29/24~~ | ~~Steve Gazda~~ | ~~1.26~~ | ~~150~~ | ~~$189.00~~ | ~~v8 of ICCU subpoena and notice~~ | |
| ~~5/29/24~~ | ~~Terry Scannell~~ | ~~3.53~~ | ~~450~~ | ~~$1,588.50~~ | ~~Draft the Motion to compel (2.5h) and work on the deposition schedule.(1.0h)~~ | **Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."** |
| 5/29/24 | Zoe Kaidariades | 4.7 | 150 | $705.00 | motion to vacate protective order | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/30/24 | Steve Gazda | 1.49 | 150 | $223.50 | Analyzed production for ISO Motion to Vacate P.O. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/30/24 | Zoe Kaidariades | 2.8 | 150 | $420.00 | Draft motion to vacate | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/30/24 | Zoe Kaidariades | 0.6 | 150 | $90.00 | declarations for motion to vacate | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 5/30/24 | Tammi Broskoski | 1.41 | 150 | $211.50 | Editing & Proofing Motion to Vacate Protective Order | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~5/31/24~~ | ~~Steve Gazda~~ | ~~1.92~~ | ~~150~~ | ~~$288.00~~ | ~~Analyzed emails and bank statements ISO Motion to Vacate, Motion to Compel~~ | **Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."** |
| 5/31/24 | Chris Hayes | 0.5 | 350 | $175.00 | Review discovery discrepencies | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~6/1/24~~ | ~~Steve Gazda~~ | ~~3.49~~ | ~~150~~ | ~~$523.50~~ | ~~Analyze statements ISO TS Motion to Compel and Motion to Vacate (2h), deposition prep (1.49h)~~ | **Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."** |
| 6/4/24 | Zoe Kaidariades | 5.7 | 150 | $855.00 | getting all the exhibits ready for deposition along with the questions for terry to ask | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~6/4/24~~ | ~~Zoe Kaidariades~~ | ~~0.7~~ | ~~150~~ | ~~$105.00~~ | ~~veritext tech support getting exhibit share set up~~ | ~~Not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |
| ~~6/4/24~~ | ~~Chris Hayes~~ | ~~0.2~~ | ~~350~~ | ~~$70.00~~ | ~~Research on ICCU policies~~ | ~~Not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |
| ~~6/5/24~~ | ~~Zoe Kaidariades~~ | ~~3.3~~ | ~~150~~ | ~~$495.00~~ | ~~depo of document custodian~~ | ~~Not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |
| ~~6/5/24~~ | ~~Chris Hayes~~ | ~~3.1~~ | ~~350~~ | ~~$1,085.00~~ | ~~Edit Mot. Compel, Settlement ltr. to OC (2.6; 0.5)~~ | ~~Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |

///

PAGE 41 – OPINION AND ORDER

| Date | Name | Hours | Rate | Amount | Description | Note |
|---|---|---|---|---|---|---|
| 6/6/24 | Terry Scannell | 2.34 | 450 | $1,053.00 | Ms. Sinnott withdraws from case. Write and read emails with counsel for the Defendants(1h). Consider options and where to take the case now that opposing attorney will withdraw(1h). Communicate with client(.34h) | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/6/24 | Zoe Kaidariades | 0.3 | 150 | $45.00 | uploading exhibits to dropbox | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/6/24 | Chris Hayes | 0.7 | 350 | $245.00 | Review of Ct. Orders and strategy discussion | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/7/24 | Terry Scannell | 0.33 | 450 | $148.50 | Subject: Follow-up to my calls Email to tell them they need to get a lawyer and to settle | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~6/7/24~~ | ~~Chris Hayes~~ | ~~4.7~~ | ~~350~~ | ~~$1,645.00~~ | ~~**Draft & Edit Mot. Compl (1.2; 1.2); Mot. Vacate (0.6; 0.7); Finalize Mots. (1.0)**~~ | ~~**Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."**~~ |
| 6/10/24 | Tammi Broskoski | 0.66 | 150 | $99.00 | Finalizing Motion to Vacate Protective Order and Scannell Declaration, Creating Exhibit. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/10/24 | Tammi Broskoski | 0.55 | 150 | $82.50 | Finalizing Motion for Provisional Process (Freeze Assets) and Scannell Declaration | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~6/10/24~~ | ~~Tammi Broskoski~~ | ~~0.82~~ | ~~150~~ | ~~$123.00~~ | ~~**Electronic filing of Motion to Compel & Sanctions, Motion to Vacate Protective Order, Motion to Freeze Assets, Declarations, & Accompanying Exhibits**~~ | ~~**Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order."**~~ |
| ~~6/10/24~~ | ~~Zoe Kaidariades~~ | ~~0.3~~ | ~~150~~ | ~~$45.00~~ | ~~**updating dates on default for other side to get new attorney**~~ | ~~**Not "caused by Defendants' violation of the Court's December 15, 2023, order."**~~ |
| 6/10/24 | Chris Hayes | 3.3 | 350 | $1,155.00 | Edit Mots. Compel (1.3; 0.7); **Vacate (1.3); Freeze Assets (NC)** | Bold text not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/11/24 | Zoe Kaidariades | 3.2 | 150 | $480.00 | going through reports carefully (2h) and making a list of all the properties that the petersons own or used to own for Terry to have in the hearing Friday (1.2) | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/23/24 | Terry Scannell | 4.31 | 450 | $1,939.50 | Prepare for court hearing on Monday (6/24 11-12). Review all the new documents we have gotten which show them moving real estate assets.(2.3h) Outline oral argument. Also read and consider the late filing by Petrsons (2h) | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/23/24 | Terry Scannell | 1.67 | 450 | $751.50 | Prepare for and argue motion. (1h) Call client and give her update and check with team (.67h) Consensus was it is unclear what the judge will do. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/24/24 | Steve Gazda | 0.54 | 150 | $81.00 | Drafted Declaration for TS ISO Motion to Freeze Assets. Preparations for Motions Hearing | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/24/24 | Tammi Broskoski | 0.91 | 150 | $136.50 | Editing & Finalizing Zoe Declaration & Exhibits - Filing ZK, CH, & TS Declarations | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/24/24 | Zoe Kaidariades | 1.8 | 150 | $270.00 | drafting declaration for the preliminary injunction hearing | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/24/24 | Chris Hayes | 0.7 | 350 | $245.00 | Team mtg. post hearing to discuss hearing and strategy for case. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/26/24 | Tammi Broskoski | 0.51 | 150 | $76.50 | Drafting Letter to Judge Beckerman Requesting Informal Meeting to Discuss Discovery Issues (Deposition & Discovery Deadlines) | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/26/24 | Zoe Kaidariades | 2 | 150 | $300.00 | going through the deposition and finding all the times where April refused to answer in prep for drafting a motion to compel her answers | Not "caused by Defendants' violation of the Court's December 15, 2023, order." No motion to compel Mrs. Peterson's answers relating to the deposition was ever filed. |
| 6/27/24 | Tammi Broskoski | 0.25 | 150 | $37.50 | Editing Draft of Beckerman Letter with Terry's Edits. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/27/24 | Zoe Kaidariades | 1.7 | 150 | $255.00 | making a list of all the times april didn't answer in deposition with corresponding exhibits | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 6/27/24 | Zoe Kaidariades | 2.4 | 150 | $360.00 | motion to compel answers to deposition questions | Not "caused by Defendants' violation of the Court's December 15, 2023, order." No motion to compel Mrs. Peterson's answers relating to the deposition was ever filed. |

///

| Date | Name | | | | Description | Note |
|------|------|---|---|---|-------------|------|
| 6/28/24 | Terry Scannell | 3.75 | 450 | $1,687.50 | Work on the subpoenas to the Idaho credit union. Consider the ruling of the Court and try to make sure we comply with the Order. For that reason have broken the subpoenas into three sets. The first is a redo of the prior subpoena but adding THO to it. (2h) The Second is a very focused subpoena which is narrowly focused on the state of the 4804 account in since March 1, 2024 to now. That will tell us if April had emptied the account or closed it or tried to close it. (1h) The Third is a much broader scan and gets a lot of material opposing counsel will likely oppose it | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 7/2/24 | Steve Gazda | 0.75 | 150 | $112.50 | SDT to ICCU for all personal banking records of Petersons | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 7/10/24 | Zoe Kaidariades | 0.57 | 150 | $85.50 | conferral with Nick Henderson about motions to compel and protective order for depo and whether or not april will answer depo questions | Not "caused by Defendants' violation of the Court's December 15, 2023, order." No motion to compel Mrs. Peterson's answers relating to the deposition was ever filed. |
| 7/11/24 | Steve Gazda | 0.66 | 150 | $99.00 | Began analyzing the 1326 pages of production in response to ICCU subpoena | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~7/16/24~~ | ~~Terry Scannell~~ | ~~0.34~~ | ~~450~~ | ~~$153.00~~ | ~~Make sure information from the bank accounts gets to Tiffany Couch for analysis.~~ | ~~Not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |
| 7/16/24 | Steve Gazda | 1 | 150 | $150.00 | Prepared ICCU subpoena discovery for client file and to send to Acuity Forensics | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 7/17/24 | Steve Gazda | 1.33 | 150 | $199.50 | Prepared ICCU subpoena discovery for client file and to send to Acuity Forensics | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 7/17/24 | Steve Gazda | 1.53 | 150 | $229.50 | Prepared ICCU subpoena discovery for client file and to send to Acuity Forensics | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 7/18/24 | Steve Gazda | 0.51 | 150 | $76.50 | Prepared ICCU subpoena discovery for client file and to send to Acuity Forensics | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 8/8/24 | Chris Hayes | 0.8 | 350 | $280.00 | Discus MOET, strategy for case w/ TS and email OC | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 8/9/24 | Chris Hayes | 1.2 | 350 | $420.00 | Draft MOET re: Discovery, email w/ OC re: CPA Resp. and MOET, calls w/ TS re: above. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 8/12/24 | Chris Hayes | 0.5 | 350 | $175.00 | Conferral call w/ OC on Mot. Quash and CPA Subpoena | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| ~~8/14/24~~ | ~~Terry Scannell~~ | ~~2.75~~ | ~~450~~ | ~~$1,237.50~~ | ~~Work with the expert witness. Write to opposing counsel and propose a solution on the PI. Pull documents on Lending International.~~ | ~~Not "caused by Defendants' violation of the Court's December 15, 2023, order."~~ |
| 8/16/24 | Chris Hayes | 0.2 | 350 | $70.00 | Email OC re: MOETs for deadlines. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 1/10/25 | Mallory Daniel | 0.31 | 150 | $31.00 | Make edits to stipulated MOET. | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| 1/10/25 | Steve Gazda | 0.5 | 150 | $50.00 | Draft MOET on Order Deadlines | Not "caused by Defendants' violation of the Court's December 15, 2023, order." |
| **Disputed Total** | | | | **$19,950.50** | | |
| **Moot Entries** | | | | **$8,792.50** | | |
| **Total** | | | | **$28,743.00** | | |

This table demonstrates that $19.950.50 in fees remain in dispute under Exhibit 3. *Cf. supra* page 13 (deriving a total of $28,743.00 from Defendants' Exhibit 3's billable fees column). Plaintiffs' counsel fails adequately to explain why virtually all of these fees are reasonable and "caused by," not simply related to, Defendants' discovery violation. (*See* Pls.' Reply at 2-3, citing Mallory Decl. ¶¶ 2-5.) Standing alone, most of these entries are vague and

lack details from which the Court can (1) conclude that the fees are both reasonable and "caused by" Defendants' discovery violation, and (2) ensure that it is not awarding fees for unnecessary and/or duplicative work. *See Hood River Cnty. Sch. Dist. v. Student*, No. 3:20-cv-1690-SI, 2022 WL 1153986, at *3 (D. Or. Apr. 19, 2022) ("[O]ther courts, including the District of Oregon, [have] specifically caution[ed] against providing vague or otherwise inadequate descriptions of tasks because these practices hinder a court's ability to assess the reasonableness of the time expended.") (citation omitted); *Schultz v. Nw. Permanente P.C.*, No. 3:20-cv-00626-IM, 2022 WL 3909948, at *4 (D. Or. Aug. 31, 2022) (declining to award fees that potentially stemmed from "unnecessary and duplicative" work).

Additionally, several entries appear to pertain (in whole or part) to Plaintiffs' counsel's strategy discussions and generally required preparation and discovery work. Judges in this district have declined to award fees based on vague entries, including for "intra-office meetings." *See Schultz*, 2022 WL 3909948, at *4 (agreeing that the plaintiff was not entitled to "recover based on the time entries for intra-office meetings," explaining that considering the plaintiff's counsels' substantial experience and failure to provide a persuasive justification for such meetings, there was a substantial risk that they represented "unnecessary and duplicative" work, and thus striking billing "entries with no description or vague, generic descriptions (e.g., 'attention to filing'; 'prepare strategy')" (quoting *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007))).

The Court also notes that Plaintiffs' counsel's work on their motion to vacate the protective order was not caused by Defendants' discovery violation. Rather, the Court and parties contemplated this work and process, and at best, Defendants' violation delayed the inevitable:

On December 15, 2023, the Court . . . (1) quashed Plaintiffs' subpoenas to Idaho Central Credit Union without prejudice to renewing the subpoenas at a later date; (2) ordered Defendants to produce unredacted bank statements (from November 1, 2021 to present) from the Idaho Central Credit Union account(s) of Foreclosure Help by December 29, 2023; and (3) entered a temporary protective order with respect to any discovery of the Petersons' personal financial accounts pending Plaintiffs' review of the Foreclosure Help bank statements. (ECF No. 48.) The Court explained to the parties that it would allow discovery of the Petersons' personal financial accounts if Plaintiffs' review of the Foreclosure Help bank statements revealed evidence of commingling of business and personal funds.

Plaintiffs have now presented evidence demonstrating that Defendants failed to comply with the Court's December 15, 2023, order to produce the unredacted Idaho Central Credit Union bank statements, and instead produced redacted versions of the statements without disclosing that they had altered the documents prior to production. . . .

. . . .

Plaintiffs have also presented evidence supporting their allegations that the Petersons have commingled Foreclosure Help funds and the Petersons' own personal funds and financial interests. . . . In light of this evidence and for the reasons the Court discussed with the parties at prior discovery hearings, the Court now finds that discovery of the Petersons' personal financial records is relevant and proportional to the needs of this case.

*Balcom*, 2024 WL 4524862, at *1-2.

For all of these reasons, the Court denies Plaintiffs' petition for fees and expenses with respect to the remaining fees under Exhibit 3, subject to one exception: The Court grants Plaintiffs' counsel's petition with respect to Hayes' 2.0 hours editing Plaintiffs' counsel's motion to compel on June 10, 2024, which Defendants' counsel excluded from their objections under Exhibit 3. (*See* Defs.' Resp. Ex. 3 at 4, using bold to emphasize what parts were "caused by" Defendants' violation). Accordingly, the Court awards Plaintiffs' counsel $700.00 in fees under Exhibit 3, which represents Hayes' hourly rate of $350.00 multiplied 2.0 hours of excluded work.

///

### d.    Defendants' Exhibit 4

Finally, there are only $103.12 in billing entries that remain in dispute under Exhibit 4. (*See* Defs.' Ex. 4 at 1-2); *see also supra* pages 23-25 (covering all but two Kaidariades and two mailing entries). Kaidariades' two entries are based on "[t]eam chat[s]" regarding the "[B]alcom [case] strategy[.]" (*See* Defs.' Resp. Ex. 4 at 1, listing Kaidariades' entries for 0.2 hours and $30.00 in fees on June 24 and June 25, 2024). Exhibit 4's remaining two entries are for "[m]ailings" on June 7 and June 11, 2024. (*See id.* at 2, listing these "[m]ailing[]" costs of $12.28 and $30.84, respectively).

Plaintiffs fail adequately to address Defendants' objections to these entries in their reply. (*See* Pls.' Reply at 6, noting only that Defendants, "not an expert," object on vagueness grounds). Defendants did not need to rely on an expert regarding vague or otherwise inadequate billing descriptions. *See Hood River Cnty. Sch. Dist.*, 2022 WL 1153986, at *3 (noting that "courts, including the District of Oregon, [have] specifically caution[ed] against providing vague [entries]"). Consistent with *Hood River* and *Schultz*, the Court declines to award Plaintiffs' counsel the $103.12 in entries that remain in dispute under Exhibit 4. Accordingly, the Court denies Plaintiffs' counsel's petition for fees and expenses with respect to the $2,965.62 in fees listed under Exhibit 4.

### C.    Plaintiffs' Counsel's Total Fee and Cost Award

In summary, the Court concludes that the following fees and costs are reasonable and recoverable under the circumstances presented: (1) $6,368.50 in billing entries to which Defendants did not object or include in their objection exhibits but accounted for in their proposed total award and broadly reference in their response (*see, e.g.*, Defs.' Resp. at 8 n.5), (2) $18,961.75 in fees listed in Exhibit 1, (3) $7,155.00 in fees listed in Exhibit 2, (4) $47.55 in costs and $700.00 in fees listed in Exhibit 3, and (5) no fees or costs in Exhibit 4. Accordingly,

the Court grants Plaintiffs' counsel's petition in part and awards a total of $33,232.80 in fees and costs.

Plaintiffs' counsel also seeks a court order requiring "Defendants to discharge their sanction obligation prior to moving forward" and "being allowed to file additional documents in th[is] [c]ourt." (Pls.' Pet. at 2.) Plaintiffs' counsel describes such an order as necessary given the Petersons' conduct in this litigation and "second attorney . . . withdraw[ing] for ethical reasons," and as a "reasonable safeguard for [Balcom] who makes a meager wage and is disabled." (*Id.* at 2-3.) Defendants agree that Plaintiffs' counsel is entitled to recover an award of $13,269.50 and do not oppose or address Plaintiffs' counsel's request for an order requiring prompt payment of the Court's ultimate award. (*See* Defs.' Resp. at 1-8, seeking only a reduced award to "$13,269.50"). Accordingly, the Court grants Plaintiffs' unopposed request and orders Defendants to pay Plaintiffs' counsel's $33,232.80 in fees and costs within two weeks of the Court's issuance of this opinion.

## CONCLUSION

For the reasons stated, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for fees and expenses (ECF No. 145). The Court AWARDS Plaintiffs' counsel $33,232.80. Defendants shall pay this full sum ($33,232.80) to Plaintiffs' counsel within two weeks.

**IT IS SO ORDERED.**

DATED this 18th day of April, 2025.

*Stacie F. Beckerman*
_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge